# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **FRANKLIN CONSTRUCTION GROUP, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **WILLIAM SHORE, JWSC, LLC, KEITH** | ) | **Case No. 3:24-cv-01255** |
| **MEADOWS, JOSEPH HEATH, HYDS INC.,** | ) | |
| **DEAN BINGHAM, LUNDON JOHNSON,** | ) | |
| **TYLER WEBER, JOEL CHEVRETTE,** | ) | |
| **DANNY KNOWLES, SCOTT MATTHEWS,** | ) | |
| **and LOWE'S HOME CENTERS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## DEFENDANT LOWE'S HOME CENTERS, INC.'S MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

---

Plaintiff Franklin Construction Group, LLC ("Plaintiff" or "Franklin"), hired, retained, and chose not to supervise an unfaithful employee as its Vice President, William Shore. When Franklin fired Shore, it claims it learned for the first time that he had several side projects, including running an estimating business and performing construction work outside of Franklin. Worse yet, Franklin now believes Shore used Franklin to fund his side businesses through an elaborate scheme where he would submit Franklin's plans to suppliers like Lowe's, overestimate the materials needed for the plans through his position as an independent estimator under a different name, and then approve Franklin's payment for those plans, apparently with no one at Franklin overseeing or checking his work. While some individual Lowe's former employees are alleged to have known about the scheme, the scheme was not endorsed by Lowe's. Indeed, Lowe's had no more knowledge of its employees' alleged involvement than Franklin had of its Vice President's.

Even so, Franklin brought the Complaint against Lowe's Home Centers, Inc.,[1] alleging that its employees aided Shore's scheme. Plaintiff brings 14 common law and statutory claims, with several based on Shore's purported scheme to charge higher prices for construction materials and to overestimate the materials needed for the project.[2] Among the defendants named in the Complaint are Lowe's Home Centers, Inc. (hereinafter "Lowe's") and six current or former Lowe's employees: Dean Bingham, Lundon Johnson, Tyler Weber, Joel Chevrette, Danny Knowles, and Scott Matthews.

---

[1] There is no entity named Lowe's Home Centers, Inc. Lowe's Companies, Inc., is the current or former employer of the six Lowe's Individual Defendants.

[2] Outside of Shore's scheme, Franklin also brings a breach of contract claim against Lowe's, alleging that Franklin paid a deposit for materials that it never received. The business dispute underlying the breach of contract claim is not subject to this motion to dismiss.

The Complaint alleges that Franklin began purchasing materials from Lowe's on or around May 4, 2021.  In 2024, Plaintiff ceased payments, claiming it had never received materials that it had ordered.  Ultimately, Plaintiff filed the Complaint on October 21, 2024, making serious and unfounded allegations of fraud against Lowe's.  Eight of Plaintiff's fourteen causes of action name Lowe's as a defendant.

The Tennessee Consumer Protection Act claim against Lowe's should be partially dismissed because Plaintiff filed it outside the applicable one-year statute of limitations.[3] Moreover, Plaintiff's civil RICO and fraud claims against Lowe's should be dismissed under the heightened Rule 9(b) pleading standard because there is no allegation that Lowe's actively participated in any fraudulent scheme.  And Plaintiff's conversion claim should be dismissed because it does not identify a tangible chattel that Lowe's converted.

Thus, Lowe's respectfully requests that the Court dismiss five of the eight causes of action that name Lowe's as a defendant: Counts I, II, IX, X, and XI of the Complaint.

## I.      Allegations

For purposes of this motion, the facts are taken from the Complaint and other materials cognizable under Rule 12(b)(6).  Lowe's does not adopt these statements as true but rather denies and will contest them at any trial.

### A.      Relevant Parties

Franklin Construction Group is a building and construction company doing business in Middle Tennessee. (Compl. ¶ 7).  Lowe's is the second largest home improvement retailer, committed to helping homeowners, renters, and professionals improve their homes and businesses

---

[3] The remaining claims may be fully or partially time-barred under the discovery rule, but that is a question for discovery and so not a subject of this motion.

2

through selling and delivering home improvement products. Who We Are, corporate.lowes.com/who-we-are (last accessed 1/13/25).

Defendant William Shore ("Shore") is the former vice-president of residential construction operations at Franklin. (Compl. ¶¶ 2, 32-33) While employed by Franklin, Shore was responsible for budgeting, hiring subcontractors and suppliers, approving invoices from subcontractors and suppliers, and handling the day-to-day operations of certain projects. (*Id.* ¶ 32–33). Defendant JWSC, LLC ("JWSC") is a corporation organized under Tennessee law for which Shore is the registered agent. (*Id.* ¶ 9).

Defendant HYDS Inc. ("HYDS") is a construction materials supplier. (*Id.* ¶ 37). Defendant Keith Meadows (hereinafter "Meadows") is the owner of HYDS, and Defendant Joseph Heath ("Heath") is the CEO of HYDS. (*Id.* ¶ 37).

Defendants Dean Bingham ("Bingham"), Lundon Johnson ("Johnson") Tyler Weber ("Weber"), Scott Matthews ("Matthews") Joel Chevrette ("Chevrette") and Danny Knowles ("Knowles") are current or former Lowe's employees. These current and former employees are referred to throughout the Complaint as the "Lowe's Individual Defendants." (*Id.* ¶ 20).

### B. Relevant Allegations

On or around November 15, 2020, Plaintiff hired William Shore as its vice-president of residential construction operations. (*Id.* ¶ 32). As Vice President, Shore was responsible for ordering materials to complete Franklin's construction projects. (Compl. ¶ 33.) Shore would submit the project's plans to a supplier like Lowe's, the supplier would send the project's specifications to a "take-off" vendor to determine what supplies were needed (referred to in the Complaint as performing "'estimating' for Lowe's," and then Lowe's would price the supplies and send Franklin an invoice. (*See* Compl. ¶ 80 (explaining the process).)

3

From May 4, 2021, to June 14, 2023, Plaintiff issued Lowe's purchase orders totaling over $30 million. (*Id.* ¶ 104). During this time, Plaintiff alleges Shore had a side business of performing take off services, including for Lowe's, under JWSC. The Complaint alleges that the Lowe's Individual Defendants engaged JWSC to perform these take-off services for Franklin's projects. (*Id.* ¶¶ 9, 76). Shore, acting as JWSC, had knowledge of Franklin's budgets for its projects, so he was able to overstate the type and quantity of materials needed. (*Id.* ¶ 78). Plaintiff alleges that some of the Lowe's Individual Defendants knew that JWSC was Shore and took actions to cover it up. (*Id.* ¶ 80).

Plaintiff also alleges that Shore obtained a Lowe's Pro Supply ("LPS") credit card and billed more to Plaintiff than was authorized. (*Id.* ¶ 99). The Complaint alleges that Shore used his LPS card for more than just approved projects for Franklin, and that the LPS card was billed to Franklin. (*Id.* at 100). As a result, Franklin allegedly paid for materials for Shore's side projects. (*Id.*)

Finally, Plaintiff alleges that Shore provided false delivery information for purchases made by Franklin, asking Lowe's to deliver Franklin's materials to his side projects' locations. (*Id.* ¶ 96).

Plaintiff terminated Shore's employment on September 7, 2023, for poor performance. (*Id.* ¶ 35). According to Plaintiff, on the date of his termination, Shore left materials behind on his desk that directly implicate him in the alleged fraudulent scheme. (*Id.* ¶¶ 63, 86, 100(g)).

### C. The Complaint

On October 21, 2024, Plaintiff filed the Complaint, alleging 14 causes of action, eight of which name Lowe's as a defendant, including for violations of RICO, 18 U.S.C. § 1962(c) and (d) (Count I), common law civil conspiracy (Count II), fraud (Count IX), violations of the Tennessee

4

Consumer Protection Act (TCPA) (Count X), conversion (Count XI), breach of contract (Count XII), unjust enrichment (Count XIII), and for a declaratory judgment (Count XIV).[4]

As discussed below, Plaintiff's TCPA claim (Count X) is barred by a one-year statute of limitations. Further, Plaintiff's RICO, fraud, and TCPA claims (Counts I, IX, and X) fail to meet the heightened standard of pleading required by Rule 9(b) of the Federal Rules of Civil Procedure. Finally, Plaintiff's TCPA, conspiracy, and conversion claims (Counts II, X, and XI) fail to state a claim upon which relief can be granted under 12(b)(6) as outlined in *Iqbal-Twombly* and applied in the Sixth Circuit.

## II. Standard for Decision

Under Rule 12(b)(6), the Complaint must contain a plausible claim for relief:

Under Rule 12(b)(6), this Court "accept[s] all the Plaintiffs' factual allegations as true and construe[s] the complaint in the light most favorable to the Plaintiffs." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To properly state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief. *Twombly*, 550 U.S. at 561–64.

Although the complaint must be liberally construed in favor of the party opposing the motion to dismiss, the Court should not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. *Id.* at 555. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To state a valid claim, a complaint must contain either direct or

---

[4] Although Lowe's disputes liability, it does not at this time seek dismissal of the breach of contract, unjust enrichment, or declaratory judgment claims.

inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. *Twombly*, 550 U.S. at 562.

*Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487–88 (6th Cir. 2014).

Claims of fraud "raise a high risk of abusive litigation." *Twombly*, 550 U.S. at 569 n.14 (citing Fed. R. Civ. P. 9(b)–(c)). As a result, fraud claims are also subject to the particularity requirement of Federal Rule of Civil Procedure 9(b). Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff asserting a fraud claim must allege the who, what, when, where, and how of the alleged fraud, including a misrepresentation by the defendant. *See New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 411 (6th Cir. 2022); *Coffey v. Foamex, L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1994). More specifically, the Complaint must: (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. *New London Tobacco Mkt.*, 44 F.4th at 411. The alleged misrepresentation generally must be one of an existing past or present fact. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008). These heightened Rule 9(b) pleading standards apply to Plaintiff's claims for fraud, RICO, and the Tennessee Consumer Protection Act. Fed. R. Civ. P. 9(b); *see Wall v. Mich. Rental*, 852 F.3d 492, 495 (6th Cir. 2017) (fraud and RICO claims are subject to Rule 9 particularity requirement); *Blankenship v. Nissan N. Am., Inc.*, 2023 WL 4037150, at *5 (M.D. Tenn. June 15, 2023) (TCPA claims are subject to Rule 9 particularity requirement).

## III. Argument

The allegations in the Complaint affirmatively demonstrate that Plaintiff's TCPA claim (Count X) is barred by a one-year statutes of limitations. Further, Plaintiff's RICO, fraud, and TCPA claims (Counts I, IX, and X) fail to meet the heightened standard of pleading required by Rule 9(b) of the Federal Rules of Civil Procedure. Finally, Plaintiff's TCPA, conspiracy, and

6

conversion claims (Counts II, X, and XI) fail to state a claim upon which relief can be granted under 12(b)(6) as outlined in *Iqbal-Twombly* and applied in the Sixth Circuit.

> **A.** **The One-Year Statute of Limitations Bars Plaintiff's TCPA Claim Because Plaintiff Alleges That It Could Have Discovered the Facts Underlying the Claim on or around September 18, 2023, but Waited to File the Complaint until October 21, 2024.**

The allegations in the Complaint affirmatively demonstrate that Plaintiff's Tennessee Consumer Protection Act ("TCPA") claim is time-barred. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). The statute of limitations for claims brought under the TCPA is one year. Tenn. Code Ann. § 47-18-110. A plaintiff's cause of action accrues when the plaintiff knew, or in the exercise of reasonable care and diligence should have known, that an injury had been sustained because of wrongful or tortious conduct by the defendant. *IRA-SEP ex rel. Eldridge v. Allianz Life Ins. Co. of N. Am.*, No. 2:06-CV-85, 2007 WL 2022208 (E.D. Tenn. July 11, 2007). Generally, whether a plaintiff exercised reasonable care and diligence in discovering the injury is a question of fact. *Lawson v. SWBC Mortg. Corp.*, 2023 WL 11760820, at *8 (M.D. Tenn. Dec. 8, 2023). Still, when the "allegations in the complaint affirmatively show that the claim is time-barred . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo*, 676 F.3d at 547; *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.").

Under the "discovery rule" adopted by Tennessee and federal courts, the plaintiff has one year from the time its cause of action accrues to file its TCPA claim. *Westgate Resorts, Ltd. v. Wesley Fin. Grp., LLC*, 2024 WL 3266616, at *2–3 (M.D. Tenn. July 1, 2024). The plaintiff is deemed to have "discovered" the right of action when it has constructive or inquiry notice—that is, when it becomes aware of facts sufficient to put a reasonable person on notice that they have

7

suffered an injury because of the defendant's alleged wrongful conduct. *Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635, 657 (E.D. Mich. June 30, 2021) (citing *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002)). But a "plaintiff must go find the facts; [he] cannot wait for the facts to find [him]." *Doe v. Cath. Bishop for Diocese of Memphis*, 306 S.W.3d 712, 731 (Tenn. Ct. App. 2008). The discovery rule does not allow a plaintiff to delay suing until it knows the full extent of its damages, or the specific type of legal claim it has. *Vidafuel, Inc. v. Kerry, Inc.*, 2024 WL 4665502, at *9 (Tenn. Ct. App. Nov. 4, 2024) (citing *Eldridge v. Savage*, 2017 WL 5901028, at *5 (Tenn. Ct. App. Nov. 29, 2017)). Rather, "[o]nce the plaintiff gains information sufficient to alert a reasonable person to the need to investigate the injury, the limitation period begins to run." *Id.* (internal citations and quotations omitted).

The basis of Plaintiff's TCPA claim is the allegation that the "Individual Lowe's Defendants purposefully and willfully misrepresented the source of the estimation services provided to FCG." (Compl. ¶ 198). Plaintiff terminated Shore's employment on September 7, 2023. (*Id.* ¶ 35). According to Plaintiff, on the date of his termination, Shore left materials behind on his desk that directly implicate him in the alleged fraudulent scheme. (*Id.* ¶¶ 63, 86, 100(g)). For example, Plaintiff alleges that on May 17, 2023, Shore received an email from Meadows, the owner of HYDS, informing Shore of the true prices for labor and materials. (*Id.* ¶ 61). Shore printed the email, hand-wrote the increased amounts that Shore would bill FCG for the labor and materials, and then left the printed copy behind on his FCG desk. (*Id.* ¶¶ 61–63). Plaintiff alleges that Shore also "left behind on his FCG workstation" records specifying the dollar amounts of kickbacks Shore received from the Lowe's Individual Defendants. (*Id.* ¶ 86). Likewise, Plaintiff alleges that Shore "left on his FCG workstation" an income statement detailing Shore's income earned on side projects. (*Id.* ¶ 100(g)). Plaintiff also alleges that Shore left behind incriminating

emails, a general ledger, invoices and payment details, and other documentation on his FCG computer. (*Id.* ¶¶ 46, 49, 50, 51, 55, 58–60, 65, 67, 68, 84, 95).

While Lowe's denies that any of the allegations supporting Plaintiff's TCPA claim are true, this evidence was clearly sufficient to put a FCG on notice that it had suffered an injury. *See Reynolds*, 546 F. Supp. 3d at 657. Indeed, Plaintiff admits that it had begun investigating Shore's work with Lowe's no later than September 18, 2023, when Plaintiff questioned Knowles about a credit card that Lowe's had allegedly issued to Shore. (*Id.* ¶ 99). Plaintiff's investigation demonstrates that Plaintiff was on inquiry notice of its causes of action in this case by September 18, 2023, at the latest, because Plaintiff had gained information sufficient to alert Plaintiff of the need to investigate. *See Vidafuel*, 2024 WL 4665502, at *9.

Because the allegations in the Complaint affirmatively demonstrate that Plaintiff was on inquiry notice of its alleged injury no later than September 18, 2023, but delayed filing its Complaint until October 21, 2024, Plaintiff's TCPA claim is barred by the one-year statute of limitations and must be dismissed as a matter of law.

### B. Plaintiff Has Failed to Plead Its RICO, Fraud, and TCPA Claims with Particularity as Required by Rule 9(b).

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened Rule 9(b) pleading standard applies to Plaintiff's RICO, fraud, and TCPA causes of action. *See* Fed. R. Civ. P. 9(b); *see Wall*, 852 F.3d 492, 495 (6th Cir. 2017) (fraud and RICO); *Blankenship*, 2023 WL 4037150, at *5 (TCPA). Unless the Complaint states the who, what, when, where, and how of the alleged claims, including a misrepresentation by Lowe's, the claims should be dismissed. *See Wall*, 852 F.3d at 495. To survive a motion to dismiss, the Complaint must: (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state

9

where and when the statements were made; and (4) explain why the statements were fraudulent. *New London Tobacco Mkt.*, 44 F.4th at 411.

### 1. Plaintiff Fails to Plead the Essential Elements of Civil RICO and Conspiracy to Violate RICO with Particularity.

The civil RICO claim must be dismissed for failure to state a claim under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. To proceed beyond a motion to dismiss on a civil RICO claim, a plaintiff must plausibly allege, as to each defendant, that the defendant: (i) conducted, (ii) an enterprise, (iii) through a pattern (*i.e.*, two or more predicate acts), of (iv) racketeering activity. *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 855 (S.D. Ohio 2020) (citing *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 483 (6th Cir. 2013)); *see also Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 494–95 (6th Cir. 1990); *Bennett v. E.F. Hutton Co.*, 597 F. Supp. 1547, 1559 (N.D. Ohio 1984). Moreover, a plaintiff must allege injury to its business or property because of the RICO violation. *Wall*, 852 F.3d at 495–96.

### a. Plaintiff Fails to Allege the Existence of an Enterprise.

To satisfy the "enterprise" element of § 1962(c), a RICO plaintiff must plead both the existence of a person *and* the existence of an enterprise, which must be separate and distinct. *In re ClassicStar Mare Lease Lit.*, 727 F.3d at 492–93; *Shields v. UnumProvident Corp.*, 415 F. App'x 686, 691, 2011 WL 924724 (6th Cir. 2011). The existence of an enterprise depends on a showing "of an ongoing organization, formal or informal"; "evidence that the various associates function as a continuing unit"; and "a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 944–45 (2009) (internal quotation marks omitted). The enterprise need not be a formal entity; a plaintiff may allege an association-in-fact enterprise. *Compound Prop. Mgmt.*, 462 F. Supp. 3d at 857. An association-in-fact enterprise is a group of persons associated for the common purpose of engaging in a course of conduct. *Boyle*, 556 U.S. at 946.

10

The structure of such an enterprise must have three features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associations to pursue the enterprise's purpose." *Id.* While an association-in-fact enterprise need not have a hierarchical structure of command, the group "must function as a continuing unit and remain in existence long enough to pursue a course of conduct." *Id.* at 948. Further, the association-in-fact enterprise must have a "common purpose" that is "separate from the pattern of racketeering activity in which it engages." *Compound Prop. Mgmt.*, 462 F. Supp. 3d at 857 (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993)). If the only common purpose that Plaintiff claims binds the members of the alleged association-in-fact enterprise "is their purported common desire to participate in the allegedly fraudulent scheme," "***[t]hat is not enough***." *Id.* (emphasis added). While "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise may in particular cases coalesce," a plaintiff must still allege a common purpose that is separate from the alleged racketeering activity. *Id.* (citing *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 794 (6th Cir. 2012)) (internal citations and quotations omitted). When a plaintiff fails to do so, the plaintiff fails to allege the existence of an association-in-fact enterprise and has not plausibly alleged all elements of the civil RICO claim. *Id.* Such a claim is insufficient and cannot survive a motion to dismiss under Rule 12(b)(6). *See In re ClassicStar Mare Lease Litig.*, 727 F.3d at 483.

In this case, Plaintiff has alleged that "[t]he Defendants formed an association-in-fact enterprise for the purpose of engaging in a scheme to unlawfully enrich themselves by fraudulently charging FCG excessive amounts for unnecessary or excessive supplies or materials for its construction projects." (Compl. ¶ 116). This is an association-in-fact enterprise because Plaintiff does not allege that a formal entity exists among all Defendants, but that Defendants associated

for the common purpose of engaging in a course of conduct. (*Id.*); *Boyle*, 556 U.S. at 946. Even so, the only common purpose Plaintiff alleges is the purported common desire to participate in the allegedly fraudulent scheme. (Compl. ¶ 116). An association-in-fact enterprise must have a common purpose that is ***separate*** from the alleged pattern of racketeering activity. *See Compound Prop. Mgmt.*, 462 F. Supp. 3d at 857 (citing *Frank*, 4 F.3d at 1386) (emphasis added). Plaintiff's allegation is not enough to state a claim under civil RICO upon which relief can be granted under Rules 12(b)(6) and 9(b). *See id.* Accordingly, these allegations are not enough for Plaintiff's civil RICO claim to survive a motion to dismiss. *See id.*

### b. Lowe's Cannot Be Held Liable for the Alleged Actions of Its Employees Under *Respondeat Superior*.

Even if Plaintiff had adequately pleaded the existence of an enterprise, the RICO claim still must fail as to Lowe's because Plaintiff fails to allege facts sufficient to hold Lowe's responsible under the theory of *respondeat superior*. Plaintiff alleges that Lowe's is legally responsible for the conduct of the Lowe's Individual Defendants "pursuant to the doctrine of *respondeat superior* and the laws of agency because, at the time [the Lowe's Individual Defendants] committed the above-described fraud, they were acting in the course of their employment with Lowe's." (Compl. ¶ 128). Courts of Appeals in several circuits, including the Sixth Circuit, have addressed whether *respondeat superior* applies in civil RICO cases, with varied results. Based on the Sixth Circuit's interpretation, the Complaint is insufficient to hold Lowe's liable under *respondeat superior* for the alleged actions of its employees because Lowe's did not actively promote or sponsor the alleged scheme.

### i. Lowe's Can Only Be Held Liable Under *Respondeat Superior* If It Actively Participate In the Scheme With an Intent to Benefit Lowe's.

In *Davis v. Mut. Life Ins. of New York*, 6 F.3d 367, 379 (6th Cir. 1993), the Sixth Circuit distinguished cases from four other circuits, each of which had "refused to impose vicarious liability under section 1962(c) of RICO," and applied RICO liability to an employer under *respondeat superior* where the corporate defendant "***actively promoted and sponsored*** the scheme, and plainly benefitted from it through the resultant increase in its corporate income." *Id.* (emphasis added). The decision cites favorably to the Third Circuit in *Petro-Tech, Inc. v. W. Co. of N. Am.*, 824 F.2d 1349 (3d Cir. 1987), which held that *respondeat superior* should not hold a corporation liable where the corporation is "innocent" or "passive"—that is, where it is "victimized by RICO 'persons,' and either drained of its own money ***or used as a passive tool to extract money from third parties***." *Id.* at 1359 (emphasis added).

The Sixth Circuit in *Davis* also discussed cases from the Seventh Circuit, including *D&S Auto Parts, Inc. v. Schwartz*, 838 F.2d 964, 968 (7th Cir. 1988). The *Davis* court found the *D&S Auto Parts* opinion "largely inapposite" because it "involved a corporation indistinguishable from the alleged RICO enterprise that neither benefitted ***nor participated in the criminal scheme***." *Davis*, 6 F.3d at 379 (emphasis added). The *D&S Auto Parts* court also noted that "some participation in the criminal scheme [is] a necessary element of liability for the corporate-enterprise," and that an "employer may be vicariously liable only for employee action taken . . . with ***intent to benefit the employer***." 838 F.2d at 967 (emphasis added). Likewise, *Davis* cites *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 941 (7th Cir. 1988), which held that a corporate defendant, as an "***unwilling conduit***," could not be held vicariously liable under RICO for the "***independent acts of its employees***." (emphasis added).

Consistent with the Sixth Circuit's reasoning in *Davis* and its analyses of cases from other Courts of Appeals, *respondeat superior* does not apply to hold Lowe's liable for the alleged acts

13

of the Lowe's Individual Defendants here. Unlike the plaintiff in *Davis*, Plaintiff has alleged no evidence that Lowe's promoted, sponsored, or even knew about the alleged "scheme" of the Lowe's Individual Defendants. *See Davis*, 6 F.3d at 379. While Plaintiff alleges that Lowe's passively benefitted from the scheme, Plaintiff does not allege that Lowe's actively participated. *See id.*; *see also D&S Auto Parts*, 838 F.2d at 968. Instead, if the allegations in the Complaint are taken as true, Lowe's was merely a passive tool to extract money from third parties. *See Petro-Tech*, 824 F.2d at 1359.

Nor has Plaintiff alleged that the Lowe's Individual Defendants acted with an intent to benefit Lowe's. *See D&S Auto Parts*, 838 F.2d at 967. Rather, Plaintiff alleges that the Lowe's Individual Defendants "enriched ***themselves*** by obtaining commissions or other compensation on the supplies and materials" at issue. (Compl. ¶ 103) (emphasis added). The Complaint suggests that the Lowe's Individual Defendants were motivated by a desire to enrich ***themselves***, not to benefit Lowe's. (*Id.*) (emphasis added). The allegations in the Complaint fail to establish that Lowe's was anything other a mere "unwilling conduit," and any actions by Lowe's employees were done independently and without an intent to benefit Lowe's. *See SK Hand Tool Corp.*, 852 F.2d at 941.

### ii. The Lowe's Individual Defendants Acted Outside the Scope of their Employment.

Even if *respondeat superior* could apply to this civil RICO charge, any actions taken with intent to defraud a customer of Lowe's would be outside the course and scope of employment. Under *respondeat superior*, to hold an employer liable for the acts of an employee, the plaintiff must prove (1) that the person who caused the injury was an employee; (2) that the employee was acting on the employer's business; and (3) that the employee was acting within the scope of his employment when the injury occurred." *Barrett v. Whirlpool Corp.*, 704 F. Supp. 2d

14

746, 756–57 (M.D. Tenn. 2010) (citing *Tenn. Farmers Mut. Ins. v. Am. Mut. Liab. Ins.*, 840 S.W.2d 933, 938 (Tenn. Ct. App. 1992)). Conduct of an employee is not within the scope of employment "if it is different from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master." *Id.* at 757 (citing Restatement (Second) of Agency § 228 (1957)).

Franklin was a Lowe's customer, and Lowe's expectation is that any employee who interacts with a customer must act in the customer's best interests. Plaintiff has failed to demonstrate that any actions taken by Lowe's employees were "actuated by a purpose to serve" Lowe's. *Id.* Rather, the Complaint alleges that the Lowe's Individual Defendants were motivated by a desire to enrich ***themselves***, not to benefit Lowe's. (*Id.*) (emphasis added). *Respondeat superior* thus does not apply to hold Lowe's responsible for the alleged acts of its employees. *See Barrett*, 704 F. Supp. 2d at 756–57.

### c. Plaintiff's § 1962(d) Claim Fails in the Absence of its § 1962(c) Claim.

Finally, to state a claim for a RICO conspiracy violation of § 1962(d), a plaintiff must successfully allege all elements of a violation under § 1962(c), *and* must allege the existence of an illicit agreement to violate the substantive RICO provision. *Compound Prop. Mgmt.*, 462 F. Supp. 3d at 858 (citing *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Ga.*, 768 F. App'x 446, 459 (6th Cir. 2019)). In other words, the plaintiff must sufficiently allege the four elements as to a § 1962(c) violator, and then claim that the defendant against whom plaintiff is asserting a § 1962(d) claim joined a conspiracy with that violator. *Id.* As explained above, Plaintiff has failed to allege all elements of its § 1962(c) claim as to Lowe's with particularity. The § 1962(d) claim for RICO conspiracy therefore fails "because, as discussed [above], the claim under 18 U.S.C. § 1962(c)

15

fails." *Brown*, 447 F. Supp. 3d at 644 (citing *Aces High Coal Sales*, 768 F. App'x 446 at 459); *Craighead*, 699 F.2d at 495.

### 2. Plaintiff Fails to Allege Its Fraud Claim with Particularity as Required by Rule 9(b).

Plaintiff's common-law fraud claim is also subject to Rule 9(b)'s particularity requirement. *See PNC Multifamily Cap. Institutional Fund*, 387 S.W.3d at 547. The essential elements of fraud under Tennessee law are: (1) an intentional, (2) misrepresentation of a material past or present fact, (3) made with intent to defraud, (4) reasonably relied upon by the plaintiff, (5) who suffers damage as a proximate result of that reliance. *Pineda Transp., LLC. v. FleetOne Factoring, LLC*, No. 3:18-cv-0089, 2018 WL 2137760, *4 (M.D. Tenn. May 9, 2018). To plead fraud with particularity, a plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury. *Id.*

Here, Plaintiff fails to plead the essential element of reasonable reliance with particularity. *Id.* A plaintiff reasonably relies on an alleged misrepresentation when the plaintiff was unaware of the material facts and would have acted differently if the plaintiff knew of the concealed or suppressed fact. *PNC Multifamily Cap. Inst. Fund*, 387 S.W.3d at 551. Here, Plaintiff holds itself out as a company that has completed projects exceeding $4 billion in aggregate revenue, with a team that collectively has over 100 years of combined construction experience. <u>Franklin Construction Group</u>, chartwellresidential.com/construction (last accessed 1/14/25). It knew or should have known that the prices it was paying for materials were higher than Plaintiff thought they should be.

For example, Plaintiff asked to speak to Lowe's estimator to ask further questions about Lowe's quantities and claims to have known something was off. (*See* Compl. ¶ 80(i)). In fact, Plaintiff claims it was "obvious" that the estimator "knew little to nothing about the estimate."

16

(*Id.*)  For Plaintiff to claim "obvious" fraud and misrepresentation, yet concurrently claim that Plaintiff's "reasonable reliance" caused it to "expend[] considerable sums to purchase unnecessary or excessive volumes of materials and supplies," defies logic.  (*Id.* ¶¶ 80(i), 189).  Plaintiff's purported blind reliance on the representations of the Lowe's Individual Defendants' does not make it reasonable; nor is it reasonable that Plaintiff failed to supervise Shore's activities or to notice that Shore (according to Plaintiff's allegations) had spent more than twice what Plaintiff believes were market prices.  If Plaintiff's allegations are taken as true, Plaintiff's blind reliance was far from reasonable, and Plaintiff was on notice of alleged misrepresentations well before its termination of Shore's employment.

### 3. Plaintiff Fails to Plead its TCPA Claim with Particularity.

Even were the Court to find that Plaintiff's TCPA claim is not time-barred, Plaintiff has failed to plead that claim with particularity as required by Rule 9(b).  *See Blankenship*, 2023 WL 4037150, at *5.  To maintain a cause of action under the TCPA, Plaintiff must state with specificity: "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated.'"  *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005).  "A deceptive act or practice has been defined as 'one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact.'"  *Flanary v. Carl Gregory Dodge of Johnson City, LLC*, No. E2007-01433-COA-R3-CV, 2008 WL 2434196, at *2 (Tenn. Ct. App. June 17, 2008) (quoting *Tucker*, 180 S.W.3d at 115).  Furthermore, "an act or practice should not be deemed unfair 'unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and

not outweighed by countervailing benefits to consumers or to competition.'" *Id.* (quoting *Tucker*, 180 S.W.3d at 115) (emphasis added).

The basis of Plaintiff's TCPA claim is the allegation that the "Individual Lowe's Defendants purposefully and willfully misrepresented the source of the estimation services provided to FCG." (Compl. ¶ 198). As support for this claim, Plaintiff alleges that "[t]o hide the fact that JWSC was really Shore, the Lowe's Individual Defendant would . . . begin the email with 'Good morning, JWSC' or 'Sir.'" (Compl. ¶ 80). This allegation describes emails between JWSC and Lowe's employees—not with Plaintiff. The only alleged misrepresentation *to Plaintiff*—and therefore the only alleged misrepresentation that could "mislead[] or tend[] to mislead[] a consumer"—was that *after* Plaintiff terminated Shore, Franklin asked Lowe's employees whether Shore had been hired as an "estimator." (*Id.* ¶ 81). This alleged "act or practice" cannot be "likely to cause substantial injury to consumers" because it occurred after any such injury could have taken place. *See Flanary*, 2008 WL 2434196, at *2. Further, Plaintiff has failed to adequately state that the injury alleged was not reasonably avoidable. *See id.* To the contrary, Plaintiff claims it was "obvious" that the alleged fraudulent estimator "knew little to nothing about the estimate." (*See* Compl. ¶ 80(i)). Plaintiff could reasonably have avoided any alleged injury by properly supervising Shore, rather than providing him with uncontrolled access to millions of dollars of Plaintiff's funds. These allegations fail to state a claim under the TCPA with specificity because Plaintiff fails to allege a "deceptive act or practice," and any "injury" could have been avoided had Plaintiff exercised reasonable care in supervising its employees. *See Tucker*, 180 S.W.3d at 115; *Flanary*, 2008 WL 2434196, at *2.

18

**C.** **Plaintiff's TCPA Claim Should Be Dismissed Because Construction Materials Are Not "Goods" Under the TCPA, and Thus Shore's Estimating Is Not a "Service" Under the TCPA.**

Plaintiff's TCPA claim (Count X) alleges that the Individual Lowe's Defendants "misrepresented the source of the estimation services provided to FCG in regard to the various projects overseen by Shore." (Compl. ¶ 198). Plaintiff alleges that this violates the TCPA.

Plaintiff's claim is brought under Tennessee Code Annotated § 47-18-104(b)(1)–(3), which makes it an unfair and deceptive practice to "falsely pass[] off goods or services as those of another"; to cause "likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services"; and to "caus[e] likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another." Tenn. Code Ann. § 47-18-104(b)(1)–(3). "Goods" are defined as "any tangible chattels leased, bought, or otherwise obtained by an individual ***primarily for personal, family, or household purposes*** or a franchise, distributorship agreement, or similar business opportunity." *Id.* § 47-18-103(12) (emphasis added). "Services" is defined as the "work, labor, or services ***including*** services furnished ***in connection with the sale or repair of goods*** or real property or improvements thereto." *Id.* § 47-18-103(23) (emphasis added). The best reading of this statute is that "including" is a limiting phrase, so that any "work, labor, or services" must be in connection with the "sale or repair of goods or real property or improvements thereto." *See Samantar v. Yousuf*, 560 U.S. 305, 317 (2010) (the word "include" followed by a limiting phrase indicates that the definition is still limited by the limiting phrase). If the limiting phrase "including" did not include work or labor, it would be superfluous because "services" necessarily include some work or labor. *See Yebuah v. Ctr. for Urological Treatment, PLC*, 624 S.W.3d 481, 487 (Tenn. 2021) ("[A] legislature is presumed to have used no superfluous words," which "prevents any word from being 'inoperative, superfluous, void, or insignificant.'") (quoting reference omitted).

19

Here, the term "services" should not be read to encompass Shore's alleged estimating services because those services were not "in connection with" the type of "goods" contemplated by the TCPA. § 47-18-103(23). The "goods" Lowe's sold to Plaintiff were *not* "obtained by an individual primarily for personal, family, or household purposes." *Id.* § 47-18-103(12). Rather, the Complaint alleges that these goods were for "materials needed on FCG's projects," such as "lumber," "walnut cabinets, LVL beams, [and] Pella windows." (Compl. ¶¶ 78, 80(i), 88). In other words, the items were obtained by a *business* for *business purposes*, not an individual consumer for personal, family, or household purposes, contrary to the definition of "goods" in Tenn. Code Ann. § 47-18-103(12). Because Shore's estimating services were in connection with the sale of business materials, his services in connection with the sale of those materials simply are not covered under the TCPA. *Id.* § 47-18-103(23). Thus, Plaintiff has not brought a proper claim under the TCPA, and Count X should be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

### D. Plaintiff's Conversion Claim Should Be Dismissed Because It Does Not Allege that Lowe's Converted a Tangible Chattel.

The essential elements of a claim for the tort of conversion under Tennessee law are as follows:

1. Use and enjoyment of the personal property of another without the owner's consent; or

2. Destruction or dominion over the property of another by excluding the true owner's rights; or

3. Withholding of personal property from the owner under a claim of title consistent with the owner's claim of title.

*Greenbank v. Thompson*, No. E2010-00160-COA-R3-CV, 2010 WL 5549231 (Tenn. Ct. App. Dec. 29, 2010); Tennessee Judicial Conference, Tennessee Pattern Jury Instructions-Civil T.P.I.-Civil 8.65 (2024 ed.); American Law Institute, Restatement (Second) of Torts §222A (1965).

20

Generally, conversion applies to chattels and is not available for a claim for payment of money. *PNC Multifamily Capital Inst. Fund XXVI Ltd. v. Bluff City Cmty. Dev. Corp*., 387 S.W.3d 525, 553-56 (Tenn. Ct. App. 2012). In this case, Plaintiff has failed to allege the essential element of personal property (chattel) or an exception to the general rule that one cannot convert money. *Id.*

Franklin has failed to allege a specific chattel that Lowe's has allegedly converted, such as a specific construction supply. Rather, Franklin alleges that it paid an unspecified amount over market value for certain materials, or paid for materials that were unnecessary for its construction projects. (Compl. ¶¶ 206-07, ECF No. 1.) Franklin alleges that Lowe's held deposits paid by Franklin for supplies and materials that Lowe's did not provide. (*Id.* ¶ 209.)

Neither allegation states a claim for conversion. *PNC Multifamily*, 387 S.W.3d at 553-56. As the Tennessee Court of Appeals has held, conversion is not generally available for alleged misappropriation of funds. *Id.* Only when specific funds are identifiable, such as insurance proceeds, will the tort of conversion apply. *Id.* Franklin has not identified specified funds that Lowe's has allegedly converted, nor does it allege that it was entitled to a refund for any of the deposits—only that Lowe's breached the contract by failing to deliver the materials.

Because Franklin has failed to allege the conversion of a chattel as required by Tennessee law, its conversion claim should be dismissed.

E. **Plaintiff Has Failed to State a Claim for Conspiracy Under Rule 12(b)(6).**

A civil conspiracy is an agreement between two or more persons to do an unlawful act, or to do a lawful act in an unlawful way. *Trau-Med of Am., Inc. v. Allstate Ins.*, 71 S.W.3d 691, 703 (Tenn. 2002). A claim for civil conspiracy "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *PNC Multifamily Cap. Institutional Fund*, 387 S.W.3d at 556 (quoting *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007)). "Conspiracy is not a cause of action, but a legal doctrine that imposes

liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 642–43 (M.D. Tenn. 2006).

Here, the "predicate tort allegedly committed" underlying Plaintiff's conspiracy claim is Plaintiff's fraud allegation. (Compl. ¶ 130). But, as described above, each of Plaintiff's causes of action sounding in fraud is not cognizable and should be dismissed. Conspiracy, standing alone, is not actionable where the underlying tort is not actionable. *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010). Because the claims underlying the civil conspiracy fail, the conspiracy claim must also fail. *Id.* at 764 (citing *Levy v. Franks*, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004)).

## IV.    Conclusion

Because Plaintiff's claims are barred by the applicable statutes of limitations, Plaintiff has failed to plead its fraud claims with particularity under Rule 9(b), and Plaintiff fails to state a claim upon which relief can be granted under Rule 12(b)(6), Counts I, II, IX, and X, and XI of the Complaint should be dismissed for failure to state a claim upon which relief can be granted.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

 */s/ Scott D. Carey*
Gary C. Shockley (BPR 010104)
Scott D. Carey (BPR 015406)
Ryan P. Loofbourrow (BPR 033414)
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
(615) 726-5704 (phone)
(615) 744-5704 (fax)
gshockley@bakerdonelson.com
scarey@bakerdonelson.com
rloofbourrow@bakerdonelson.com

22

*Attorneys for Defendant Lowe's Home Centers, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify under Rule 5 of the Federal Rules of Civil Procedure that a true and exact copy of the foregoing *Memorandum in Support of Defendants' Motion to Dismiss* was served on the following counsel of record via operation of the Court's electronic filing system:

Todd E. Panther
Christopher C. Sabis
Thomas B. Hall
SHERRARD ROE VOIGT & HARBISON, PLC
1600 West End Avenue, Suite 1750
Nashville, TN 37203
(615) 742-4200 - telephone
(615) 742-4539 - fax
tpanther@srvhlaw.com
csabis@srvhlaw.com
thall@srvhlaw.com
*Attorneys for Franklin Construction Group, LLC*

Don L. Hearn, Jr.
Glankler Brown, PLLC
6000 Poplar Ave., Ste 400
Memphis, TN  38119
dhearn@glankler.com

Nadine Alsaadi
Roxborough Pomerance Nye & Adreani, LLP
5900 Canoga Ave., Ste 450
Woodland Hills, CA  91367
na@rpnalaw.com

Joseph C. Gjonola
jcg@rpnalaw.com

Nicholas P. Roxborough
Robbins Geller Rudman & Dowd LLP
420 Lexington Ave., Ste 1832
New York, NY 10170
npr@rpnalaw.com
*Attorneys for Keith Meadows, Joseph Heath, and HYDS, Inc.*

Jerry E. Martin
Matthew Edward McGraw
Seth Marcus Hyatt
Barret Johnston Martin & Garrison, LLC
200 31st Avenue North
Nashville, TN  37203

jmartin@barrettjohnston.com
mmcgraw@barrettjohnston.com
shyatt@barrettjohnston.com
*Attorneys for Keith Meadows and HYDS, Inc.*

Scarlett Singleton Nokes
R. Bradley Bundron
Bradley Arant
1221 Broadway, Ste 2400
Nashville, TN 37203
snokes@bradley.com
bbundren@bradley.com
*Attorneys for Dean Bingham*

Darrick Lee O'Dell
Spicer Rudstrom, PLLC
220 Athens Way, Ste 450
Nashville, TN 37228
dodell@spicerfirm.com

Robert J. Uhorchuk
Nicholas C. Stevens
Spicer Rudstrom, PLLC
537 Market Street, Ste 203
Chattanooga, TN 37402
rju@spicerfirm.com
nstevens@spicerfirm.com
*Attorneys for Lundon Johnson, Joel Chevrette, and Danny Knowles*


Dated January 14, 2025.

                                        */s/ Scott D. Carey*＿＿＿＿＿＿＿＿＿
                                        Scott D. Carey

25