IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| FRANKLIN CONSTRUCTION GROUP, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 3:24-cv-01255 |
| | ) | |
| WILLIAM SHORE, JWSC, LLC, KEITH | ) | JUDGE CRENSHAW |
| MEADOWS, JOSEPH HEATH, HYDS INC., | ) | MAGISTRATE JUDGE FRENSLEY |
| DEAN BINGHAM, LUNDON JOHNSON, | ) | |
| TYLER WEBER, JOEL CHEVRETTE, | ) | JURY DEMAND |
| DANNY KNOWLES, SCOTT MATTHEWS, | ) | |
| and LOWE'S HOME CENTERS, INC., | ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OF LAW IN SUPPORT
OF DEAN BINGHAM'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF RELEVANT FACTS ........................................................... 2

III.   ARGUMENT ........................................................................................................ 5

        A.     Plaintiff Has Failed to State a Fraud Claim Against Mr. Bingham. ........................ 6

        B.     Plaintiff's RICO Claim Against Mr. Bingham Must Be Dismissed
             Because Plaintiff Has Failed to Adequately Allege Predicate Acts or
             the Existence of a RICO Enterprise. ........................................................... 10

        C.     Plaintiff's Conspiracy Claim Against Mr. Bingham Must Be Dismissed
             Because It Has Failed to Plead an Underlying Wrong. ................................. 13

        D.     Plaintiff's TCPA Claim Must Be Dismissed. ............................................. 14

        E.     Plaintiff's Conversion Claim Against Mr. Bingham Must Be Dismissed
             Because It Fails to Allege That Mr. Bingham Appropriated a Specific,
             Identifiable Sum Rightfully Owned by Plaintiff. ........................................ 17

IV.   CONCLUSION .................................................................................................... 19

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................5

*Brown v. J. Rockett Audio Designs, LLC*,
No. 1:17-cv-00093, 2018 WL 3656481 (M.D. Tenn. Aug. 2, 2018)......................................18

*Commc'ns Unlimited Contracting Servs., Inc. v. Comdata, Inc.*,
No. 3:17-cv-01158, 2018 WL 418566 (M.D. Tenn. Jan. 16, 2018) ......................................17

*Constr. Mgmt., Inc. v. Expo Hosp., LLC*,
No. 3:19-cv-00298, 2019 WL 2917991 (M.D. Tenn. Jul. 8, 2019)....................................6, 7

*Dell'Aquila v. LaPierre*,
491 F.Supp.3d 320 (M.D. Tenn. 2020)...........................................................................11, 12

*First Am. Title Ins. Co. v. Cumberland Cnty. Bank*,
633 F.Supp.2d 566 (M.D. Tenn. 2009)....................................................................13

*First Tech. Cap., Inc. v. JPMorgan Chase Bank, N.A.*,
53 F.Supp.3d 972 (E.D. Ky. 2014) .......................................................................10

*Forsyth v. Bank of Am., N.A.*,
No. 2:11-cv-191, 2012 WL 12841927 (E.D. Tenn. Sept. 27, 2012)..............................14, 15

*Hoover v. Langston Equip. Assoc.'s, Inc.*,
958 F.2d 742 (6th Cir. 1992) ...........................................................................7

*Kenty v. Bank One, Columbus, N.A.*,
92 F.3d 384 (6th Cir. 1996) ...........................................................................9

*Luminor Consulting Corp. v. Elmessiry*,
No. 3:22-cv-00555, 2023 WL 4675668 (M.D. Tenn. July 19, 2023)..............................17, 18

*McLearn v. Wyndham Resort Dev. Corp.*,
No. 3:19-cv-00004, 2020 WL 1189844 (M.D. Tenn. Mar. 11, 2020).........................5, 7, 9, 14

*In re Nat'l Prescription Opiate Litig.*,
No. 1:17-md-2804, 2019 WL 4279233 (N.D. Ohio Sept. 10, 2019)....................................12

Case 3:24-cv-01255    Document 77    Filed 01/17/25    Page 3 of 24 PageID #: 553

*Nippert v. Jackson*,
   860 F.Supp.2d 554 (M.D. Tenn. 2012)....................................................................13

*Pineda Transp., LLC v. FleetOne Factoring, LLC*,
   No. 3:18-cv-0089, 2018 WL 2137760 (M.D. Tenn. May 9, 2018) ................................11, 12

*U.S. ex rel. Dennis v. Health Mgmt. Assoc.'s, Inc.*,
   No. 3:09-cv-00484, 2013 WL 146048 (M.D. Tenn. Jan. 14, 2013) .......................................13

*Vanderbilt Univ. v. Scholastic, Inc.*,
   382 F.Supp.3d 734 (M.D. Tenn. 2019)..........................................................................5, 7, 9

*Vidafuel, Inc. v. Kerry, Inc.*,
   No. M2024-00041-COA-R3-CV, 2024 WL 4665502 (Tenn. Ct. App. Nov. 4, 2024) ...............................................................................................................15

*Wendy's of Bowling Green, Inc. v. Marsh USA, Inc.*,
   No. 3-10-1043, 2012 WL 370486 (M.D. Tenn. Feb. 3, 2012) ...............................................14

*Williamson v. Ocwen Loan Serv., LLC*,
   No. 3:09-0514, 2009 WL 5205405 (M.D. Tenn. Dec. 23, 2009) ...........................................11

**Rules and Statutes**

18 U.S.C. § 1962 ..................................................................................................................11

Fed. R. Civ. P. 9 ...................................................................................................................5

Fed. R. Civ. P. 12 .................................................................................................................5

Tenn. Code Ann. § 47-18-104 ..............................................................................................14

Tenn. Code Ann. § 47-18-110 ..............................................................................................14

Defendant Dean Bingham files this Memorandum of Law in Support of His Motion to Dismiss all of Plaintiff Franklin Construction Group's claims against him. In support of this Motion, Mr. Bingham states as follows:

## I.   INTRODUCTION

The plaintiff, Franklin Construction Group, Inc. ("Plaintiff"), alleges that it was the victim of a complex fraud scheme orchestrated by its former employee, Defendant William Shore ("Shore"), who allegedly conspired with construction materials suppliers to overcharge Plaintiff for materials, cause Plaintiff to purchase unnecessary materials, and cause Plaintiff to unwittingly pay for materials that Shore ultimately used for his own secret side projects. Desperate to hold someone responsible for the damages Shore caused, Plaintiff overreaches and alleges twenty-four claims against twelve different individuals and entities.

Mr. Bingham is one of six current or former Lowe's employees against whom Plaintiff has alleged claims. However, Plaintiff fails to plead facts—much less particularized facts—that Mr. Bingham participated in the alleged fraudulent scheme. The Complaint's limited references to Mr. Bingham's involvement in the events at issue do not identify a single false or misleading statement made by Mr. Bingham. And while the Complaint relies heavily on group pleading to describe the actions of, for example, "the Lowe's Individual Defendants" collectively or "one or more of the Lowe's Individual Defendants," these allegations fall far short of stating Plaintiff's fraud-based claims against Mr. Bingham with the requisite particularity.

For these reasons, and the additional reasons set forth below, Plaintiff has failed to state any claims against Mr. Bingham. Accordingly, Mr. Bingham respectfully requests that the Court grant this Motion and dismiss the claims against him with prejudice.

## II.     STATEMENT OF RELEVANT FACTS[1]

Plaintiff is a building and construction company doing business in Middle Tennessee. Doc. 1 ("Compl.") at ¶ 7. Shore is a former employee of Plaintiff, who served as a vice-president of residential construction operations. *Id.* ¶¶ 32, 35. In that role, Shore was responsible for "budgeting, hiring subcontractors and suppliers, approving invoices from subcontractors and suppliers, and handling the day-to-day operations of the projects he managed for [Plaintiff]." *Id.* ¶ 33. Plaintiff terminated Shore's employment on September 7, 2023. *Id.* ¶ 35.

Defendant JWSC, LLC ("JWSC") is a limited liability company organized under Tennessee law. *Id.* ¶ 9. Shore is the registered agent for JWSC. *Id.* According to Plaintiff, "JWSC is Shore's alter ego and the instrumentality through which Shore perpetrated much of the . . . fraud upon [Plaintiff]." *Id.*

Defendant HYDS Inc. ("HYDS") is a construction materials supplier that supplied Plaintiff with materials for various construction projects. *Id.* ¶¶ 37–38. Defendant Keith Meadows ("Meadows") owns HYDS, and Defendant Joseph Heath ("Heath") is its CEO. *Id.*

Defendant Lowe's Home Centers, Inc. is "one of the largest home improvement retailers in the world" that serves both individual homeowners and renters and professional contractors. *See* Who We Are, https://corporate.lowes.com/who-we-are (last visited Jan. 16, 2025). Mr. Bingham, Lundon Johnson, Tyler Weber, Scott Matthews, Joel Chevrette, and Danny Knowles are current or former Lowe's employees. *Id.* ¶ 20. Plaintiffs refers to Mr. Bingham, Mr. Johnson, Mr. Weber, Mr. Matthews, Mr. Chevrette, and Mr. Knowles collectively as the "Lowe's Individual Defendants" throughout the Complaint. *Id.*

---

[1] Mr. Bingham relies solely on the facts as pleaded in the Complaint, which are deemed true for purposes of this Motion only.

Plaintiff alleges that Lowe's and the Lowe's Individual Defendants joined a fraudulent conspiracy orchestrated by Shore that also involved HYDS, Meadows, and Heath. *Id.* ¶¶ 74-75. According to Plaintiff, "Shore concocted . . . [the] scheme to funnel money from [Plaintiff] to himself through an illicit kickback scheme involving various intermediaries, illicitly convert [Plaintiff's] property for his own personal use and gain, and breach various duties owed to [Plaintiff]." *Id.* ¶ 2.

Plaintiff contends that Mr. Bingham was involved in four aspects of the alleged fraudulent scheme. First, Plaintiff alleges that Lowe's employed Shore as an independent contractor to perform take-off estimating services for Lowe's to estimate the type and quantity of materials that Lowe's customers needed to purchase for various construction projects. *Id.* ¶¶ 76–78. Shore allegedly performed take-off services for both Plaintiff's projects and projects for other Lowe's customers. *Id.* According to Plaintiff, when Shore provided the take-off estimates, he fraudulently overstated the type and quantity of materials needed on Plaintiff's projects. *Id.* ¶¶ 79, 189. Plaintiff contends that Shore's estimating services were "a fictitious scheme used to provide Shore or JWSC monetary kickbacks for the material purchases, which Shore was fraudulently funneling to Lowe's and which one or more of the Lowe's Individual Defendants knew were fraudulent." *Id.* ¶ 79. Mr. Bingham's alleged involvement in this aspect of the scheme involved receiving links for project plans from Shore; asking Shore to provide an estimate on Plaintiff's Union Brick project; paying Shore or JWSC $36,500 in purported fraudulent kickbacks; and receiving payments of at least $31,650 from Shore or JWSC for commissions and fees. *Id.* ¶¶ 80(c), 80(i), 86.

Second, Plaintiff alleges that Shore "and one or more of the Lowe's Individual Defendants" conspired to fraudulently bill Plaintiff for materials that were not for Plaintiff's construction projects but instead were for Shore's "secret side projects." *Id.* ¶ 87. Plaintiff claims that Mr.

Bingham received emails that made him aware of Shore's side projects. *Id.* ¶ 90. For example, Plaintiff alleges that Mr. Bingham received an email in which Shore stated that he needed a "floor truss quote." *Id.* ¶ 91. Plaintiff claims that Lowe's invoiced Plaintiff for the floor trusses even though Mr. Bingham knew that they were for Shore's side project.[2] *Id.*

Third, Plaintiff alleges that Shore obtained a Lowe's Pro Supply credit card, which was billed to Plaintiff. *Id.* ¶ 99. Plaintiff claims that certain charges to the card were for the "Ramirez project." *Id.* ¶ 100(e). Plaintiff further alleges that certain Lowe's Individual Defendants, including Mr. Bingham, were aware that the "Ramirez project" was one of Shore's side projects. *Id.*[3]

Finally, Plaintiff claims that Mr. Bingham conspired with Shore, Meadows, and Heath "to defraud [Plaintiff] by Shore issuing purchase orders to HYDS for Lowe's materials at a cost to [Plaintiff] that was well above market pricing." *Id.* ¶ 102. Plaintiff points to an August 30, 2021 email from Mr. Bingham to Heath as evidence of Mr. Bingham's involvement in the alleged conspiracy. *Id.* In the email, Mr. Bingham simply provided Heath with a quote, which included a Lowe's profit mark-up, for sinks. *Id.* Notably, Plaintiff does not allege that Mr. Bingham disguised the mark-up or made any misrepresentation regarding the mark-up. Nor does Plaintiff allege that the mark-up applied by Mr. Bingham was unusual in any way. Plaintiff separately alleges that HYDS marked up the quote again before invoicing Plaintiff for the sinks but does not claim that Mr. Bingham had any awareness of the additional mark-up applied by HYDS. *Id.*

---

[2] Notably, Plaintiff does not allege that Mr. Bingham caused Lowe's to invoice Plaintiff for the floor trusses or that he was even aware that Lowe's had invoiced Plaintiff for the floor trusses.

[3] Plaintiff does not allege that Mr. Bingham was aware that: (i) Shore charged materials for the Ramirez project to the Lowe's Pro Supply credit card, (ii) Plaintiff was billed for the credit card, or (iii) Plaintiff ultimately paid for materials for the Ramirez project.

4

According to Plaintiff, the Lowe's Individual Defendants obtained commissions or other compensation on the supplies and materials that they allegedly defrauded Plaintiff into purchasing. *Id.* ¶ 103. Plaintiff claims that it discovered the alleged scheme to defraud when it uncovered incriminating emails and documents on Shore's company-owned computer and at his workstation after his termination. *Id.* ¶¶ 36, 86.

## III.    ARGUMENT

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and quotation marks omitted).

This pleading standard is heightened for fraud-based claims. Federal Rule of Civil Procedure 9(b) requires a complaint alleging fraud to state the circumstances constituting fraud "with particularity." "This means that a plaintiff, at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Vanderbilt Univ. v. Scholastic, Inc.*, 382 F.Supp.3d 734, 764 (M.D. Tenn. 2019) (quoting *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)). Additionally, "when a plaintiff asserts fraud claims against multiple defendants, it typically must make specific allegations as to each defendant's alleged involvement." *McLearn v. Wyndham Resort Dev. Corp.*, No. 3:19-cv-00004, 2020 WL 1189844, at *4 (M.D. Tenn. Mar. 11, 2020). "Group pleading," in which alleged

misrepresentations are attributed to a group of defendants collectively rather than to specific defendants individually, "fails to meet Rule 9(b)'s specificity requirements." *Constr. Mgmt., Inc. v. Expo Hosp., LLC*, No. 3:19-cv-00298, 2019 WL 2917991, at *5 (M.D. Tenn. Jul. 8, 2019) (quoting *D.E.&J Ltd. P'ship v. Conaway*, 284 F.Supp.2d 719, 730 (E.D. Mich. 2003)) (cleaned up).

Plaintiff asserts five claims against Mr. Bingham: violation of the Racketeering and Corrupt Organizations Act ("RICO") (Count I), Conspiracy (Count II), Fraud (Count IX), violation of the Tennessee Consumer Protection Act ("TCPA") (Count X), and Conversion (Count XI). Four of those five claims—namely, the RICO, conspiracy, fraud, and TCPA claims—are fraud-based claims. They are therefore subject to Rule 9(b)'s heightened pleading requirements, which they fail to meet for the reasons set forth below. Accordingly, each of Plaintiff's fraud-based claims against Mr. Bingham must be dismissed due to their failure to plead fraud with particularity. Alternatively, the RICO claim must be dismissed due to its failure to allege a RICO enterprise that is separate and distinct from the pattern of racketeering activity in which it was engaged, and the TCPA claim must be dismissed because it is time-barred.

Plaintiff's fifth claim against Mr. Bingham—conversion (Count XI)—also suffers from a pleading deficiency. Namely, Plaintiff fails to allege that Mr. Bingham appropriated a specific sum of money that rightfully belonged to Plaintiff.

For the reasons set forth above and explained in greater detail below, Plaintiff has failed to state a claim against Mr. Bingham. Accordingly, all five claims against Mr. Bingham must be dismissed.

### A. Plaintiff Has Failed to State a Fraud Claim Against Mr. Bingham.

Count IX should be dismissed as to Mr. Bingham because Plaintiff has failed to identify any specific false or misleading statement made to it by Mr. Bingham—much less plead its fraud

claim against Mr. Bingham with the particularity required by the Federal Rules of Civil Procedure. To state a claim for fraud, a plaintiff must show:

> (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

*Vanderbilt Univ.*, 382 F.Supp.3d at 763. As noted above, a claim for fraud also must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Additionally, "when a plaintiff asserts fraud claims against multiple defendants, it typically must make specific allegations as to each defendant's alleged involvement." *McLearn*, 2020 WL 1189844, at *4.

Plaintiff's fraud claim against Lowe's and the Lowe's Individual Defendants (including Mr. Bingham) is premised on the allegation that "[b]y causing Lowe's invoices to be sent to [Plaintiff] for payment, Bingham, Chevrette, Johnson, Weber, Knowles, and/or Matthews represented to [Plaintiff] that Lowe's was supplying labor and materials to [Plaintiff's] construction projects at competitive prices or attempted to cover up that Lowe's had not done so." Compl. ¶ 185. This allegation—which attributes the purportedly fraudulent Lowe's invoices to "Bingham, Chevrette, Johnson, Weber, Knowles, and/or Matthews"—fails to describe a misrepresentation **by Mr. Bingham** with the specificity required by Rule 9(b). *See, e.g., Hoover v. Langston Equip. Assoc.'s, Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) (concluding that district court did not err in finding that "plaintiffs had not alleged with specificity who had made particular misrepresentations . . . but rather plaintiffs had articulated general averments of fraud attributed to 'the defendants'"). *See also Constr. Mgmt.*, 2019 WL 2917991, at *5 (explaining that "group pleading fails to meet Rule 9(b)'s specificity requirements") (cleaned up). Nor does the Complaint

allege elsewhere that Mr. Bingham created the allegedly fraudulent invoices, transmitted the invoices to Plaintiff, or made any other statement or representation of a material fact to Plaintiff.

In fact, the Complaint attributes only two statements to Mr. Bingham. Neither of those statements can serve as the basis for Plaintiff's fraud claim for the reasons set forth below. First, Plaintiff describes an email in which "Bingham and Weber asked Shore for a lumber estimate on the Union Brick project[.]" Compl. ¶ 80(i). This allegation describes a question posed by Mr. Bingham and Mr. Weber to Shore—not any sort of false representation made by Mr. Bingham to Plaintiff. And while the Complaint alleges that Shore's estimate ultimately was provided to Plaintiff, it does not allege that Mr. Bingham communicated the estimate to Plaintiff or made any misrepresentation regarding the estimate. Instead, the Complaint merely alleges that "Lowe's estimate (which was really Shore's estimate) was provided to [Plaintiff]." *Id.* This allegation fails to identify the individual who transmitted this particular estimate to Plaintiff, the date on which the estimate was transmitted, or the content of the communication containing the estimate. It therefore falls far short of meeting Rule 9(b)'s heightened pleading standard and cannot serve as the basis for *any* fraud claim—and certainly not the fraud claim against Mr. Bingham.

The second statement attributed to Mr. Bingham describes a quote for sinks that Mr. Bingham sent to Heath. According to Plaintiff, "on August 30, 2021, Bingham sent Heath an email with a quote, which included a profit mark-up by Lowe's, for Franklin's sinks, which HYDS marked up again before invoicing [Plaintiff] for the sinks." *Id.*, ¶ 102. This statement cannot serve as the basis for the fraud claim against Mr. Bingham because there is no allegation that Mr. Bingham's "email with a quote" contained a material misrepresentation. While Plaintiff alleges that the quote contained "a profit mark-up by Lowe's," Plaintiff does not allege that Mr. Bingham made any misrepresentation regarding the mark-up whatsoever. Nor does it contend that the mark-

up exceeded Lowe's standard mark-up on the sinks at issue or that there was even anything unusual about a retailer like Lowe's applying mark-ups to materials that it sold. The mere fact that Mr. Bingham sent a quote that included a mark-up to Heath cannot serve as the basis for Plaintiff's fraud claim against Mr. Bingham. *See, e.g., Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 391 (6th Cir. 1996), abrogation on other grounds recognized by *Riverview Health Inst. LLC v Med. Mut. of Ohio*, 601 F.3d 505 (6th Cir. 2010) (concluding that, because plaintiff failed to explain how certain "premiums and finance charges"—which the plaintiff characterized as "kickbacks"—constituted fraudulent misstatements, plaintiff did not sufficiently plead the misrepresentation element of fraud).

This Court frequently dismisses fraud claims against individual defendants when plaintiffs improperly attribute the statements at issue to groups of defendants and fail to identify any specific false or misleading statements made by the individual defendants themselves. *See, e.g., Vanderbilt Univ.*, 382 F.Supp.3d at 764 (Crenshaw, J.) (dismissing fraud claim against two defendants because plaintiff "[did] not identify, as required, the details of any specific false or misleading statement allegedly made to it by" the defendants); *McLearn*, 2020 WL 1189844, at *4 (dismissing fraud claim because "Plaintiffs . . . fail to distinguish among the six Wyndham Defendants to identify which Defendant(s) made the allegedly fraudulent statements" and noting that "Plaintiffs' repeated reference simply to 'Defendants' or 'Wyndham' is not sufficient"). Because Plaintiff has premised its fraud claim against Mr. Bingham on representations allegedly made by groups of defendants—rather than on any specific statement allegedly made by Mr. Bingham himself—it has failed to state a claim for fraud against Mr. Bingham.

Plaintiff's fraud claim against Mr. Bingham suffers from another fatal flaw separate and apart from its failure to identify an actionable misstatement of material fact made by Mr. Bingham:

Plaintiff cannot plead reasonable reliance on any of the Defendants' alleged misrepresentations. Plaintiff is a building and construction company that gathers competitive bids from suppliers in the ordinary course of its business. *See* Compl. ¶¶ 7, 42. As a result, Plaintiff either knew or should have known if it was paying higher prices than expected for certain materials or if any of the Defendants represented that Plaintiff needed to purchase more materials than typically would be required for a certain type of construction project. The allegations set forth in the Complaint support this conclusion. Far from establishing that Plaintiff reasonably relied on the alleged misrepresentations at issue, Plaintiff's allegations demonstrate that certain allegedly fraudulent activity raised Plaintiff's suspicions. For example, Plaintiff admits that it made further inquiries after receiving an estimate from Lowe's in connection with its Union Brick project. *See* Compl. ¶ 80(i). Plaintiff also admits that it was "obvious" that the "dummy estimator" who responded to its inquiries "knew little to nothing about the estimate" that he purportedly provided pursuant to Defendants' allegedly fraudulent scheme. *Id.* A plaintiff who recognizes an "obvious" fraud cannot plead reasonable reliance. *See, e.g., First Tech. Cap., Inc. v. JPMorgan Chase Bank, N.A.,* 53 F.Supp.3d 972, 994 (E.D. Ky. 2014) ("Reliance is not justified if . . . [a representation's] falsity is obvious to the party."). Plaintiff's failure to demonstrate reasonable reliance independently requires dismissal of the fraud claim against Mr. Bingham.

**B. Plaintiff's RICO Claim Against Mr. Bingham Must Be Dismissed Because Plaintiff Has Failed to Adequately Allege Predicate Acts or the Existence of a RICO Enterprise.**

In Count I, Plaintiff asserts a RICO claim against all Defendants alleging mail and wire fraud as predicate acts. Pursuant to Section 1962(c) of RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

18 U.S.C. §1962(c). To state a claim under RICO, "a plaintiff must plead (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Pineda Transp., LLC v. FleetOne Factoring, LLC*, No. 3:18-cv-0089, 2018 WL 2137760, at *5 (M.D. Tenn. May 9, 2018). Establishing the existence of a RICO enterprise requires a plaintiff to "prove the existence of (1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged." *Id.* To allege the requisite pattern of racketeering activity, a plaintiff "must plead and prove at least two predicate acts of racketeering activity." *Williamson v. Ocwen Loan Serv., LLC*, No. 3:09-0514, 2009 WL 5205405, at *2 (M.D. Tenn. Dec. 23, 2009). Finally, because Plaintiff alleges mail fraud and wire fraud as the predicate acts for its RICO claim, the heightened pleading standards of FRCP 9(b) apply, and Plaintiff must state the circumstances constituting fraud with particularity. *See Dell'Aquila v. LaPierre*, 491 F.Supp.3d 320, 332 (M.D. Tenn. 2020).

According to Plaintiff, "[t]he Defendants formed an association-in-fact enterprise for the purpose of engaging in a scheme to unlawfully enrich themselves by fraudulently charging [Plaintiff] excessive amounts for unnecessary or excessive supplies or materials for its construction projects." Compl. ¶ 116. Additionally, Plaintiff alleges that "[t]he Defendants engaged in multiple, repeated, and continuous violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, each of which constitutes a predicate act of racketeering activity pursuant to 18 U.S.C. § 1961(1)." Compl. ¶ 122. Accordingly, the predicate offenses underlying Plaintiff's RICO claim are mail fraud and wire fraud.

Plaintiff's RICO claim against Mr. Bingham fails for two reasons. First, as explained in Part III.A above, Plaintiff has failed to allege a fraud claim against Mr. Bingham. It follows that Plaintiff cannot allege fraud as the predicate offense underlying its RICO claim against Mr. Bingham. Plaintiff's failure to plead a predicate offense requires dismissal of its RICO claim against Mr. Bingham. *See, e.g., Dell'Aquila*, 491 F.Supp.3d at 333 (dismissing RICO claim based upon predicate acts of mail fraud because plaintiffs failed to adequately plead a fraudulent misrepresentation and therefore could not establish the predicate acts necessary to state a RICO violation).

Second, Plaintiff has failed to identify a RICO "enterprise that was separate and distinct from the pattern of racketeering activity in which it engaged." *Pineda Transp.*, 2018 WL 2137760, at *5. "[B]oth the Supreme Court and the Sixth Circuit have made clear that the purpose of the enterprise . . . 'must be separate from the pattern of racketeering activity in which it engages.'" *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 WL 4279233, at *2 (N.D. Ohio Sept. 10, 2019) (quoting *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993). "[I]f a group of individuals associate together for the common purpose of committing a series of unlawful acts (and those unlawful acts are also RICO predicate acts), the common purpose is not separate from the pattern of racketeering activity, and there is no RICO violation." *Id.* Here, Plaintiff alleges the existence of an "association-in-fact enterprise" that was formed by Defendants "for the purpose of engaging in a scheme to unlawfully enrich themselves by fraudulently charging [Plaintiff] excessive amounts for unnecessary or excessive supplies or materials for its construction projects." Compl. ¶ 116. It is clear from the face of this allegation that the purpose of the alleged enterprise and its pattern of racketeering activity are one and the same. Namely, the purpose of the alleged enterprise was to defraud Plaintiff, and the pattern of racketeering activity by which the enterprise

allegedly accomplished this goal involved "multiple, repeated, and continuous violations of the federal mail and wire fraud statutes[.]" Compl. ¶ 122. Plaintiff's failure to allege a RICO enterprise that is separate and distinct from its pattern of racketeering independently requires dismissal of its RICO claim.

### C. Plaintiff's Conspiracy Claim Against Mr. Bingham Must Be Dismissed Because It Has Failed to Plead an Underlying Wrong.

To plead a claim for civil conspiracy under Tennessee law, a plaintiff must allege facts showing: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Nippert v. Jackson*, 860 F.Supp.2d 554, 566 (M.D. Tenn. 2012) (quoting *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006)). "[P]articipation in a civil conspiracy is not, by itself, an actionable tort." *Id.* at 567. Instead, "to be actionable under Tennessee law, a civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *First Am. Title Ins. Co. v. Cumberland Cnty. Bank*, 633 F.Supp.2d 566, 588 (M.D. Tenn. 2009). Because Plaintiff's conspiracy claim asserts a conspiracy to commit fraud, it is subject to the heightened pleading standards of FRCP 9(b) and must be pled with particularity. *See, e.g., U.S. ex rel. Dennis v. Health Mgmt. Assoc.'s, Inc.*, No. 3:09–cv–00484, 2013 WL 146048, at *17 (M.D. Tenn. Jan. 14, 2013).

As explained in Part III.A. above, Plaintiff has failed to plead its fraud claim with the requisite particularity. Because Plaintiff's conspiracy claim rests upon the same allegations of fraud—and is subject to the same pleading standard—as its fraud claim, the Court also must dismiss the conspiracy claim against Mr. Bingham.

### D. Plaintiff's TCPA Claim Must Be Dismissed.

The TCPA allows a plaintiff "who suffers a loss of money or property as a result of another person's unfair or deceptive acts declared unlawful by the TCPA [to] bring an action to recover actual damages against the offending person." *Wendy's of Bowling Green, Inc. v. Marsh USA, Inc.*, No. 3-10-1043, 2012 WL 370486, at *5 (M.D. Tenn. Feb. 3, 2012). "[T]o recover under the TCPA, a plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an ascertainable loss of money or property." *Id.* The TCPA enumerates the specific "unfair or deceptive acts or practices" that are "declared to be unlawful and in violation of this part[.]" *See* Tenn. Code Ann. § 47-18-104(b). "Complaints alleging unfair or deceptive acts or practices under the Tennessee Consumer Protection Act are subject to Rule 9(b)'s heightened pleading standard. Therefore, if a TCPA claim fails to provide the particularity required, it will be dismissed." *McLearn*, 2020 WL 1189844, at *3, n.9.

Count X of the Complaint alleges that Lowe's and the Lowe's Individual Defendants (including Mr. Bingham) violated the TCPA. According to Plaintiff, "[t]he Individual Lowe's Defendants purposefully and willfully misrepresented the source of the estimation services provided to [Plaintiff] in regard to the various projects overseen by Shore. Particularly, Shore performed the estimation services, the Individual Lowe's Defendants knew this, they passed off these estimates as legitimate, and they represented that Shore's estimates were performed by an unrelated third party." Compl. ¶ 198.

Plaintiff's TCPA claim must be dismissed because it is time-barred. The TCPA has a one-year statute of limitations. Tenn. Code Ann. § 47-18-110. The statute of limitations begins to run "from a person's discovery of the unlawful act or practice[.]" *Id.* Tennessee's discovery rule applies to TCPA claims. *See, e.g., Forsyth v. Bank of Am., N.A.*, No. 2:11-cv-191, 2012 WL

12841927, at *2 (E.D. Tenn. Sept. 27, 2012). Accordingly, "the statute of limitations begins to run when the injury is discovered, or in the exercise of reasonable care and diligence, the injury should have been discovered." *Id.* (quoting *Quality Auto Parts Co. v. Bluff City Buick Co.,* 876 S.W.2d 818, 820 (Tenn. 1994). "[T]he discovery rule 'does not allow [a] plaintiff to delay filing suit until [it] knows the full extent of [its] damages, or the specific type of legal claim [it] has." *Vidafuel, Inc. v. Kerry, Inc.*, No. M2024-00041-COA-R3-CV, 2024 WL 4665502, at *9 (Tenn. Ct. App. Nov. 4, 2024) (quoting *Eldridge v. Savage*, No. M2016-01373-COA-R3-CV, 2017 WL 5901028, at *5 (Tenn. Ct. App. Nov. 29, 2017). Instead, "[o]nce the plaintiff gains information sufficient to alert a reasonable person to the need to investigate the injury, the limitation period begins to run." *Id.* (quoting *Eldridge*, 2017 WL 5901028, at *5) (cleaned up).

Plaintiff's TCPA claim is time-barred because Plaintiff either discovered or should have discovered its alleged injuries earlier than October 21, 2023.[4] The Complaint alleges that Plaintiff terminated Shore's employment on September 7, 2023. Compl. ¶ 35. It also alleges that, following Shore's termination, Plaintiff "identified a number of irregularities concerning Shore's activities[,]" which revealed that "Shore, in concert with the other Defendants, had been perpetrating a fraud on [Plaintiff]." *Id.* ¶ 36. For example, Plaintiff discovered a copy of an email that Shore "left . . . behind in his FCG desk" that revealed that Plaintiff had made tens of thousands of dollars overpayments as a result of the alleged fraudulent scheme. Compl. ¶ 62–63. Plaintiff also admits that evidence of the alleged scheme existed in "records Shore left behind on his FCG workstation." Compl. ¶ 86. This purported "evidence" was clearly sufficient to alert Plaintiff of the need to investigate further, which is exactly what Plaintiff did. For example, Plaintiff admits

---

[4] Plaintiff filed its Complaint on October 21, 2024. Accordingly, Plaintiff must have discovered its alleged injuries no later than October 21, 2023.

that it questioned Mr. Knowles about a Lowe's credit card allegedly issued to Shore on or before September 18, 2023. Compl. ¶ 99. It is therefore clear from the face of the Complaint that Plaintiff was aware of its alleged injury—and the limitations period began to run—by at least September 18, 2023. Accordingly, Plaintiff was required to file its TCPA claim on or before September 18, 2024. Since Plaintiff did not do so until October 21, 2024, its TCPA claim is time-barred and must be dismissed.

Alternatively, Plaintiff's TCPA claim against Mr. Bingham must be dismissed because Plaintiff has failed to allege the claim against him with the requisite particularity. As explained in Part III.A above, Plaintiff has failed to identify any misrepresentation made by Mr. Bingham to Plaintiff at all—let alone any sort of "purposeful[] and willful[]" misrepresentation regarding "the source of the estimation services provided to [Plaintiff] in regard to various projects overseen by Shore." Compl. ¶ 198. While Plaintiff references an email in which "Bingham and Weber asked Shore for a lumber estimate on the Union Brick project[,]" this allegation describes a question posed by Mr. Bingham and Mr. Weber to Shore—not any sort of false representation made by Mr. Bingham to Plaintiff. *See id*. ¶ 80(i). And while the Complaint alleges that "Shore and the Individual Lowe's Defendants who participated in this scheme [related to the Union Brick project] arranged for [Plaintiff's] project manager to speak with a dummy estimator about the estimate" in order to conceal the fact that Lowe's had used Shore as its estimator, this allegation both fails to describe a statement by Mr. Bingham to Plaintiff and otherwise fails to meet the particularity requirements of Rule 9(b). *Id*. Plaintiff does not allege which of the Individual Lowe's Defendants arranged for Plaintiff's project manager to speak with the purported "dummy estimator," what representations the Lowe's Individual Defendants made to Plaintiff regarding the "dummy estimator," when and where the conversation between Plaintiff's project manager and the "dummy

estimator" took place, or details regarding any statements made by the "dummy estimator" to Plaintiff's project manager. Accordingly, the allegations regarding Lowe's use of Shore as an estimator on Plaintiff's Union Brick project fail to state a TCPA claim against Mr. Bingham with the requisite particularity.[5] The TCPA claim against Mr. Bingham therefore must be dismissed.

### E. Plaintiff's Conversion Claim Against Mr. Bingham Must Be Dismissed Because It Fails to Allege That Mr. Bingham Appropriated a Specific, Identifiable Sum Rightfully Owned by Plaintiff.

The elements of a conversion claim under Tennessee law are: "(1) an appropriation of another's tangible property to one's use and benefit; (2) an intentional exercise of dominion over the chattel alleged to have been converted; and (3) defiance of the true owner's rights to the chattel." *Luminor Consulting Corp. v. Elmessiry*, No. 3:22-cv-00555, 2023 WL 4675668, at *5 (M.D. Tenn. July 19, 2023) (quoting *Harris v. Ally Fin. Inc.*, 2-15-cv-02501, 2015 WL 7588263, at *4 (W.D. Tenn. Nov. 25, 2015). "The first element necessarily requires the party pleading a conversion claim to have an ownership right in the allegedly converted chattel at the time of the alleged conversion." *Id.*

"Because money is intangible, it is generally not subject to a claim for conversion." *Commc'ns Unlimited Contracting Servs., Inc. v. Comdata, Inc.*, No. 3:17-cv-01158, 2018 WL 418566, at *2 (M.D. Tenn. Jan. 16, 2018) (citing *PNC Multifamily Cap. Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012). However, an exception exists "where the money is specific and capable of identification or where there is a

---

[5] Plaintiff also alleges that two of the Lowe's Individual Defendants, Danny Knowles and Scott Matthews, attempted to cover up the fact that Lowe's used Mr. Shore as an estimator after Plaintiff terminated Mr. Shore. *See* Compl. ¶¶ 81–85. The Complaint does not allege that Mr. Bingham was involved in this purported cover-up. As a result, these allegations cannot serve as the basis for a TCPA claim against Mr. Bingham.

determinate sum the defendant was entrusted to apply to a certain purpose." *Brown v. J. Rockett Audio Designs, LLC*, No. 1:17-cv-00093, 2018 WL 3656481, at *2 (M.D. Tenn. Aug. 2, 2018) (citation omitted). If a plaintiff alleges conversion of money, then it is still "fundamental" that the plaintiff "show title or rightful ownership of the . . . money at the time of the alleged conversion." *Luminor Consulting Corp.*, 2023 WL 4675668, at *5 (quoting *J&R Passmore, LLC v. Rice Drilling D, LLC,* 2-18-cv-01587, 2023 WL 2667749, at *19 (S.D. Ohio Mar. 28, 2023) (cleaned up).

Plaintiff alleges that "[b]y causing [Plaintiff] to pay amounts to which Lowe's was not entitled, Lowe's, Bingham, Chevrette, Johnson, Weber, Knowles, and/or Matthews intentionally exercised dominion and control over, and appropriated for their own use and benefit, [Plaintiff's] money in violation of its rights." Compl. ¶ 210. It also alleges that "[a]s a result of the above-described misappropriation and conversion by Lowe's, Bingham, Chevrette, Johnson, Weber, Knowles and/or Matthews, they enriched themselves by obtaining commissions or other compensation on the supplies and materials they were defrauding [Plaintiff] into purchasing pursuant to the above-described scheme." *Id.* ¶ 211. These allegations are insufficient to state a claim for conversion against Mr. Bingham because they fail to describe specific, identifiable funds belonging to Plaintiff that were wrongfully appropriated by Mr. Bingham.

In fact, the Complaint does not allege that Mr. Bingham appropriated any funds from Plaintiff at all. The only money that Mr. Bingham himself is alleged to have received pursuant to the alleged scheme are payments totaling "at least $31,650" from "Shore or JWSC" for "commissions & fees." *Id.* ¶ 86. This allegation falls far short of describing the wrongful acquisition of a specific, identifiable sum that rightfully belonged to Plaintiff, as is required to state a claim for conversion of money. *See Brown*, 2018 WL 3656481, at *2 ("Plaintiff has not alleged Defendants wrongfully acquired, or misapplied, a specific and determinant sum of money

belonging to him. Accordingly, Plaintiff's claim for conversion fails to state a claim under Tennessee law, and is dismissed.") Accordingly, Plaintiff's conversion claim against Mr. Bingham must be dismissed.

**IV.** <u>**CONCLUSION**</u>

For the reasons set forth above, Mr. Bingham respectfully requests that the Court dismiss, with prejudice, all counts asserted against him.

Respectfully submitted,

*/s/ R. Brandon Bundren*
R. Brandon Bundren (BPR #30985)
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
P: 615.252.4647
F: 615.248.3047
bbundren@bradley.com

*Attorney for Dean Bingham*

19

## CERTIFICATE OF SERVICE

I certify that on January 17, 2025, I electronically filed a true and correct copy of the Memorandum of Law in Support of Dean Bingham's Motion to Dismiss with the Clerk of Court for the U.S. District Court for the Middle District of Tennessee through the Court's Electronic Case Filing System, which will automatically serve all counsel of record listed below:

| | |
|---|---|
| Todd E. Panther (tpanther@srvhlaw.com) Christopher C. Sabis (csabis@srvhlaw.com) Thomas B. Hall (thall@srvhlaw.com) SHERRARD ROE VOIGT & HARBISON, PLC<br><br>*Counsel for Plaintiff*<br><br>Don L. Hearn, Jr. (dhearn@glanker.com) GLANKER BROWN, PLLC<br><br>Joseph C. Gjonola (jcg@rpnalaw.com) Nadine Alsaadi (na@rpnalaw.com) Nicholas P. Roxborough (npr@rpnalaw.com) ROXBOROUGH POMERANCE NYE & ADREANI LLP<br><br>*Counsel for Keath Meadows, Joseph Heath, HYDS Inc.*<br><br>Jerry E. Martin (jmartin@barrettjohnston.com) Matthew Edward McGraw (mmcgraw@barrettjohnston.com) Seth Marcus Hyatt (shyatt@barrettjohnston.com) BARRETT JOHNSTON MARTIN & GARRISON, LLC<br><br>*Counsel for Keith Meadows and HYDS Inc.* | Darrick Lee O'Dell (dodell@spicerfirm.com) Nicholas C. Stevens (nstevens@spicerfirm.com) Robert J. Uhorchuk (rju@spicerfirm.com) SPICER RUDSTROM, PLLC<br><br>*Counsel for Lundon Johnson, Joel Chevrette, Danny Knowles*<br><br>Scott D. Carey (scarey@bakerdonelson.com) Gary C. Shockley (gshockley@bakerdonelson.com) Ryan P. Loofbourrow (rloofbourrow@bakerdonelson.com) BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC<br><br>*Counsel for Lowe's Home Centers, Inc.* |

/s/ R. Brandon Bundren
R. Brandon Bundren