**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **FRANKLIN CONSTRUCTION GROUP, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | **CASE NO. 3:24-cv-01255** |
| **WILLIAM SHORE, JWSC, LLC, KEITH** | ) | |
| **MEADOWS, JOSEPH HEATH, HYDS INC.,** | ) | **District Judge Crenshaw** |
| **DEAN BINGHAM, LUNDON JOHNSON,** | ) | **Magistrate Judge Frensley** |
| **TYLER WEBER, JOEL CHEVRETTE,** | ) | |
| **DANNY KNOWLES, SCOTT MATTHEWS,** | ) | |
| **and LOWE'S HOME CENTERS, INC.,** | ) | |
| | ) | |
| **Defendants** | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Keith Meadows and HYDS, Inc. have moved to dismiss Count I of Franklin Construction Group, LLC ("FCG")'s Complaint (ECF. No. 1) ("Compl.") for failure to state a claim. Count I pleads a civil RICO violation against all Defendants but fails to adequately plead the existence of an "enterprise" or a sufficient "pattern" of misconduct to satisfy the statute's requirements under 18 U.S.C. § 1962(c). For the same reasons, FCG also fails to establish a conspiracy to violate RICO under § 1962(d).

Defendants Meadows and HYDS have further moved, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss all remaining claims for want of subject matter jurisdiction. Count I is the only Count in FCG's complaint that arises under federal law. The parties are not fully diverse so FCG cannot claim diversity jurisdiction, and there is no sound basis for this Court to exercise supplemental jurisdiction over FCG's remaining state law claims once its federal causes of action are dismissed.

1

## INTRODUCTION

In its Complaint, FCG makes conclusory claims of a RICO violation to bind together its otherwise unrelated claims against HYDS, Inc., Keith Meadows, and Jospeh Heath (the "HYDS Defendants") on the one hand and Lowe's Home Centers, Inc., and six of its employees (the "Lowe's Defendants") on the other. Even under the most liberal construction, FCG's allegations fail to establish that these two distinct groups operated as an enterprise or perpetrated a continuing pattern of racketeering activity—both required elements under RICO.

Contrary to FCG's assertion, its Complaint does not allege any overarching RICO scheme. It alleges two independent schemes by two different groups of defendants. First, it alleges a scheme by the HYDS Defendants and FCG employee William Shore ("Shore") to overbill FCG for materials for FCG's construction projects. Second, it alleges an unrelated scheme by the Lowe's Defendants to defraud FCG by diverting company resources to purchase construction materials for Mr. Shore's purported "side projects." What FCG fails to do is allege facts sufficient to link these two disparate schemes together.

This deficiency is obviously fatal to FCG's RICO Claim (set forth in Count I of the Complaint). It is also fatal to the case as a whole, as this Court's subject matter jurisdiction depends upon the RICO claim—the only claim in the Complaint that arises under federal law. Without it, there is no basis for this Court to exercise jurisdiction over any of FCG's thirteen other causes of action, which should all be dismissed for want of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

FCG's motivation for including a RICO Count in its complaint is readily apparent. First, as noted, this Court would otherwise lack jurisdiction over any of FCG's claims, as the parties are not diverse, and there is no basis for assuming supplemental jurisdiction over the remaining causes of action.

Second, by framing these two distinct schemes as a single RICO enterprise, FCG hopes to avail itself of joint and several liability, by holding the HYDS Defendants liable for the purported acts of the Lowe's Defendants—and vice versa—and to hold both sets of Defendants liable for the bad acts of FCG's own purportedly rogue employee, Mr. Shore. As set forth in the second paragraph of its Prayer for Relief, FCG seeks "a judgment against all Defendants, jointly and severally, for all damages to which FCG is entitled as a result of their RICO violations and civil conspiracy. . . ." That is an appropriate request in a RICO case. But, again, this is not a RICO case. Accordingly, FCG's efforts to bind these alleged schemes together and spread liability for all claims to all defendants is inappropriate.

In short, the Court should not allow this case to proceed under the RICO Act based upon FCG's conclusory allegations, which fail to establish the required elements of a bona fide RICO violation. If the Court concludes that the Complaint fails to adequately plead this cause of action, then the remainder of the case should likewise be dismissed for lack of subject matter jurisdiction. In the alternative, should this Court choose to exercise supplemental jurisdiction and consider the merits of FCG's remaining state law claims, then this Court should dismiss all remaining counts against Defendant Meadows and Defendant HYDS—*i.e.* Count II (civil conspiracy), Count VI (fraud), Count VII (Tennessee Consumer Protection Act) and Counts VIII (conversion)—for also failing to state any claim on which relief can be granted.

## <u>FACTS AS ALLEGED BY PLAINTIFF IN THE COMPLAINT</u>

This is a case about a construction company, FCG, and its employee, William Shore ("Mr. Shore"), who ostensibly bilked FCG out of millions of dollars over the period of his employment.

During the time he worked for FCG as vice-president of construction operations, Mr. Shore was responsible for budgeting, hiring subcontractors and suppliers, approving invoices from subcontractors and suppliers, and handling the day-to-day operations of the projects he managed

3

for the company. (Compl. ¶¶ 32, 33). According to FCG, Mr. Shore abused this position to obtain kickbacks from suppliers in exchange for their business and by ordering building materials for his separate side business, JWSC, LLC, disguised as legitimate FCG purchases. Mr. Shore's alleged efforts to enrich himself at FCG's expense appear to have manifested in two distinct ways.

First, FCG alleges that sometime in or around September of 2021, Mr. Shore began a business relationship with HYDS, Inc., a construction material supplier, its owner, Keith Meadows, and Mr. Joseph Heath (collectively, the HYDS Defendants). (Compl. ¶ 37). HYDS became one of FCG's largest subcontractors and suppliers during this period. (Compl. ¶ 38).

According to FCG, these business dealings between Mr. Shore and the HYDS Defendants were premised on a kickback arrangement. Mr. Shore knew FCG's budgets for different building projects and knew the maximum amounts he could pay for materials "without detection," and passed this information to the HYDS Defendants, who would use that information to prepare inflated invoices. (Compl. ¶ 41). In return, HYDS allegedly provided kickbacks to Mr. Shore, either in the form of cash payments to Shore or JWSC, or free materials for the side projects Mr. Shore was building on his own. (Compl. ¶ 43).

Second, FCG alleges that Shore and JWSC engaged in a scheme with various Lowe's employees to funnel kickback payments to Shore for phony "estimating" services. (Compl. ¶ 76). In addition to monetary payments that "secured Shore's loyalty to Lowe's," (Compl. ¶77), this alleged scheme allowed Shore to overstate the type and quantity of materials needed, and also to invoice FCG for materials that were not for FCG projects at all but instead for Mr. Shore's side projects. (Compl. ¶ 87-89).

Based on these factual allegations, FCG contends that **all** Defendants in this case formed a RICO enterprise that engaged in a pattern of unlawful conduct that cost FCG millions of dollars.

4

(Compl. Count I ¶¶ 111-128). However, the Complaint contains no allegations connecting these two alleged schemes—other than the fact that both schemes centered on the actions of FCG's own employee, Mr. Shore, and that HYDS introduced Mr. Shore to Lowe's Defendant Dean Bingham. (Compl. ¶ 73).

## APPLICABLE LEGAL STANDARD

In order to state a claim capable of surviving a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hill v. Lapin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). A claim has facial plausibility only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft*, 556 U.S. at 678. The court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

For those claims FCG has asserted that constitute allegations of fraud, FCG must also meet the heightened pleading burden of Rule 9(b), which requires Plaintiff, at a minimum, to "allege the time, place, and content of the alleged misrepresentation on which [it] relied; the fraudulent scheme; and the injury resulting from fraud." *Heinrich v. Waiting Angels Adoption Svs, Inc.*, 668 F.3d 393, 403 (6th Cir. 2012). Because FCG has asserted RICO violations based on the predicate acts of mail and wire fraud, (Compl. ¶ 122), this heightened pleading standard applies to FCG's RICO claim. *See, e.g., Dell'Aquila v. LaPierre*, 491 F. Supp. 3d 320, 332 (M.D. Tenn. 2020) ("Plaintiffs alleging RICO violations based on mail fraud must meet the more rigorous pleading standards of Rule 9(b) with respect to their claims based on fraud.") (internal quotations omitted).

5

## ARGUMENT

FCG has made conclusory allegations of a RICO enterprise in order to tie together two distinct cases that FCG would otherwise have to litigate separately. The first case would involve FCG's allegations of the HYDS Defendants paying kickbacks to Mr. Shore to get inflated invoices paid. The second would involve FCG's allegations that the Lowe's Defendants, while also paying kickbacks, billed FCG for items that were actually being provided to Mr. Shore's side business, JWSC. The only attempt FCG makes to link these two cases together is claiming that HYDS introduced Mr. Shore to Defendant Dean Bingham (a Lowe's employee) (Compl. ¶ 74) and that, on two occasions, Shore allegedly had FCG order Lowe's materials through HYDS rather than from Lowe's directly. (Compl. ¶ 102).

Even accepting these allegations as true for purposes of this motion, this is far too thin a reed on which to build a RICO case. Put simply, there is no plausible claim of a RICO enterprise or conspiracy covering both the HYDS and the Lowe's Defendants. Without adequately pleading such an enterprise or linking these two groups together, that RICO claim fails as a matter of law. And without that claim—the only federal cause of action asserted—there is no subject matter jurisdiction for any of FCG's remaining claims, meaning the entire case must be dismissed.

Accordingly, pursuant to Fed. R. Civ. P. 12(b)(6), this Court should dismiss Count of FCG's complaint I (*i.e.* the RICO count) for failure to state a claim and dismiss the remaining counts under Fed. R. Civ. P 12(b)(1) for want of subject matter jurisdiction.

## I.      FCG fails to state a claim for any civil RICO violation.

The lynchpin of FCG's complaint—and the only claim that can justify proceeding in federal court against all named Defendants, is FCG's claim that Defendants violated the federal RICO statute. To establish a violation under this statute, the plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping*

6

*Supply*, 465 F.3d 719, 723 (6th Cir. 2006) *(quoting Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).

While FCG no doubt wishes to benefit from the treble damages and attorney's fees available under RICO, as well as the ability to hold all Defendants liable for all alleged misconduct through joint and several liability, FCG's allegations fall well short of what is required to establish either a RICO enterprise or a pattern of racketeering activity under 18 U.S.C. § 1962(c). For the same reasons, FCG also fails to establish a conspiracy to violate RICO under § 1962(d).

**A.** **Because FCG fails to plead the existence of a RICO enterprise, its § 1962(c) allegations must be dismissed for failure to state a claim.**

Courts have made clear that pleading an enterprise for RICO purposes requires more than pleading a simple conspiracy. *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 794 (6th Cir. 2012) (noting that an enterprise "requires a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach.") (internal quotations omitted). More specifically, the Sixth Circuit has held that to establish an enterprise-in-fact, which is what FCG has alleged, (ECF No. 1 ¶ 116), a plaintiff must ultimately prove three elements:

(1) An ongoing organization with some sort of framework or superstructure for making and carrying out decisions;

(2) That members of the enterprise functioned as a continuing unit with established duties; and

(3) That the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged.

*Ouwinga*, 694 F.3d at 793. While the Supreme Court has read the term "enterprise" broadly, *see Boyle v. U.S.*, 938, 944 (2009), it must still have some discernable structure and pattern of relationships in order to fit within the RICO statute. *Id.* at 946; *see also Brown v. Hanover Am. Ins. Co.*, No. 2:20-CV-02415, 2021 WL 2954412, at *4 (W.D. Tenn. July 14, 2021), *aff'd*, No. 21-

7

5901, 2022 WL 1100461 (6th Cir. Apr. 13, 2022) ("Even in a case involving multiple instances of fraud, this Court has found a failure to allege an enterprise where the allegations lacked a chain of command and structure.").

Here, FCG has failed to allege any facts showing a framework or organizational structure linking the HYDS and the Lowe's Defendants together. The first 40 paragraphs of FCG's fact section do not mention the Lowe's Defendants **at all**. (*See* Compl. ¶¶ 32-72). When Lowe's finally enters the narrative, at paragraph 73, the only fact FCG cites to link together these two sets of disparate defendants is Joseph Heath introducing Mr. Shore to Dean Bingham of Lowe's, stating via email to Mr. Shore on December 9, 2020 that Lowe's "can save you lots of money on projects send him over anything you have and see what he can do for you." (Compl. ¶ 74).

It should go without saying that this simple act of introducing one business acquaintance to another falls short of the decision-making structure necessary to make out a RICO enterprise. *See*, *e.g.*, *Robins v. Global Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 653 (N.D. Ohio Jan. 18, 2012) ("Routine business relationships, without more, are insufficient to establish a RICO claim."); *see also Smith v. Nationstar Mortg.*, No. 1:17 CV 1483, 2017 WL 6594009, at *4 (N.D. Ohio Dec. 21, 2017) (citing *Robins* for the same proposition) *aff'd sub nom. Smith v. Nationstar Mortg., LLC*, 756 F. App'x 532 (6th Cir. 2018); *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 701 (E.D. Mich. 2020) ("Courts have overwhelmingly rejected efforts to characterize ordinary business relationships as RICO enterprises.") (internal quotations omitted).

The date of this email introduction—December 9, 2020—is also problematic for FCG's claim. According to the company's own allegations, "Shore caused FCG to engage HYDS as a supplier on various FCG construction projects beginning sometime no later than **September 2021**." (Compl. ¶ 37) (emphasis added). That means the Lowe's Defendants "join[ed] the

8

scheme" (Compl. at 18 of 53, heading C) in December of 2020, even though FCG separately alleges that the scheme did not even commence for approximately nine more months—in September of 2021.

FCG may try to brush away this incongruity by pointing to the qualifying phrase "no later than" September 2021. (Compl. ¶ 37). However, FCG fails to plead any facts that even suggest any earlier date. Moreover, throughout its complaint, FCG emphasizes the amount of evidence it has already gathered from Mr. Shore's company-owned computer. (*See* Compl. ¶ 36) ("That led to an examination of Shore's company-owned computer, which revealed personal financial information . . . indicating that Shore, in concert with the other Defendants, had been perpetrating a fraud on FCG **from at least September 2021** until his termination.") (emphasis added). If FCG had evidence of this alleged scheme extending further back in time than September of 2021, it would presumably have pled such evidence here. The fact that the Complaint asserts that the Lowe's Defendants "joined the scheme" through an introduction that occurred about nine months before that scheme was alleged to have started—without any additional explanation— demonstrates how far FCG is overreaching in trying to bind these disparate defendants together into a RICO enterprise.

Over the next twenty-five or so paragraphs of the Complaint, FCG then describes a scheme by the Individual Lowe's defendants, together with Mr. Shore, to (1) "secure Shore's loyalty to Lowe's, rather than Shore's employer, FCG" by hiring Mr. Shore and his company to serve as a Lowe's estimator, (*see*, *e.g.*, Compl. ¶ 77), and (2) billing FCG for materials that were actually used by Mr. Shore for his separate side projects. (*see*, *e.g.*, Compl. ¶¶ 87-88). At no point in this long narrative does FCG even attempt to link these actions to any of the HYDS Defendants. (Compl. ¶¶ 75-101).

9

Finally, at paragraph 102, FCG attempts to make that link—in a single paragraph—but the attempt falls flat. According to FCG, "Lowe's Individual Defendant Bingham further conspired with Shore, Meadows, and Heath to defraud FCG by Shore issuing purchase orders to HYDS for Lowe's materials at a cost to FCG that was well above market pricing," citing two ostensible examples. (*Id.* ¶ 102). Neither of these examples holds up under even modest scrutiny.

The first example makes no sense on its face. FCG alleges that "Lowe's and HYDS both **profited**" by billing FCG $30,000 for light fixtures when the "market contractor cost" of those light fixtures was less than $15,000.[1] (*Id.*) (emphasis added). However, the facts FCG alleges in this paragraph suggests that HYDS and Lowe's would actually have lost money through this transaction if it proceeded in the way that FCG claims. Specifically, FCG claims that HYDS paid Shore a $23,718.85 kickback linked directly to these light fixtures. (*Id.*) That payment would obviously have counted against HYDS' profits from this sale. So what FCG is alleging is that HYDS **paid** an extra $23,718.85 in order to **bill** for an extra $15,000. The math here simply makes no sense.

The second example cited at paragraph 102 is devoid of any detail. FCG claims that Bingham sent Heath a quote via email "which HYDS marked up again before invoicing FCG for the sinks." (*Id.*) Unlike other examples provided throughout the complaint, FCG provides no information on (1) what this mark-up was, (2) how much it was for, (3) who made it, and (4) if and when FCG even paid it. Nor is there any suggestion that HYDS ever asked Mr. Shore to source Lowe's products through HYDS rather than buying from Lowe's directly. FCG's own allegations show that Shore generally **was** buying directly from Lowe's, and that these examples

---

[1] Throughout the Complaint, FCG makes representations about the true, market price for various items provided by FCG, but never explains the basis for such representations.

of going through HYDS for Lowe's products were very much the exception rather than part of any broader pattern.

In short, the facts that FCG sets forth to link the HYDS Defendants and Lowe's Defendants into a cohesive enterprise amount to nothing more than (1) a HYDS representative facilitating an introduction nine months before any allegedly fraudulent scheme arose, and (2) Mr. Shore ordering **thousands** of dollars worth of Lowe's supplies through HYDS on one or two discrete occasions, while ordering **tens of millions of dollars** worth of supplies directly from Lowe's (Compl. ¶ 104), with no claimed involvement from or financial benefit to any HYDS Defendant. If FCG actually had evidence linking these two purported schemes then it would have devoted more than a single paragraph to it in its 241-paragraph complaint.

An even bigger problem for FCG is that nothing in its allegations so much as hints at the HYDS Defendants knowing about any other Lowe's-side members of this ostensible enterprise, much less working with them. FCG tries to tie these defendants together—and make them legally liable for one another's alleged misdeeds—but fails to identify any documents or communications connecting any HYDS Defendant with named Defendants Ludon Johnson, Tyler Weber, Joel Chevrette, Danny Knowles, or Scott Matthews in any way. This is a critical defect. While an enterprise-in-fact may be an elastic concept, the RICO statute still "require[s] a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach." *Abrams v. First Tennessee Bank Nat. Ass'n*, No. 3:03-CV-428, 2007 WL 708564, at *4 (E.D. Tenn. Mar. 5, 2007). Given FCG's failure to credibly allege that the HYDS Defendants were even aware of five of the six Individual Lowe's Defendants, FCG cannot establish this required element of its 18 U.S.C. § 1962(c) RICO claim. That claim should accordingly be dismissed with prejudice from this case.

**B.** **The course of conduct FCG alleges does not rise to the level of a pattern of racketeering activity because FCG fails to plead sufficient scope or continuity.**

Another, related shortcoming in FCG's complaint, is that it fails to allege any true pattern of racketeering activity. To plead a RICO violation, a plaintiff must allege "that the RICO enterprise engaged in a 'pattern of racketeering activity' consisting of at least two predicate acts of racketeering activity occurring within a ten-year period." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (*quoting* 18 U.S.C. § 1961(5). To satisfy this criteria, the predicate acts must have sufficient continuity to show that the scheme bears the markings of the sort of "long-term criminal conduct" about which "Congress was concerned" when it enacted the statute. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989). Whether a pattern of racketeering activity satisfies this continuity requirement depends on the particular facts of each case. *Id.* at 241.

FCG fails to allege sufficient continuity to satisfy this required element. The problem with the Complaint's allegations is not necessarily their temporal scope, but their incredibly narrow focus. *See Moon,* 465 F.3d at 725 ("[E]ven if the racketeering activity lasted for two-and-a-half years . . . facts establishing a closed period of continuity are still lacking."). All of the conduct FCG alleges stems from one FCG employee, Mr. Shore, and there is no suggestion of any victims other than FCG itself. In similar circumstances, other courts have found such narrowly-focused conduct not to rise to the level of RICO offenses. *See*, *e.g.*, *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) ("We think that the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiffs to state a RICO claim."); *SIL-FLO, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1516 (10th Cir. 1990) ("At most, what has been alleged is a business deal gone sour, accompanied by the breach

12

of fiduciary duty and various other torts by the defendants.").  For the same reasons, FCG's allegations fall short of any discernable "pattern" of RICO activity here.

### C.  FCG also fails to allege the necessary elements of RICO conspiracy under § 1962(d).

In addition to its allegations of a RICO violation under § 1962(c), FCG also alleges that the parties have "conspired to commit" a violation of § 1962(c), which is a separate violation under § 1962(d).  However, FCG's failure to plead a RICO enterprise or a pattern of RICO activity dooms this conspiracy claim as well.

The Sixth Circuit has made clear that to state a claim for a RICO conspiracy under § 1962(d), a plaintiff "must successfully allege all the elements of a RICO violation, **as well as** alleging the existence of an illicit agreement to violate the substantive RICO provision."  *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Georgia*, 768 F. App'x 446, 459 (6th Cir. 2019) (emphasis added) (internal quotations omitted); *see also Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 806 (6th Cir. 2015) ("Plaintiffs' RICO conspiracy claim fails because Plaintiffs failed to allege a substantive RICO violation in the first place.").

Here, for the reasons noted above, FCG has failed to properly allege either a RICO "enterprise" or a sufficient pattern of continuing racketeering activity.  Having failed to allege a substantive violation, FCG's RICO conspiracy claim must also be dismissed.

### II.  Once this Court dismisses FCG's civil RICO claim, there is no subject matter jurisdiction over FCG's remaining state claims against HYDS and Meadows.

Once this Court dismisses FCG's Civil RICO allegations for failure to state a claim, it should also dismiss Plaintiff's remaining allegations for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## A. Without the RICO claim, this Court loses original jurisdiction over this case.

There are two basic ways that a court can obtain subject matter jurisdiction over a dispute. First, pursuant to 28 U.S.C. § 1332, a court may assume diversity jurisdiction when the matter is between citizens of different states and the amount in controversy exceeds $75,000. In an action with multiple plaintiffs and/or defendants, there must be complete diversity in order for the Court to assume diversity jurisdiction, meaning no plaintiff "is a citizen of the same state as any defendant*." V & M Star, LP v. Centimark Corp.,* 596 F.3d 354, 355 (6th Cir. 2010) (*quoting Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 89, (2005)). FCG does not and cannot assert jurisdiction under this statute, as both FCG and numerous named defendants are citizens of Tennessee.

Second, a court may assume "federal question" jurisdiction under 28 U.S.C. § 1331, when the action arises "under the Constitution, laws, or treaties of the United States." This is the jurisdictional statute that FCG invokes in its complaint. (Compl. ¶ 21). However, of the fourteen counts FCG pleads, the only "law of the United States" it claims Defendants have violated is the federal RICO statute 18 U.S.C. § 1961 et seq. (Compl. ¶¶ 111-128). The remaining 13 counts all arise under state law.

Once that RICO claim is dismissed, as it must be for all the reasons set forth above, this Court's federal question jurisdiction disappears. At that point, the only possible basis for retaining jurisdiction over FCG's remaining state law claims is under the supplemental jurisdiction statute, 28 U.S.C. § 1337. However, as described below, this is plainly a case where the Court should decline to exercise such jurisdiction and should instead dismiss FCG's remaining claims under Fed R. Civ. P. 12(b)(1) without prejudice to refile in state court.

14

**B.** <u>**The Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.**</u>

The supplemental jurisdiction statute provides that district courts may decline to exercise jurisdiction over a plaintiff's state law claims in circumstances such as this one, *i.e.* when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The district court has broad discretion about whether or not to exercise such jurisdiction. However, the Supreme Court has noted that in making that decision, courts should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997) (internal quotations omitted). The Sixth Circuit has also emphasized that where, as here, "all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1254–55 (6th Cir.1996); *Tibbs v. Bryan*, No. 3:17-CV-0266, 2018 WL 928197, at *8 (M.D. Tenn. Feb. 16, 2018) *aff'd* No. 18-5281, 2018 WL 7890390 (6th Cir. Dec. 12, 2018) ("The dismissal of the claims over which the federal court had original jurisdiction creates a presumption in favor of dismissing without prejudice any supplemental state law claims."). In this case, there is no reason to depart from that standard presumption, as basic considerations of fairness and judicial economy weigh strongly in favor of not permitting FCG's state law claims to proceed in this federal forum.

### 1. <u>Fairness</u>

FCG has attempted to tie together what should be two entirely separate lawsuits—one against the HYDS Defendants and one against the Lowe's Defendants—with the only real connection being that both sets of claims involved the alleged misdeeds of FCG executive and named Defendant William Shore. The allegations that FCG makes against the HYDS Defendants

center around price mark-ups and kickbacks to Defendant Shore, the allegations against Lowe's concern an asserted scheme to bill FCG for materials that were actually being provided to Mr. Shore's side business, JWSC. Of the thirteen non-RICO counts asserted in the Complaint, only one—a common law conspiracy claim that largely tracks the RICO claim—is even asserted against all defendants. The remaining 12 claims are either asserted against Mr. Shore, the HYDS Defendants, or the Lowe's Defendants.

Without any RICO enterprise to bind these parties together, it is not clear if FCG's disparate allegations satisfy the requirement of FED R. CIV. P. 20(a) that allegations against different sets of defendants arise "out of the same transaction, occurrence, or series of transactions or occurrences." The mere fact that the schemes alleged were of the same basic type and both involved Mr. Shore is not enough to satisfy this joinder standard. *See, e.g.*, *Michaels Bldg. Co. v. Ameritrust Co*. 848 F.2d 674, 682 (6th Cir. 1988) (finding that a loan made to the plaintiff by one defendant was unrelated to the loans made by other defendants). This Court has also emphasized that the mere overlap in defendants, without more, does not satisfy the same-transaction-or occurrence test. *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 232 (M.D. Tenn. 2001) (noting in a copyright infringement case that "[t]he fact that certain Defendants were involved in the production, publishing, and distribution of more than one allegedly offending song does not, in itself, cause these songs to be related occurrences in the manner contemplated by Rule 20(a)."). Given that the remaining, non-RICO schemes FCG alleges against Lowe's are fundamentally different from those alleged against the HYDS Defendants, it would be fundamentally unfair to force the HYDS Defendants to defend themselves against state claims in a federal forum while yoked together with an entirely separate group of defendants litigating separate claims.

16

### 2. **Judicial Economy**

In the rare cases when a court does exercise its discretion to assume supplemental jurisdiction over state law claims after the federal claims have been dismissed, it is usually because significant discovery and litigation have already taken place. *Medlin v. City of Algood*, 355 F. Supp. 3d 707, 719 (M.D. Tenn. 2019) ("Retention of state law claims, however, may be appropriate where the case has been pending for a long time, discovery has been completed, the record is voluminous, a court has spent significant time on the litigation, and there are pending motions for summary judgment."). In contrast, when the federal anchor claim is dismissed early in the litigation on a motion to dismiss, there is no reason to depart from the standing presumption against the exercise of such jurisdiction.

### 3. **Courts across the country have routinely declined to exercise supplemental jurisdiction over remaining state claims after the dismissal of civil RICO claims.**

The HYDS Defendants would also note that this precise issue—whether to assert supplemental jurisdiction over state claims after RICO claims are dismissed—has been litigated in courts across the country. Those courts have routinely refused to assert such supplemental jurisdiction, further supporting the position that such jurisdiction should not be exercised in this case either. *See Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1267 (D.C. Cir. 1995); *Langan v. Smith*, 312 F. Supp. 3d 201, 209 (D. Mass. 2018) ("[b]ecause Plaintiff's sole federal claim will be dismissed at this early stage, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims."); *Thomas v. Daneshgari*, 997 F. Supp. 2d 754, 765 (E.D. Mich. 2014); *Davis v. Yeroushalmi*, 985 F. Supp. 2d 349, 362-63 (E.D.N.Y. 2013); *Jacoboni v. KPMG LLP*, 314 F. Supp. 2d 1172, 1181 (M.D. Fla. 2004); *Brannon*

17

*v. Boatmen's Bancshares, Inc.*, 952 F. Supp. 1478, 1488 (W.D. Okla. 1997), *aff'd sub nom.*

*Brannon v. Boatmen's First Nat. Bank of Oklahoma*, 153 F.3d 1144 (10th Cir. 1998).

## III. Should this court decide to exercise its supplemental jurisdiction, then FCG's remaining state law claims should all be dismissed for failure to state a claim.

For the reasons noted above, once this Court dismisses FCG's RICO claims, it should decline to exercise supplemental jurisdiction and dismiss all remaining claims without prejudice to refile in state court. However, should the Court decide to assume supplemental jurisdiction, then FCG's remaining claims against HYDS and Meadows should also be dismissed for failure to state a claim.

### A. FCG fails to state a claim for civil conspiracy.

As an apparent backup to its RICO claim, FCG also tries to bind the Defendants together and stick them with joint and several liability through a common law conspiracy claim. (Compl. Count II ¶¶ 129-136). Here, FCG offers nothing but conclusory allegations.

As this Court has noted, a civil conspiracy is not really a distinct cause of action, but instead "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 642–43 (M.D. Tenn. 2006) (internal quotations omitted). Accordingly, to plead a civil conspiracy, the plaintiff must establish "an underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's Carpet & Floor Coverings, Inc. v. McCormick,* 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007).

It is not clear what predicate tort FCG is alleging in Count II of its complaint.[2] Nor is it clear what factual basis FCG has for alleging that there was any "agreement and scheme" (Compl.

---

[2]     In the memorandum in support of its own Motion to Dismiss, Defendant Lowe's Home Centers, Inc. reads the alleged predicate tort to be "Plaintiff's fraud allegation." (ECF No. 67 at

18

¶ 130) among all of the named Defendants. While a plaintiff does not need to plead a formal or express agreement to establish a civil conspiracy, it does have to show some "unity of purpose or common design and understanding." *In re Welding Fume Products Liability Litigation*, 526 F. Supp. 2d 775, 802 (N.D. Ohio 2007) (internal quotations omitted). The "mere knowledge, acquiescence, or approval of a plan, without cooperation or agreement to cooperate, is not enough to make out a conspiracy." *Id.* (internal quotations omitted).

For all the same reasons described above that FCG fails to establish a RICO enterprise, it also fails to plead any "common design or understanding" adequate to establish a civil conspiracy covering both the HYDS and the Lowe's Defendants. Accordingly, just like FCG's RICO allegations, this Court should dismiss FCG's civil conspiracy count for failure to state a claim.

### B. FCG fails to state a claim against HYDS or Meadows under the TCPA.

The TCPA provides a right of action to "[a]ny person who suffers an ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by" the TCPA itself. *Davis v. McGuigan*, 325 S.W.3d 149, 161-62 (Tenn. 2010) (quoting TENN. CODE ANN. 47-18-109(a)(1)). In Count VII, FCG identifies three "unfair and deceptive practices" that it claims HYDS, Meadows, and Heath all engaged in:

- Falsely passing off goods or services as those of another, in violation of TENN. CODE ANN. 47-18-104(b)(1) (Compl. ¶ 167);

- Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services in violation of TENN. CODE ANN. 47-18-104(b)(2) (Compl. ¶ 168); and

---

23) (citing Compl. ¶ 130). This is as plausible a reading as any, and Defendants HYDS and Meadows agree that to the extent "fraud" is the underlying predicate tort, FCG is obligated to meet the heightened pleading standard of Rule 9(b), which it plainly does not do.

- Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by another, in violation of TENN. CODE ANN. 47-18-104(b)(3) (Compl. ¶ 169).

In support of this assertion, FCG claims that:

> HYDS, Meadows, and Heath purposefully and willfully misrepresented the source of the installation services and quotes provided to FCG in regard to various projects overseen by Shore. Particularly, HYDS, Meadows, and Heath knew that the installation services and quotes were provided through direct coordination and oversight by Shore, while HYDS, Meadows, and Heath represented that these services were provided independently.

(Compl. ¶ 170).

Other than this one conclusory paragraph, FCG provides **no support whatsoever** for its claim that any HYDS defendant "willfully misrepresented" the source of installation services or quotes, or that they made any representation "that these services were provided independently." FCG provides no information on when such representations would have been made, or to whom, or for which of the "various" projects overseen by Shore.[3]   In fact, other than Mr. Shore, FCG never so much as names another FCG employee or agent in its complaint.  FCG does not identify any statements on any HYDS invoices or other documents that could constitute such "representations."

Even under the liberal pleading standards of Fed. R. Civ. P. 8, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Evans v.*

---

[3]    Paragraph 170 appears to be written in a deliberately vague manner.  While it is not clear precisely what "quotes" are being described or how broadly the term is meant to extend, the TCPA makes clear that it cannot extend to any quotes for materials—which constituted the vast majority of HYDS' business dealings with FCG.  TENN. CODE ANN. § 47-18-103(12) limits goods to items "obtained by an individual primarily for personal, family, or household purposes or a franchise, distributorship agreement, or similar business opportunity."  Here there is no question that the materials being supplied by HYDS were not obtained by an "individual," they were obtained by a business, for a business purpose.  Accordingly, those materials do not meet the definition of "goods" under the TCPA.

20

*Vanderbilt University School of Medicine*, 589 F. Supp. 3d 870, 881 (M.D. Tenn. 2022). For this claim, though, FCG does not just have to satisfy Rule 8. It must satisfy the heightened standard of Rule 9(b), which requires FCG to plead "with particularity the circumstances constituting fraud." *See Harding v. BMW of North America, LLC*, 3:20-cv-00061, 2020 WL 5039439 at *2 (M.D. Tenn. Aug. 26, 2020) ("District courts in Tennessee have held that Rule 9(b) applies to TCPA claims."). FCG has not met that standard, as the only thing it has provided in its complaint regarding the TCPA claim are broad, conclusory allegations. Therefore, under either Rule 12(b)(6) or Rule 9(b), the Court must dismiss this TCPA claim.

Finally, as an independent basis for dismissing the TCPA claim, it is barred under the applicable one-year statute of limitations. *See* TENN. CODE ANN. § 47-18-110 (establishing one year statute of limitations for TCPA claims). While statute of limitations defenses are more commonly addressed at summary judgment, when "the allegations in the complaint affirmatively show that a claim is time-barred," then "dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Here, as Defendant Lowe's has already argued in its own brief. (*See* ECF. No. 67 at 7-9), FCG knew or should reasonably have known about the conduct it is challenging very soon after terminating Mr. Shore's employment, which happened on September 7, 2023. (Compl. ¶ 35). For example, FCG describes a particular print-out of a May 17, 2023 email that purports to show Mr. Shore handwriting "fraudulent amounts Shore and Meadows would bill FCG." (*Id.* ¶ 61). FCG further states that it only became aware of this email "because he left a copy of it behind in his FCG desk when he was terminated," on September 7, 2023. (*Id.* ¶ 63). Given that FCG filed its complaint on October 21, 2024 (ECF. No. 1), this TCPA claim is therefore untimely.

### C.   FCG fails to state a claim against HYDS or Meadows for common-law fraud.

For much the same reason that FCG fails to state a claim for any violation of the TCPA, it also fails to state a claim against HYDS or Meadows for common-law fraud. That should not be surprising given that "[t]he scope of the TCPA is much broader than that of common-law-fraud" and "[m]isrepresentations that would not be actionable as common-law fraud may nevertheless be actionable" under the TCPA. *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). In order to make out a case for common law fraud, a plaintiff must plead an intentional misrepresentation of a material fact, and the misrepresentation "must have been made with knowledge of its falsity and with a fraudulent intent." *First Nat'l Bank v. Brooks Farms*, 821 S.W. 2d 925, 927 (Tenn. 1991) (internal quotations omitted).

Here, FCG's fraud allegation suffers from the same basic defect as its TCPA allegation. It asserts that "[b]y causing HYDS Sales Orders to be sent to FCG for payment, Meadows and Heath represented to FCG that HYDS was supplying labor and materials to FCG's construction projects at competitive prices." (Compl. ¶ 158). There is absolutely no factual support for this statement in the Complaint. FCG does not identify any actual statement—either on the face of a sales order, in some other document, or in verbal communications—where Meadows or Heath made any affirmative representation about how competitive their prices were. Nor does FCG even explain what "competitive prices" means or how they would be measured for such transactions. This conclusory allegation certainly does not satisfy the heightened pleading requirements for fraud. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). It does not even satisfy the lenient pleading standards of Rule 8. Accordingly, like the TCPA claim, this common law fraud allegation should be dismissed under Rule 12(b)(6) for failure to state a claim.

22

### D.    FCG Fails to State a Claim Against HYDS or Meadows for Conversion

Finally, FCG's claim of conversion against HYDS and Meadows fails for the simple reason that conversion claims generally apply to "chattels" not money.  *See Barger v. Webb*, 391 S.W.2d 664, 665 (Tenn. 1965) ("Conversion is the appropriation of the thing to the party's own use and benefit . . . exclusion in defiance of plaintiff's rights."); *see also PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012) ("[T]he general rule is that money in an intangible and therefore not subject to a claim for conversion.") (quoting 90 C.J.S. Trover and Conversion § 16 (2012)).

An exception sometimes exists for money that is "specific and capable of identification." *PNC Multifamily Cap.,* 387 S.W.3d at 553 (quoting 90 C.J.S. Trover and Conversion § 16 (2012)). However, that exception does not apply here, as FCG's conversion claim amounts to nothing more than a claim that the HYDS Defendants overcharged FCG for the labor and materials HYDS supplied and provided materials FCG did not really need.  (*See* Compl. ¶ 178).  This allegation does not relate to any specific, identifiable fund of money, and for that reason is not a proper conversion claim.

### CONCLUSION

For all of the reasons set forth above, FCG has failed to make out a RICO claim against any of the Defendants, so Count I of the complaint should be dismissed for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b).  Furthermore, as Count I is the only cause of action to arise under the laws of the United States, once this Court dismisses FCG's RICO claim, it should dismiss the remainder of the Complaint for want of subject matter jurisdiction pursuant to Rule 12(b)(1).

Should the Court decide to exercise supplemental jurisdiction over FCG's remaining state law claims, then, for the reasons set forth above, the Court should also dismiss Count II (civil conspiracy), Count VI (fraud), Count VII (TCPA), and Count VIII (conversion) for failure to state a claim.

Date:   January 17, 2025

/s/ Jerry E. Martin
Jerry E. Martin (TNBPR No. 020193)
Seth M. Hyatt (TNBPR No. 031171)
Matthew E. McGraw (TNBPR No. 032257)
Barrett Johnston Martin
   & Garrison, PLLC
200 31st Ave. N.
Nashville, TN 37203
T: (615) 244-2202
F: (615) 252-3797
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com
mmcgraw@barrettjohnston.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2025, the foregoing *Memorandum in Support of Defendants Meadows and HYDS' Inc.'s Motion to Dismiss* was served through the Court's CM/ECF system, which will provide notice to the following counsel of record in this case.

**Christopher C. Sabis**
**Thomas Hall**
**Todd E. Panther**
Sherrard Roe Voigt & Harbison, PLC
1600 West End Avenue
Suite 1750
Nashville, TN 37203
615-850-6822
csabis@srvhlaw.com
thall@srvhlaw.com
tpanther@srvhlaw.com

24

*Attorneys for Plaintiff Franklin Construction Group, LLC*

**Don L. Hearn, Jr.**
Glankler Brown, PLLC
6000 Poplar Avenue
Suite 400
Memphis, TN 38119
(901) 576-1767
Fax: (901) 525-2389
Email: dhearn@glankler.com

**Joseph C. Gjonola**
**Nicholas P. Roxborough**
**Nadine Alsaadi**
Roxborough Pomerance Nye & Adreani LLP
5900 Canoga Avenue
Suite 450
Woodland Hills, CA 91367
818-992-9999
Fax: 818-992-9991
jcg@rpnalaw.com
na@rpnalaw.com
npr@rpnalaw.com

*Attorneys for Defendants Keither Meadows, HYDS, Inc., and Joseph Health*

**R. Brandon Bundren**
Bradley Arant Boult Cummings
1221 Broadway
Ste 2400
Nashville, TN 37203
615-252-4647
Fax: 615-248-3047
bbundren@bradley.com

**Scarlett Singleton Nokes**
Sheppard Mullin (Dallas, TX)
2200 Ross Avenue
Ste Floor 20
Dallas, TX 75201
469-391-7411
snokes@bradley.com

*Counsel for Defendant Dean Bingham*

**Darrick Lee O'Dell**
Spicer Rudstrom, PLLC
220 Athens Way
Suite 405
Nashville, TN 37228
(615) 259-9080
Fax: (615) 259-1522
dodell@spicerfirm.com

**Nicholas C. Stevens**
**Robert J. Uhorchuk**
Spicer Rudstrom, PLLC
537 Market Street
Suite 203
Chattanooga, TN 37402
423-756-0262
Fax: 423-756-8489
nstevens@spicerfirm.com
rju@spicerfirm.com

*Counsel for Defendants Ludon Johnson, Joel Chevrette, and Danny Knowles*


**Gary C. Shockley**
**Ryan P. Loofbourrow**
**Scott D. Carey**
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
1600 West End Avenue
Suite 2000
Nashville, TN 37203
(615) 726-5600
gshockley@bakerdonelson.com
rloofbourrow@bakerdonelson.com
scarey@bakerdonelson.com

*Counsel for Defendant Lowe's Home Center, Inc.*

/s/ Jerry E. Martin
Jerry E. Martin
Barrett Johnston Martin & Garrison, PLLC

26