**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

**FRANKLIN CONSTRUCTION GROUP, LLC,**

       Plaintiff,

v.

**WILLIAM SHORE, JWSC, LLC, KEITH MEADOWS,**
**JOSEPH HEATH, HYDS INC., DEAN BINGHAM,**
**LUNDON JOHNSON, TYLER WEBER,**
**JOEL CHEVRETTE, DANNY KNOWLES, SCOTT**
**MATTHEWS and LOWE'S HOME CENTERS, LLC**

       Defendants.

Case No. 3:24-cv-01255

District Judge Crenshaw
Magistrate Judge Frensley

**JURY DEMAND**

---

**BRIEF AND MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT SCOTT MATTHEWS' MOTION TO DISMISS**

---

Defendant, Scott Matthews ("Matthews"), by and through the undersigned counsel, pursuant to Rules 9(b) and 12(b)(6) of the *Federal Rules of Civil Procedure* and applicable law discussed herein, hereby submits this Brief and Memorandum of Law in support of his Motion to Dismiss.

**<u>INTRODUCTION</u>**

Plaintiff, Franklin Construction Group, LLC ("FCG"), has filed a 50 plus page Complaint with nearly 250 numbered paragraphs, each containing various allegations against multiple Defendants. Yet, while the Complaint is quite lengthy and purports to assert numerous factual allegations, the Complaint fails to sufficiently plead claims against Matthews and otherwise fails to state a claim against this Defendant upon which relief can be granted.

FCG's Complaint contains causes of action against Matthews that are based on alleged RICO violations, conspiracy, fraud, violations of the Tennessee Consumer Protection Act ("TCPA") and conversion. FCG asserts that all named Defendants, in some form or fashion, participated in an elaborate scheme and conspiracy, concocted by former employee Defendant William Shore ("Shore"), to defraud FCG out of millions of dollars. However, FCG's accusations, as it relates to Matthews, contain nothing more than vague, conclusory allegations that are levied against all "Lowe's Individual Defendants."

Rather than taking aim at the alleged wrongdoer with precision, FCG has taken a "shotgun" approach and has made broad and conclusory allegations as to multiple Defendants in an "and/or" fashion in an attempt to suggest that Defendants conspired together to harm and defraud FCG. However, for the reasons set forth herein, this Court should dismiss the Complaint as to Matthews based on FCG's failure to state a claim upon which relief can be granted. Moreover, dismissal of the TCPA claim is warranted because it was filed and asserted outside of the applicable one-year statute of limitations.

## **FACTS**

The above-styled case is a claim for damages as a result of an alleged elaborate fraud scheme and conspiracy to defraud FCG out of millions of dollars. (see generally, *Complaint* [Doc. 1]). FCG describes itself as a construction company doing business in Middle Tennessee. (*Complaint*, ¶ 7). FCG alleges that Shore – while employed by FCG as a VP of Construction Operations – concocted a scheme to funnel money from FCG to himself, through what is alleged to be an "illicit kickback scheme." (*Complaint*, ¶ 2). FCG alleges that Shore worked in concert with Defendants HYDS, Inc. (a construction materials supplier) and its principals, Keith Meadows

and Joseph Heath, to inflate the price of goods bought and delivered to FCG and to divert a substantial portion of those goods to Shore for his "secret side projects." (*Complaint*, ¶ 3).

Furthermore, FCG alleges that to further enrich himself, Shore then conspired with the "Lowe's Individual Defendants," which somehow allegedly includes Matthews, among others, to defraud FCG by artificially inflating the price of materials and diverting certain materials to Shore's side projects, while invoicing FCG for the same. (*Complaint*, ¶ 3-5). FCG's claims against Lowe's and the "Lowe's Individual Defendants" begins on page 18 of the Complaint and can be summarized in paragraphs 74 through 79.

Particularly, FCG alleges in broad and conclusory fashion that Shore, Meadows and Heath "expanded their fraudulent conspiracy" to include Lowe's Individual Defendant Bingham when Shore was introduced to him by Heath, "to help save Shore lots of money on projects." (*Complaint*, ¶ 74). FCG claims that once Shore was connected with Bingham, "Shore was able to further defraud FCG by acting in concert with Bingham and other Lowe's Individual Defendants." (*Complaint*, ¶ 75). The Complaint alleges that among "the fraudulent mechanisms Shore and one or more of the Lowe's Individual Defendants employed was for Lowe's to engage Shore or his company, JWSC, as an independent contractor to perform estimating services for Lowe's." (*Complaint*, ¶ 76).

FCG alleges that "by engaging Shore or JWSC to perform estimates for Lowe's, the Lowe's Individual Defendants secured Shore's loyalty to Lowe's, rather than Shore's employer, FCG, which breached the duty of loyalty Shore owed to FCG." (*Complaint*, ¶ 77). FCG further alleges that Lowe's engaged Shore or JWSC "to estimate the projects Shore was managing for FCG, thereby allowing Shore to fraudulently overstate the type and quantity of the materials needed

on FCG's projects." (*Complaint*, ¶ 78). It is FCG's contention that the "supposed estimating services by Shore or JWSC were a fictitious scheme used to provide Shore or JWSC monetary kickbacks for the material purchases" which FCG alleges Shore was "fraudulently funneling to Lowe's and which one or more of the Lowe's Individual Defendants knew were fraudulent." (*Complaint*, ¶ 79). FCG alleges that Matthews, and Defendant Danny Knowles, downplayed or minimized the amount of estimating work Shore did for Lowe's, but claims that Matthews finally admitted that Lowe's had paid Shore to act as an estimator. (*see Complaint*, ¶ 81-85).

FCG terminated Shore's employment on September 7, 2023. (*Complaint*, ¶ 35). After his termination, FCG claims that it identified "a number of irregularities concerning Shore's activities while employed with FCG" and that "Shore, in concert with the other Defendants, had been perpetrating a fraud on FCG from at least September 2021 until his termination." (*Complaint*, ¶ 36). FCG then filed its Complaint in this matter against multiple Defendants. FCG seeks damages against the "Lowe's Individual Defendants" in an amount no less than $6,402, 151.49. (*Complaint*, Prayer for Relief, ¶ 8). However, for the reasons set forth herein, FCG has failed to sufficiently plead its claims and causes of action against Matthews upon which any relief can be granted.

## STANDARD FOR A MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)

A motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of the pleadings setting forth the plaintiff's cause of action. Although the truth of all relevant and material allegations in the pleadings are admitted for the purposes of a motion to dismiss, the underlying basis is that, even true, such facts do not state a proper claim or cause of action upon which relief can be granted. *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). The factual allegations in the complaint need to be

sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim plausible, i.e., more than merely possible. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

However, "a legal conclusion couched as a factual allegation" need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 (6h Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)); *see also Delay v. Rosenthal Collins Group, LLC,* 585 F.3d 1003, 1005-06 (6th Cir. 2009). A pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555; *Glass v. Northwest Airlines, Inc.*, 686 F.Supp. 2d 770, 771 (W.D. Tenn. 2010).

Rule 12(b)(6) of the *Federal Rules of Civil Procedure* allows the trial courts to terminate lawsuits "that are fatally flawed in their legal premises and destined to fail, and last to spare litigants the burdens of unnecessary pretrial and trial activity." *Port Authority of New York and New Jersey v. Arcadian Corp.*, 189 F. 405, 312 (3rd Cir. 1999) (noting that rule is designed to "screen out cases" when no remedy exists for the wrong alleged or where no relief could possibly be granted).

Under Rule 12(b)(6)*,* a complaint may be dismissed because it asserts a legal theory that is not cognizable as a matter of law or because the factual tale alleged is implausible. *Twombly*, 550 U.S. at 555 and 570. A pleader must do more than merely incant labels, conclusions, and the formulaic elements of a cause of action. *Ashcroft*, 556 U.S. at 678 (2009). Likewise, the court will not accept as true bald assertions, conclusions, or inferences, legal conclusions couched or masquerading as facts, or conclusions contradicted by the pleader's own exhibits or other

documents of which the court may take proper notice. *Ashcroft*, 556 U.S. at 678-79, and *Bell Atlantic Corp.*, 550 U.S. at 555. Pleaders must show that their allegations "possess enough heft" to show an entitlement to relief and thereby are sufficient to allow the costly process of litigation to continue. *See*, *Bell Atlantic Corp.*, 550 U.S. at 557.

Therefore, courts will test for comportment with Rule 12(b)(6) by performing a two-step inquiry as follows: (1) legal conclusions will be isolated to uncover the pleading's purely factual allegations; and (2) those factual allegations will be presumed true when examined for plausibility. *See*, *Ashcroft*, 556 U.S. at 678-79.

## LAW AND ARGUMENT

**1.      FCG fails to sufficiently plead its claim against Matthews for violation of RICO.**

FCG alleges in its Complaint a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), codified at 18 U.S.C. § 1961 et seq. (*see Complaint*, Count 1). This RICO claim is levied against "all Defendants." (*Id*). Particularly, FCG's RICO claim is premised upon an alleged violation of Section 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." (*Complaint*, Count 1, ¶ 113). However, as further discussed herein, FCG has failed to sufficiently plead or state a claim for a violation of RICO against Matthews and such claim should be dismissed as a matter of law.

In order to establish a RICO violation, a FCG must show that Matthews engaged in "(1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re Reciprocal*

*of America (ROA) Sales Practices Litigation*, 2007 WL 2900286 at *6 (W.D. Tenn. Sept. 28, 2007) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). A "pattern of racketeering activity" is established by showing that the defendant committed at least two predicate offenses. 18 U.S.C. § 1961(5); *Sedima* at 496. In addition, "proof of a pattern of racketeering activity requires a showing that 'the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'" *In re ROA*, 2007 WL 2900286 at *6 (citing *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989)).

Here, FCG makes passing reference to two purported predicate acts committed by the "Defendants," which are alleged "violations of the federal mail and wire fraud statutes, 18. U.S.C. §§ 1341, 1343." (see *Complaint*, Count I, ¶ 122). The elements of mail and wire fraud are: (1) a scheme to defraud, and (2) use of the mails, or of an interstate electronic communication, respectively, in furtherance of the scheme." *In re ROA*, 2007 WL 2900286 at *6 (internal citations omitted). To sustain a claim under RICO, each element of the predicate act must be proven. *Id*.

The district court in *In re ROA* noted as follows in this regard:

"The Sixth Circuit has defined a scheme to defraud as intentional fraud, consisting in deception intentionally predicated to induce another to part with property or to surrender some legal right, and which accomplishes the designed end. In other words, in order to present a cognizable claim for fraud, the plaintiff must show that [the defendants] made a material misrepresentation of fact that was calculated or intended to deceive persons of reasonable prudence and comprehension, and must also that [the plaintiff] in fact relied upon that material misrepresentation."

*In re ROA*, 2007 WL 2900286 at *6-7 (citing *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 701 (6th Cir. 2000) (internal citations omitted)).

Not only must the plaintiff prove each element of the underlying predicate acts – that being mail fraud and wire fraud here – but the plaintiff must also allege and show that the

defendant's RICO violation was the proximate cause of plaintiff's injury. (see *In re ROA*, 2007 WL 2900286 at *7; 18 U.S.C. § 1964(c); *Sedima*, 473 U.S. at 497 (finding, in RICO action based on predicate acts of mail and wire fraud, that a plaintiff's damages must flow from the commission of the predicate acts.)).

Since its RICO claim is based upon purported mail and wire fraud, FCG must "allege the time, place, and content of the alleged misrepresentation on which [it] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *American Biocare Inc. v. Howard & Howard Attorneys PLLC*, 702 Fed. Appx. 416, 421 (6th Cir. 2017) (internal citations omitted). Here though, FCG has failed to allege any purported misrepresentations on the part of Matthews. With regard to "misrepresentations" that can be said to be alleged against the moving Defendant, FCG's Complaint contains the following broad and conclusory allegations:

- As a result of the Defendants' actions and misrepresentations, FCG has suffered damage as described herein and in an amount to be proven at trial, which amount is expected to be no less than $8,297,469.19. (*Complaint*, ¶ 133 and 143);

- As a result of the above-described actions and misrepresentations by Bingham, Chevrette, Johnson, Weber, Knowles, and/or Matthews, they enriched themselves by obtaining commissions or other compensation on the supplies and materials they were defrauding FCG into purchasing pursuant to the above-described scheme. (*Complaint*, ¶ 190);

- As a result of the above-described actions and misrepresentations by Bingham, Chevrette, Johnson, Weber, Knowles, and/or Matthews, FCG has suffered damage in an amount to be proven at trial, which amount is expected to be no less than $6,402,151.49. (*Complaint*, ¶ 191);

- The Individual Lowe's Defendants purposefully and willfully misrepresented the source of the estimation services provided to FCG in regard to the various projects overseen by Shore. (*Complaint*, ¶ 198); and

- The above-described violations of the Act by the Lowe's Individual Defendants were willful or knowing because the Lowe's Individual Defendants knew that they were

misrepresenting the source of the services provided to FCG. (*Complaint*, ¶ 200).

However, nowhere in its 50 pages of allegations does the Complaint aver that Matthews, in particular, made any material misrepresentation or omissions to FCG.   (*see In re ROA*, 2007 WL 2900286 at *9 (citing *Piccone v. Bd. of Dir. of Doctors Hosp. of Staten Island, Inc.* 2000 WL 1219391 at *6 (S.D.N.Y. Aug. 28, 2000) (**"in cases with multiple defendants, Rule 9(b) requires that the complaint allege facts that specify each defendant's connection to the fraud. General allegations against a group of defendants are insufficient."**) (emphasis added); *Adler v. Berg Harmon Assoc.*, 790 F.Supp. 1222, 1228 (S.D.N.Y. 1992) **("Plaintiffs cannot satisfy Rule 9(b) by masking the lack of factual allegations against each defendant through broad allegations which combine the acts of several defendants to create the impression that all engaged in every aspect of the alleged fraud.")** (emphasis added)).   FCG has failed to adequately plead that the fraud connected with the alleged mail or wire fraud involved misrepresentations or omissions flowing from Matthews to FCG.   As a result, the RICO claim should be dismissed.

Moreover, the Sixth Circuit "has interpreted § 1964(c)'s causation requirement to require a plaintiff to plead reliance in order to state a civil RICO claim predicated on acts of fraud."   *In re ROA*, 2007 WL 2900286 at *7 (*see Armbruster v. K-H Corp.*, 206 F.Supp. 2d 870, 898 (E.D. Mich. 2002) (holding that a civil RICO complaint based upon predicate acts of mail fraud must plead the plaintiff's reliance upon the defendant's misrepresentation); (other internal citations omitted). "The reliance requirement has been further interpreted in this circuit to mean that '[a plaintiff] cannot maintain a civil RICO claim [predicated on mail or wire fraud] against … defendants absent evidence that the defendants made misrepresentations or omissions of material fact to [the plaintiff] and evidence that [the plaintiff] relied on those misrepresentations or omissions to its

detriment.'" *In re ROA*, 2007 WL 2900286 at *7 (citing *Central Distrib. v. Conn*, 5 F.3d 181, 184) (6th Cir. 1993)).

Again, FCG has failed to sufficiently plead reliance on any misrepresentations allegedly made by Matthews. As for any alleged "reliance" on the "misrepresentations" that have been alleged, FCG's Complaint contains only the following references to its reliance:

- In reasonable reliance on Shore's above-described misrepresentations, FCG expended considerable sums to purchase unnecessary or excessive volumes of materials and supplies that were unnecessary to complete the construction projects to which Shore was assigned and/or to purchase materials and supplies at artificially inflated prices. (*Complaint*, ¶ 142);

- In reasonable reliance on Meadows and Heath's above-described misrepresentations, FCG expended considerable sums to purchase unnecessary or excessive volumes of materials and supplies that were unnecessary to complete the construction projects to which Shore was assigned and to purchase materials and supplies at artificially inflated prices. (*Complaint*, ¶ 162); and

- In reasonable reliance on Bingham, Chevrette, Johnson, Weber, Knowles, and/or Matthews's above-described misrepresentations, FCG expended considerable sums to purchase unnecessary or excessive volumes of materials and supplies that were unnecessary to complete the construction projects to which Shore was assigned and to purchase materials and supplies at artificially inflated prices. (*Complaint*, ¶ 189);

Nowhere in the Complaint does FCG specifically allege that it relied upon any statement, conduct or act committed by Matthews. "Pursuant to Rule 9(b), reliance must be plead with particularity." *In re ROA*, 2007 WL 2900286 at *10 (citing *Blount Fin. Serv., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir. 1987) ("Fraud alleged in a RICO civil complaint for mail fraud must state with particularity the false statement of fact made by the defendant which the plaintiff relied on and the facts showing the plaintiff's reliance on defendant's false statements of fact.").

The district court for the Western District of Tennessee in *In re ROA* dismissed a civil RICO claim as to the two moving defendants in a multi-defendant litigation upon a finding that the

plaintiff did not plead its RICO claim with the requisite specificity. The district court reasoned:

> "While paragraph 175 alleges reliance, it lacks factual details and offers only a general and conclusory statement of detrimental reliance. Such allegations cannot survive a motion to dismiss pursuant to Rule 9(b). (internal citations omitted). Allegations lacking an explanation as to whether and how persons or entities relied on misrepresentations or omissions committed by [the moving Defendants], taken as true, at most assert that fraudulent actions were undertaken by *some* defendants which resulted in injury. [Plaintiff] must plead with particularity reliance on acts of mail and wire fraud (i.e. a scheme to defraud furthered by use of the mails or wires) by the moving Defendants and injury as a result of that reliance. (internal citations omitted). Because the amended complaint does not plead reliance with particularity, the § 1962(c) claims against these defendants must be DISMISSED."

*In re ROA*, 2007 WL 2900286 at *10.

Returning to the case at hand, based on the same rationale supporting dismissal of the moving defendants in *In re ROA*, Matthews is equally entitled to dismissal of FCG's § 1962(c) RICO claim. FCG has failed to sufficiently plead that Matthews engaged in "racketeering activity," much less allege how he committed any underlying predicate act, or that "racketeering activity" proximately caused damages to FCG. Furthermore, FCG has failed to plead at all that Matthews, in particular, made any misrepresentation of fact or that FCG relied on any misrepresentation made by him. Rather, like the plaintiff in *In re ROA,* FCG here makes general, broad and conclusory allegations against a group of Defendants to give an impression that one or more is involved in the alleged RICO scheme and conspiracy. Such pleading style is not sufficient under the pleading standards in the Sixth Circuit to sufficiently state a claim for violations of RICO and this § 1962(c) RICO claim against Matthews should be dismissed.

For the same reasons as set forth above, FCG has also failed to sufficiently plead its claim for violations of § 1962(d) – civil RICO conspiracy – and it too should be dismissed as a matter of law at this stage. FCG seems to allege in its Complaint that Defendants also violated 18 U.S.C. §

1962(d), which prohibits conspiracy to violate other substantive sections of the RICO statute. (*see Complaint*, Count I, ¶ 114). As such, FCG must allege "injury by reason of a conspiracy." *In re ROA*, 2007 WL 2900286 at *11 (citing *Beck v. Prupis*, 529 U.S. 494, 500-01 (2000)). To state a claim for civil RICO conspiracy, FCG must allege its injury "as a proximate result of an overt act in furtherance of the conspiracy that is itself and act of racketeering activity or otherwise unlawful under RICO." *Id.*

Here though, FCG does not plead with any specificity the conspiratorial acts that Matthews is alleged to have engaged in. In fact, FCG has failed to file a RICO Case Statement that is required in this district.[1] Moreover, FCG's Complaint fails to allege any injury or damages as a proximate result of racketeering activity on the part of Matthews, since it does not plead with particular facts against this Defendant. Therefore, FCG's § 1962(d) claim for alleged RICO conspiracy must also be dismissed.

### 2. FCG fails to sufficiently plead its fraud claim against Matthews.

Rule 9(b) requires that averments and allegations of fraud must be stated "with particularity." The Sixth Circuit reads this rule liberally, however, requiring a plaintiff, at a minimum, to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 f.3d 157, 161 (6th Cir. 1993) (citing *Ballan v. Upjohn Co.*, 814 F.Supp. 1375, 1385 (W.D. Mich. 1992) (citing *Michaels Bldg. Co. v. Ameritrust Co. N.A.*, 848 F.2d 674, 679 (6th Cir. 1988)); see also *Blount Fin. Serv., Inc. v. Walter E. Heller &Co.*, 819

---

[1] See Wyndham Vacation Resorts, Inc. v. The Consulting Group, Inc., 2013 WL 3834047 at *1 fn. 2 (M.D. Tenn. July 23, 2013) ("It is the local practice of this court to order any party alleging a claim under the RICO statute to file and RICO Case Statement that provides specific details concerning the alleged RICO conspiracy.")

F.2d 151, 152 (6th Cir. 1987) ("Fraud alleged in a RICO civil complaint for all fraud must state with particularity the false statement of fact made by the defendant which the plaintiff relied on and the facts showing the plaintiff's reliance on defendant's false statement of fact.").

Ultimately, the heightened pleading requirement of Rule 9(b) mandates that "pleadings contain explicit rather than implied expression of the circumstances constituting fraud." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009) (internal citation omitted). Therefore, a complaint alleging fraud must "specify the who, what, when, where and how of the alleged fraud." *McCoy v. East Tennessee Luxury Coach, LLC,* 2024 WL 4916367 (E.D. Tenn. Nov. 6, 2024) (citing *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 615 (6th Cir. 2024)). "More specifically, the complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (citing *Greer* at 614-615)).

In the case at hand, FCG does nothing more than make generally broad, conclusory allegations that are levied against all Lowe's Defendants in support of its fraud claim. In doing so, FCG fails to put Matthews "on notice of the precise misconduct or fraudulent acts claimed," as FCG "fails to allege which defendant committed which fraudulent act." (see *Textor v. Williamson*, 2008 WL 3161627 at *2 (E.D. Tenn. Aug. 4, 2008) (citing *Hoover v. Langston Equip. Assoc.*, 958 F.2d 742, 745 (6th Cir. 1992) ("The complaint identifies relationships between various of the defendants but it alleges misrepresentations without sufficiently identifying which defendants made them. The complaint does not enable a particular defendant to determine what is charged."). If a plaintiff's allegations of fraud are not sufficiently specific to put defendants on

notice of the precise acts alleged, they will fail to meet the Rule 9(b) pleading standards and should be dismissed. (see *Textor*, 2008 WL 3161627 at *3.

FCG's allegations of fraud are not specifically pled and this cause of action should be dismissed. In Count IX of FCG's Complaint, there is not a single concrete factual allegation regarding any fraudulent conduct, false statement or misrepresentation that Matthews is alleged to have made or engaged in. In Count IX – and all throughout the Complaint for that matter – FCG alleges things such as:

- "Bingham, Chevrette, Johnson, Weber, Knowles, and/or Matthews represented to FCG that Lowe's was supplying labor and materials to FCG's construction projects at competitive prices or attempted to cover up that Lowe's had not done so." (*Complaint*, Count IX, ¶ 185);

- "Bingham, Chevrette, Johnson, Weber, Knowles, and/or Matthews's representations were false." (*Complaint*, Count IX, ¶ 186);

- "Bingham, Chevrette, Johnson, Weber, Knowles, and/or Matthews made the foregoing false representations in order to enrich themselves…" (*Complaint*, Count IX, ¶ 188);

- "In reasonable reliance on Bingham, Chevrette, Johnson, Weber, Knowles, and/or Matthews's above-described misrepresentations, FCG expended considerable sums to purchase unnecessary or excessive volumes of materials and supplies…" (*Complaint*, Count IX, ¶ 189).

FCG's allegations of fraud are neither singularly addressed to any specific Defendant, nor are they particular as to Matthews. These broad assertions and averments are the type of "threadbare recital of the elements of a cause of action, supported by mere conclusory statements, [that] do not suffice" to state an actionable claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, these broad and conclusory allegations asserted against multiple Defendants in the "and/or" fashion do not satisfy the particularity requirements under Rule 9(b) for pleading fraud. Simply put, FCG fails to detail in its Complaint the "who, what, when, where

and how" of the alleged fraud.  Accordingly, FCG has failed to sufficiently plead its fraud claim against Matthews and it should be dismissed.

    **3.**    **FCG's civil conspiracy claim against Johnson and Knowles fails as a matter of law.**

FCG's common law civil conspiracy claim must be dismissed upon dismissal of the underlying predicate tort cause of action, that being the alleged fraud.  A claim for civil conspiracy "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's Carpet & Floor Coverings, Inc. v. McCormick,* 247 S.W.3d 169, 180 (Tenn.Ct.App.2007). Conspiracy, standing alone, is not actionable where the underlying tort is not actionable. *Id.* at 179–80.  Stated another way, "if the claim underlying the allegation of civil conspiracy fails, the conspiracy claim must also fail." *Levy v. Franks*, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004).

Here, FCG's underlying tort for the civil conspiracy is alleged to be fraud or the fraudulent scheme concocted by Shore (see *Complaint*, Count II).  However, as discussed above, the fraud claim has not been sufficiently pled or alleged against Matthews and it fails to comply with *Fed. R. Civ. P.* 9(b) and should be dismissed.  As a result, since the alleged underlying tort is not actionable against Matthews and thus fails, the alleged civil conspiracy against him fails too and should be dismissed.

Alternatively, though, should this Court not dismiss the civil conspiracy claim in conjunction with dismissal of the underlying tort, this claim should still nonetheless be dismissed because FCG fails to state with particularity facts sufficient to establish a claim of conspiracy against Matthews.  "An actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful

purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002). The elements necessary to establish a claim for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury. *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006).

Importantly, "conspiracy claims must be pled with some degree of specificity." *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002) (citing *Haynes v. Harris*, 1999 WL 317946 at *2 (Tenn. Ct. App. May 21, 1991)). Vague and conclusory allegations, unsupported by material facts, will not be sufficient to state a claim for conspiracy. *Kincaid* at 38.

The U.S. Supreme Court addressed civil conspiracy pleading requirements in the case of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In *Twombly*, the Court was tasked with considering the sufficiency of plaintiffs' civil conspiracy allegations in an antitrust case. The complaint alleged that the defendants – regional phone and internet service provider companies – conspired to restrain and suppress free trade and competition in the local telephone market. *Id*. at 550. As with any civil conspiracy claim, the plaintiffs in *Twombly* were required to allege and prove an agreement among the purported conspirators, and the plaintiffs attempted to show such agreement circumstantially by pointing to consistent or "parallel" business behavior of the various phone and internet service provider defendants. *Id*. at 551-52. However, the Court found that the plaintiffs' complaint was insufficient to proceed under Rule 12(b)(6), in that they failed to provide enough factual evidence to support their conspiracy claim. *Id*. at 570. Specifically, the Court held that a well-pleaded complaint requires "enough facts to state a claim to relief that is

plausible on its face" and because the plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* Simply put, mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

In the case at hand, FCG asserts a claim and cause of action for "conspiracy against all Defendants." (see *Complaint*, Count II). The crux of its conspiracy claim is summarized in paragraph 130 of the Complaint, which reads:

> "As described above, the Defendants had an agreement and scheme among themselves to (a) create orders through Shore for unnecessary or excessive supplies and materials, ostensibly for use on FCG construction projects and/or for supplies and materials at artificially inflated priced; (b) request and collect payments from FCG knowing that the amounts collected were based on false or fraudulent orders; and (c) pay kickbacks to Shore in the form of money and construction materials as compensation for his efforts to secure these false, fraudulent, or artificially inflated orders."

(*Complaint*, Count II, ¶ 130).

However, this claim of conspiracy is levied against all Defendants and nothing specific or precise is alleged, particularly as it relates to Matthews. FCG makes broad and conclusory allegations that Shore concocted a scheme to create fake or unnecessary orders for building materials to enrich himself in the form of "kickbacks." However, FCG has not connected the alleged wrongdoing of Shore to the required elements of a conspiracy claim against Matthews.

Particularly, FCG's Complaint fails to specifically allege that Matthews had the requisite intent to be part of a conspiracy to defraud FCG out of millions of dollars. Moreover, the allegations in the Complaint are insufficient to establish that Matthews had the requisite knowledge of the other alleged co-conspirator's intent and common purpose of the alleged conspiracy. FCG alleges throughout its Complaint that Shore benefitted financially from the

alleged "kickback" scheme. However, nowhere in the Complaint does FCG specifically allege or detail how Shore, Matthews and/or others had a "common design" among them to all benefit financially. In addition, FCG fails to allege or specify any "overt act" on the part of Matthews that was committed in furtherance of the alleged conspiracy. Rather, FCG alleges that the "Defendants enriched themselves by unlawfully obtaining money from FCG for supplies and materials that were unnecessary or excessive for the completion of FCG construction projects…". see *Complaint*, Count II, ¶ 131). FCG further alleges in conclusory fashion that the "Defendants' above-described acts and omissions are each overt acts in furtherance of Defendants' conspiracy." (see *Complaint*, Count II, ¶ 132).

Again, conspiracy claims must be pled with some degree of specificity, while vague and conclusory allegations are not sufficient to state a claim for conspiracy. Here, the purported facts and allegations that make up FCG's alleged conspiracy are not specific whatsoever; but rather, are stated as conclusory allegations alleged against all Defendants in general. Accordingly, for these reasons, the conspiracy claims against Matthews has not been sufficiently pled and it therefore fails as a matter of law and should be dismissed.

4. **FCG's TCPA claims against Matthews are time-barred and are otherwise not pled with particularity, fail to state a claim under Tennessee law and must therefore be dismissed.**

FCG attempts to assert a claim and cause of action against all Defendants under the TCPA. However, this claim fails for two reasons and should be dismissed at this stage. Specifically, the TCPA claim is time-barred and it is otherwise not pled with the requisite particularity.

A. **FCG's TCPA claim is barred by the one-year statute of limitations.**

The statute of limitations for claims brought under the TCPA is one year. *See Tenn. Code*

*Ann*. § 47-18-110; *Montesi v. Nationwide Mut. Ins. Co.*, 970 F. Supp2d 784, 789 (W.D. Tenn. 2013). The TCPA statute of limitations follows the Tennessee discovery rule for accrual, which under said rule, a TCPA cause of action is said to accrue "when the plaintiff knows or in the exercise of reasonable and diligence should know that an injury has been sustained as a result of the wrongful or tortious conduct by the defendant." *Montesi* at 789 (internal citations omitted).

The basis of FCG's TCPA claim against the "Lowe's Individual Defendants" is that one or more "purposefully and willfully misrepresented the source of estimation services provided to FCG in regards to various projects overseen by Shore." (*Complaint*, ¶ 198). FCG terminated Shore's employment on September 7, 2023 and thereafter found a "number of irregularities concerning Shore's activities while employed." (*Complaint*, ¶ 34-35). FCG contends that Shore left behind various incriminating emails, invoices, personal financial information and other documentation on his FCG computer. (*Complaint*, ¶ 36, 84, 86, 95).

Following his termination, FCG admits that it began investigating Shore's involvement with Lowe's as early as September 18, 2023 and that it learned on this date that Lowe's never received authorization from FCG to issue Shore a store credit card for various purchases, all of which Shore approved for payment by FCG. (*Complaint*, ¶ 99). FCG contends that Lowe's and the "Lowe's Individual Defendants" were involved in a "cover-up" or "lie" with regard to Shore's estimating services and as it relates to Shore's use of the Lowe's store credit card. (*Complaint*, ¶ 99-100).

Accordingly, FCG was on notice – as early as September 18, 2023 – of what it contends to be fraudulent, unfair or deceptive practices being committed by Lowe's and/or the "Lowe's Individual Defendants." However, FCG did not file its Complaint in this matter until October 21,

2024.  Since FCG was on notice of its alleged TCPA injury as of September 18, 2023 but delayed

filing its Complaint until October 21, 2024, the TCPA claim and cause of action is barred by the

one-year statute of limitations and must be dismissed as a matter of law.

> **B.** **FCG has failed to plead its TCPA claim with the requisite particularity and it should be dismissed.**

In the event that the TCPA claim is not dismissed upon application of the statute of

limitations, dismissal is still warranted because the claim is not sufficiently pled against

Matthews.  As discussed above, any allegations constituting fraud must be pled with particularity.

Tennessee courts have also applied this heightened pleading standard of "specificity" and

"particularity" to claims under the TCPA. *See Glanton v. Bob Parks Realty*, 2005 WL 1021559

(Tenn. Ct. App. 2005); *Harvey v. Ford Motor Credit Company*, 8 S.W.3d 273, 275 (Tenn. Ct. App.

1999).  Moreover, courts review TCPA allegations "to determine if the plaintiff has sufficiently

alleged an 'ascertainable' injury from specific unfair and deceptive conduct." *Morrison v. Allen*,

2009 WL 230220 at *10 (Tenn. Ct. App. Jan. 30, 2009); *Taylor v. Standard Ins. Co*., 2009 WL

113457 at *5 (W.D. Tenn. Jan. 13, 2009).

Here though, FCG has again failed to sufficiently plead its TCPA Claim and failed to allege

any ascertainable injury from some specific unfair or deceptive conduct on the part of Matthews.

For instance, in yet another attempt to improperly expand its claims against Matthews, based

upon the alleged wrongdoing of Shore, FCG includes a TCPA claim against all Defendants; but

continues with its shotgun style pleading approach aimed collectively at all Defendants and it

fails to state a viable claim in the process.

The TCPA "outlaws unfair or deceptive trade practices." *Tucker v. Sierra Builders*, 180

S.W. 3d 109, 114-115 (Tenn. Ct. App. 2005). Specifically, the TCPA states that "unfair or deceptive

acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices…". *Peoples v. Bank of America*, 2012 WL 601777 at *8 (W.D. Tenn. Feb. 22, 2012) (quoting *Tenn. Code Ann*. § 47-18-104(a)). An "unfair or deceptive act or practice is a 'material representation, practice or omission likely to mislead a reasonable consumer.'" *Id*. (quoting *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997)). To recover under the TCPA, a plaintiff must allege and prove: "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA," and "(2) that the defendant's conduct caused an 'ascertainable loss of money or property [ . . .] or any other article, commodity, or thing of value." *Id*.

In Count X of the Complaint, it appears as though FCG is attempting to allege in conclusory fashion that one or more of the "Lowe's Individual Defendants" violated the TCPA by either "falsely passing off goods or services as those of another," "causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services," and/or "causing likelihood of confusion or misunderstanding as to affiliation, connection or association with or by another." (see *Complaint*, Count X, ¶ 195-197).

However, FCG fails to state any facts with particularity to support its TCPA claim against Matthews. Rather, all FCG alleges in Count X is that the "Lowe's Individual Defendants purposefully and willfully misrepresented the source of the estimation services provided to FCG in regard to the various projects overseen by Shore," claiming that "they" passed off Shore's estimates "as legitimate" and that "they represented that Shore's estimates were performed by an unrelated third party." (see *Complaint*, Count X, ¶ 198).

To avoid dismissal, FCG "must set forth both the specific facts and the specific fraudulent, deceptive or unfair acts or practices engaged in" by Matthews. (*see Brooks v. Wells Fargo Bank,*

*N.A.*, 2013 WL 1935522 at *4 (M.D. Tenn. May 9, 2013). FCG has failed to allege any specific facts that support its conclusory allegations that Matthews, in particular, engaged in any unfair or deceptive acts, or that FCG sustained any ascertainable loss from that specific conduct. Accordingly, FCG's TCPA claim against Matthews should be dismissed.

### 5. FCG's claim for conversion fails as a matter of law.

In Tennessee, "conversion occurs when a party appropriates tangible property for its own use, thereby excluding or defying the owner's rights." *McCoy*, 2024 WL 4916367 at *10 (citing *Cash v. Country Tr. Bank*, 2019 WL 5291272 (6th Cir. Apr. 19, 2019)). Conversion is an intentional tort and the elements of a conversion claim are: (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights. *Kinnard v. Shoney's, Inc.*, 100 F.Supp.2d 781, 797 (M.D. Tenn. 2000); *Mammoth Cave Production Credit Ass'n. v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977).

The appellate court in Tennessee has identified three ways in which property may be converted:

> "First, a person may personally dispossess another of tangible personalty. Second, a person may dispossess another of tangible property through the active use of an agent. Third, under certain circumstances, a person who played no direct part in dispossessing another of property, may nevertheless be liable for conversion for receiving a chattel."

*PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Community Development Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012) (internal citations omitted).

However, "the general rule is that money is an intangible and therefore is ***not*** subject to a claim for conversion." *McCoy*, 2024 WL 4916367 at *10 (citing *PNC Multifamily*, 387 S.W.3d at 553 (quoting 90 C.J.S. *Trover and Conversion* § 16 (2012)); see also *Knox Trailers, Inc. v. Maples*, 581 F.Supp.3d 1000, 1017 (E.D. Tenn. 2022) (noting that Tennessee law does not permit

conversion actions for intangible property and that money is generally considered to be intangible). Yet, "a plaintiff may be able to establish a claim of conversion where money is specific and capable of identification, or where there is a determinate sum that the defendant was entrusted to apply to a certain purpose." *Id.* (citing *PNC Multifamily*, 387 S.W.3d at 553). "Conversion of money lies only where the money is specific and capable of identification or where there is a determinate sum the defendant was entrusted to apply for a certain purpose." *Brown v. J. Rockett Audio Designs, LLC,* 2018 WL 3656481 at *2 (M.D. Tenn. Aug. 2, 2018) (citing *PNC Multifamily at 553)).*

Here, FCG has not alleged that any money was "entrusted" to Matthews. Rather, what FCG alleges in its claim for conversion is that either Lowe's and/or one of the Individual Lowe's Defendants caused invoices with artificially inflated prices to be submitted to FCG for payment. (see *Complaint*, Count XI, ¶ 206). FCG further alleges that it paid the invoices in full and that Lowe's had no rights to payments from FCG for supplies and materials that it and/or one of the Individual Lowe's Defendants knew were unnecessary and/or artificially inflated. (see *Complaint*, Count XI, ¶ 207-208). FCG claims that by causing it to pay certain amounts to which Lowe's was not entitled, that Lowe's and/or one of the Individual Lowe's Defendants "intentionally exercised dominion and control over, and appropriated for their own use and benefit, FCG's money" to the tune of an amount that "is expected to be no less than $6,402,151.49." (see *Complaint*, Count XI, ¶ 210, 212).

As one can see, FCG again makes conclusory allegations that are levied against Lowe's and all Lowe's Individual Defendants and in doing so, tries to articulate the elements of a conversion claim in an effort to state this cause of action. However, the law is clear that when conversion of

money is alleged, the plaintiff must state a specific and definitive sum that the defendant is said to have been entrusted. FCG has failed to specifically allege that Matthews was entrusted with any definite sum of money. Instead, all FCG does in its Complaint is generally allege that it paid Lowe's for materials that might have been unnecessary for its construction projects and/or paid higher prices for those materials. To further illustrate that no specific or definite sum of money was entrusted to the moving Defendants, FCG rounds out its purported conversion claim by alleging that the amount misappropriated "is expected" to be millions of dollars. Accordingly, since FCG has not alleged that Matthews "wrongfully acquired or misapplied a specific and determinant sum of money," it has failed to state a claim for conversion under Tennessee law and this cause of action should be dismissed. (*see Brown v. J. Rockett Audio Designs, LLC,* 2018 WL 3656481 at *2).

### 6. Adoption by Reference

Pursuant to Rule 10(c) of the *Federal Rules of Civil Procedure*, Defendant Matthews hereby adopts and incorporates by reference any and all statements, averments, authority or pleadings in any other motion to dismiss the Complaint and supporting memorandum filed by any co-Defendant in this action, and incorporates the same herein by reference as if set out in full and verbatim herein.

### CONCLUSION

For the reasons set forth herein, FCG has failed to sufficiently plead and articulate its claims against Matthews and has failed to state a claim against him upon which relief can be granted with regard to the causes of action asserted in this matter. Specifically, the majority of the claims and causes of action against Matthews are premised upon fraud – that being alleged

violations of RICO, conspiracy, fraud and violations of the TCPA. As such, with regard to each of these claims, FCG is required to plead specific facts, particular to Matthews, specifying the who, what, when, where and how of the alleged misconduct. However, the approach taken in FCG's Complaint is to make generally broad and conclusory allegations that are asserted against a group of Defendants. The Complaint lacks the requisite specificity as it does not specify Matthews' connection to the alleged wrongdoing. As a result, FCG's Complaint does not satisfy the pleading requirements of Rule 9(b) or 12(b)(6) and the RICO, conspiracy, fraud and TCPA claims should be dismissed. Furthermore, the TCPA claim is barred and should be dismissed upon application of the one-year statute of limitations.

As for FCG's claim of conversion, it too fails because FCG has not alleged that any money was entrusted to Matthews. Rather, FCG merely contends that as a result of orders placed by Shore, FCG paid Lowe's for materials that might have been artificially priced high or unnecessary for its projects. FCG has not alleged that Matthews wrongfully acquired or misapplied a definitive sum of money belonging to FCG. Therefore, FCG has failed to state a claim for conversion and it should be dismissed.

*Attorney Signature and Certificate of Service on Following Pages*

Respectfully submitted,

**SPICER RUDSTROM, PLLC**

By: _/s/ Robert J. Uhorchuk_

Robert J. Uhorchuk (BPR #017599)
Nicholas C. Stevens (BPR #030826)
537 Market Street, Suite 203
Chattanooga, TN 37402-1241
Telephone: (423) 756-0262
Facsimile: (423) 756-8489
rju@spicerfirm.com
nstevens@spicerfirm.com
_Counsel for Defendant Scott Matthews_

Darrick Lee O'Dell (BPR# 026883)
Spicer Rudstrom, PLLC
220 Athens Way, Suite 405
Nashville, TN 37228-1329
Phone: (615) 425-7358
Fax: (615) 259-1522
dodell@spicerfirm.com
_Counsel for Defendant Scott Matthews_

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed this document along with any exhibits with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Todd E. Panther
Christopher C. Sabis
Thomas B. Hall
**SHERRARD ROE VOIGHT & HARBISON, PLC**
150 Third Ave South, Suite 1100
Nashville, TN 37201
tpanther@srvhlaw.com
csabis@srvhlaw.com
*Counsel for Plaintiff*

Don L. Hearn, Jr.
**Glankler Brown, PLLC**
6000 Poplar Avenue, Suite 400
Memphis, TN 38119
dhearn@glankler.com
*Counsel for Defendants HYDS, Inc. and Keith Meadows*

Joseph C. Gjonola
Nadine Alsaadi
Nicholas P. Roxborough
**Roxborough Pomerance Nye & Adreani, LLP**
5900 Canoga Avenue, Suite 450
Woodland Hills, CA 91367
jcg@rpnalaw.com
na@rpnalaw.com
npr@rpnalaw.com
*Counsel for Defendants HYDS, Inc. and Keith Meadows*

Jerry E. Martin
Seth M. Hyatt
Matthew E. McGraw
**Barrett Johnston Martin & Garrison, PLLC**
200 31st Ave. N.
Nashville, TN 37203
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com
mmcgraw@barrettjohnston.com
*Counsel for Defendants HYDS, Inc. and Keith Meadows*

Scarlett S. Nokes
R. Brandon Bunden
**Bradley Arant Boult Cummings, LLP**
1221 Broadway, Suite 2400
Nashville, TN 37203
snokes@bradley.com
bbundren@bradley.com
*Counsel for Defendant Dean Bingham*

Gary C. Shockley
Ryan P. Loofbourrow
Scott D. Carey
**Baker, Donelson, Bearman, Caldwell & Berkowitz, PC**
1600 West End Ave., Suite 2000
Nashville, TN 37203
gshockley@bakerdonelson.com
rloofbourrow@bakerdonelson.com
scarey@bakerdonelson.com
*Counsel for Defendant Lowe's Home Centers, LLC*


This 29th day of January, 2025.

                              **SPICER RUDSTROM, PLLC**

                    By:    */s/ Robert J. Uhorchuk*
                           Robert J. Uhorchuk
                           Nicholas C. Stevens
                           Darrick O'Dell