**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **FRANKLIN CONSTRUCTION GROUP, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:24-cv-01255** |
| ) | **JURY DEMAND** |
| **WILLIAM SHORE, JWSC, LLC, KEITH** ) | |
| **MEADOWS, JOSEPH HEATH, HYDS, INC.,** ) | **Judge Waverly D. Crenshaw, Jr.** |
| **DEAN BINGHAM, LUNDON JOHNSON,** ) | **Magistrate Judge Jeffery S. Frensley** |
| **TYLER WEBER, JOEL CHEVRETTE,** ) | |
| **DANNY KNOWLES, SCOTT MATTHEWS,** ) | |
| **and LOWE'S HOME CENTERS, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS KEITH MEADOWS AND HYDS INC.'S MOTION TO DISMISS**

---

Plaintiff Franklin Construction Group, LLC respectfully asks this Court to deny the Motion to Dismiss filed by Defendants Keith Meadows and HYDS, Inc.

## I.     INTRODUCTION AND RELEVANT FACTS

The facts of this matter are laid out in detail in the Complaint and attachments thereto. Herein, Plaintiff briefly summarizes the facts of this case and the facts that specifically relate to Defendants Meadows and HYDS's Motion to Dismiss.[1]

From at least 2021 to 2023, the defendants in this case worked in concert to execute a tremendous and purposeful fraud on Plaintiff, which caused millions of dollars in damage. Complaint, ¶ 1. Defendant Shore was employed by Plaintiff, a building and construction company.

---

[1] Plaintiff is responding separately to seven motions to dismiss by various individual defendants and defendant groups.

*Id.* at ¶¶ 2, 7. Defendant HYDS is a construction materials supplier, with Defendant Meadows holding himself out as the public owner of Defendant HYDS and Defendant Heath holding himself out as the CEO. *Id.* at ¶ 37. Defendants HYDS, Meadows and Heath (collectively the "HYDS Defendants") inflated the price of goods bought and delivered to Plaintiff, diverted a substantial portion of these goods to Defendant Shore's secret side projects, and enriched themselves by doing so. *Id.* at ¶¶ 3, 130-31. The HYDS Defendants introduced Defendant Shore to the Lowe's Individual Defendants (Defendants Bingham, Johnson, Weber, Chevrette, Knowles, and Matthews) as part of their scheme to defraud Plaintiff. *Id.* at ¶¶ 74, 75. Defendant Shore and the Individual Lowe's Defendants instituted a fraud through which Defendant Shore provided material estimates to Defendant Lowe's for the projects he himself requested on behalf of Plaintiff, inflated the prices that Plaintiff paid in furtherance of these projects, and diverted the goods purchased by Plaintiff to Defendant Shore for his own personal use. *Id.* at ¶ 4. The HYDS Defendants and the Lowe's Individual Defendants often worked together to perpetuate the fraud on Plaintiff. *Id.* at ¶¶ 102, 110. The defendants have taken various steps to cover up their fraudulent activities. *See id.* at ¶¶ 98, 100, 101.

Some of the allegations against Defendants Meadows and HYDS specifically include that they fraudulently inflated the price of lighting fixtures, *id.* at ¶ 46

> ("On September 13, 2021, Shore issued HYDS FCG Purchase Order No. 109 for lighting fixtures. The price Shore and Meadows and/or Heath concocted for those fixtures, which is reflected on the purchase order, was $30,000.00. However, the market price for these fixtures was only $15,000.00, resulting in a fraudulent overpayment by FCG of $15,000.00. Contemporaneously with this transaction, Shore issued an invoice, either from himself or through JWSC, to Meadows or HYDS for $10,000.00, which Meadows or HYDS paid. Confirming that the $10,000.00 payment Shore or JWSC received was a fraudulent kickback on account of FCG Purchase Order No. 109, the Invoice and Payment detail Shore saved on his FCG computer expressly identifies the $10,000.00 payment as being for FCG Purchase Order No. 109."),

fraudulently inflated storage and shipping costs, *id.* at ¶ 60

> ("On March 15, 2023, Shore issued HYDS FCG Purchase Order No. 504.02-308
> for storage and shipping cost. The price Shore and Meadows and/or Heath
> concocted for these costs, which is reflected on the purchase order, was $53,950.00.
> Contemporaneously with this transaction, Shore issued an invoice, either from
> himself or through JWSC, to Meadows or HYDS, for $53,000.00, which Meadows
> or HYDS paid. Confirming that the $53,000.00 payment Shore or JWSC received
> was a fraudulent kickback on account of FCG Purchase Order No. 504.02-308, the
> Invoice and Payment detail Shore saved on his FCG computer expressly identifies
> the $53,000.00 invoices and payments as being for FCG Purchase Order No.
> 504.02-308."),

and fraudulently inflated the price of sinks*, id.* at ¶ 102 ("on August 30, 2021, Bingham sent Heath

an email with a quote, which included a profit mark-up by Lowe's, for 'Franklin's sinks,' which

HYDS marked up again before invoicing FCG for the sinks. . . .").

## II.    STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

"the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations

as true, and draws all reasonable inferences in favor of the plaintiff." *Solomon v. Solomon*, No.

3:21-cv-00498, 2022 WL 610825, at *2 (M.D. Tenn. Mar. 1, 2022). A complaint is sufficient when

"the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he

standard on a motion to dismiss is not whether Plaintiff can prove his claim, but whether he has

alleged facts [] from which the court can reasonably infer the defendant is liable for the alleged

conduct." *Stanton v. Joyner*, No. 3:19-cv-00270, 2021 WL 4480508, at *9 (M.D. Tenn. Sept. 30,

2021). "Thus, dismissal is appropriate only if 'it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief.'" *Solomon*, 2022 WL

610825, at *2 (quotation omitted). The moving party has the burden of proving that no claim exists.

*Pinnacle Bank v. Fid. & Deposit Co.*, 598 F. Supp. 3d 666, 670 (M.D. Tenn. 2022).

3

Fed. R. Civ. P. 9(b) states that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Defendants Meadows and HYDS assert that the heightened "particularity" pleading standard in Rule 9(b) applies to Plaintiff's fraud-based claims. However, "[i]n the Sixth Circuit, in order to prevail on a motion to dismiss under Rule 12(b)(6) premised solely on non-compliance with the heightened pleading standards of Rule 9(b)—as opposed to the more lenient, general standard of Rule 8—a defendant must have previously filed a motion under Rule 12(e) for a more definite statement." *PSC Indus., Inc. v. Johnson*, No. 3:19-CV-00362, 2021 WL 1663574, at *14 (M.D. Tenn. Apr. 28, 2021) (collecting cases and declining to apply Rule 9(b)). None of the defendants in this case have filed a Rule 12(e) motion. Therefore, dismissal under Rule 9(b) would be inappropriate. *See e.g.*, *Legge v. Wagner*, 7 F.3d 234 (Table) (6th Cir. 1993) ("This court has noted that in the absence of a defendant's motion for a more definite statement under Rule 12(e), dismissal on the sole basis of a plaintiff's failure to comply with Rule 9(b) is inappropriate."); *Trubiano v. Fed. Nat. Mortg.*, No. 09-11968, 2010 WL 1438979, at *2 (E.D. Mich. Apr. 9, 2010) ("[I]n the absence of Defendants' motion for a more definite statement, dismissal for failure to satisfy Rule 9(b) is not appropriate.").

If the Court does find that Rule 9 applies, "even when a plaintiff's RICO allegations fail to satisfy the particularity requirement, the Court may allow discovery to proceed under Fed. R. Civ. P. 11(b)(3)." *Arnold v. Petland, Inc.*, No. 2:07-CV-01307, 2009 WL 816327, at *4 (S.D. Ohio Mar. 26, 2009); *see also McLearn v. Wyndham Resort Dev. Corp.*, No. 3:19-CV-00004, 2020 WL

1189844, at *4 n.11 (M.D. Tenn. Mar. 11, 2020) ("Courts may relax Rule 9(b)'s particularity requirement when certain information is solely within the defendants' knowledge.").[2]

## III. LEGAL ANALYSIS

### A. <u>Plaintiff has met the pleading requirements for RICO.</u>

"To state a RICO claim, a plaintiff must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)). "RICO pleadings are to be liberally construed." *Greer v. Home Realty Co. of Memphis, Inc.*, No. 07-2639, 2008 WL 11318325, at *7 (W.D. Tenn. Aug. 7, 2008) (citing *Begala v. PNC Bank, Ohio, Nat. Ass'n.*, 214 F.3d 776, 781 (6th Cir. 2000) and *United States v. Qaoud*, 777 F.2d 1105, 1116 (6th Cir. 1985)). In considering a RICO action, the Supreme Court has stated that Rule 11 grants "flexibility…allowing pleadings based on evidence reasonably anticipated after further investigation or discovery." *Rotella v. Wood*, 528 U.S. 549, 560 (2000). Defendants Meadows and HYDS specifically challenge Plaintiff's allegations of an enterprise and a pattern, but Plaintiff has sufficiently alleged both under either Rule 8 or Rule 9(b).[3]

### 1. Plaintiff has more than adequately pled the existence of an "Enterprise."

The RICO statute defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has emphasized that the word "enterprise" in the RICO statute should be interpreted broadly:

---

[2] Though not required, Plaintiff has specifically pled certain information held by the defendants that it does not have, that Plaintiff believes would further show the fraudulent scheme. *See e.g.*, Compl., at ¶¶ 98-99, 101, 104, 109.

[3] Defendants Meadows and HYDS appear to make the same arguments regarding RICO conspiracy under § 1962(d).

5

The statute does not specifically define the outer boundaries of the "enterprise" concept but states that the term "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." § 1961(4). This enumeration of included enterprises is obviously broad, encompassing "any ... group of individuals associated in fact." *Ibid.* (emphasis added). The term "any" ensures that the definition has a wide reach, *see, e.g.*, *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 218 – 219, 128 S. Ct. 831, 833, 169 L. Ed. 2d 680 (2008), and the very concept of an association in fact is expansive. In addition, the RICO statute provides that its terms are to be "liberally construed to effectuate its remedial purposes." § 904(a), 84 Stat. 947, note following 18 U.S.C. § 1961; *see also, e.g.*, *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 257, 114 S. Ct. 798, 127 L. Ed. 2d 99 (1994) ("RICO broadly defines 'enterprise' "); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497, 105 S. Ct. 3275, 87 L. Ed. 2d 346(1985) ("RICO is to be read broadly"); *Russello v. United States*, 464 U.S. 16, 21, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983) (noting "the pattern of the RICO statute in utilizing terms and concepts of breadth").

In light of these statutory features, we explained in *Turkette* that "an enterprise includes any union or group of individuals associated in fact" and that RICO reaches "a group of persons associated together for a common purpose of engaging in a course of conduct." 452 U.S., at 580, 583, 101 S. Ct. 2524. Such an enterprise, we said, "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.*, at 583, 101 S. Ct. 2524.

*Boyle v. United States*, 556 U.S. 938, 944–45 (2009).

"In order to establish the existence of an 'enterprise' under § 1962(c), a plaintiff is required to prove: (1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged." *Ouwinga*, 694 F.3d at 793. "[T]his organizational structure need not be hierarchical, can make decisions on an ad hoc basis, and does not require the members to have fixed roles. Put another way, a plaintiff must show simply a continuing unit that functions with a common purpose." *Id.* at 794 (internal citations and quotation marks omitted). "RICO liability is not limited to those with a formal position in the enterprise, but some part in

6

directing the enterprise's affairs is required." *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 855 (S.D. Ohio 2020) (quotation omitted).

Defendants Meadows and HYDS argue that Defendant Lowe's and the Lowe's Individual Defendants have not been sufficiently linked to the conduct of the HYDS Defendants. They maintain that Plaintiff "alleges two independent schemes by two different groups of defendants." Memo., at 2. Defendants Meadows and HYDS are welcome to argue at summary judgment or to a jury that these "two different groups of defendants" finding Plaintiff at the same time and proceeding to both independently defraud Plaintiff in very similar ways is just a startling coincidence, but neither Plaintiff nor the Court need accept this theory at the motion to dismiss stage. This is particularly true in this case because the Complaint contains many allegations linking together the defendants in the Complaint, including allegations of specific fraudulent activity, on specific dates, involving specific individuals, and involving specific items and dollar amounts that was conducted together:

- "According to HYDS's website, Lowe's is a HYDS 'Big Box' partner." Compl., at ¶ 73.

- "On December 9, 2020, Meadows and Heath expanded their fraudulent conspiracy with Shore to include Lowe's Individual Defendant Bingham when Heath introduced Shore to Bingham by email stating, 'I have add my good friend Dean from Lowe's on this email they can save you lots of money on projects send him over anything you have and see what he can do for you.'" *Id.* at ¶ 74.

- Paragraph 102 alleges that the Lowe's Individual Defendants worked together with Defendants Meadows and HYDS to perpetrate fraud:

  o "Lowe's Individual Defendant Bingham further conspired with Shore, Meadows, and Heath to defraud FCG by Shore issuing purchase orders to HYDS for Lowe's materials at a cost to FCG that was well above market pricing.

  o For example, on August 30, 2021, Bingham sent Heath an email with a quote, which included a profit mark-up by Lowe's, for 'Franklin's sinks,' which HYDS marked up again before invoicing FCG for the sinks.

7

o As another example, on April 21, 2023, Shore issued HYDS FCG Purchase Order No. 119 for Lowe's proprietary light fixtures in the amount of $30,000.00, which FCG paid in full. By Shore arranging for FCG to purchase the light fixtures from HYDS, which purchased them from Lowe's, Lowe's and HYDS both profited from the light fixtures while FCG paid above-market prices. Contemporaneously with this purchase order, Shore issued an invoice, either from himself or through JWSC, to Meadows or HYDS, which Meadows or HYDS paid, for $23,718.85, and that invoice and payment is expressly identified on Shore's Invoice and Payment detail as being on account of FCG Purchase Order No. 119. In comparison to the $30,000.00 FCG paid for the Lowe's light fixtures, the market contractor cost of those same light fixtures is less than $15,000.00."

These allegations are sufficient to state a RICO claim, particularly at the motion to dismiss stage. The Sixth Circuit has held that in RICO cases involving many defendants, on a motion to dismiss, it is possible that "the various Defendants acted in different capacities and those differences may ultimately impact the determination of whether a particular Defendant only participated in his own affairs. But that is a matter to be fleshed out in discovery and to be resolved through motion practice or by the jury." *Ouwinga*, 694 F.3d at 793. Plaintiff has sufficiently pled that Defendants Meadows and HYDS were a part of the enterprise, and the details of their involvement in that enterprise should be "fleshed out in discovery."

Defendants Meadows and HYDS also try to argue that a "critical defect" in Plaintiff's complaint is that it "fails to identify any documents or communications connecting any HYDS Defendant with [certain individual defendants]…" Memo, at 11. But Plaintiff is not required to show any documents or communications or connect every one of the defendants to the other defendants at the motion to dismiss stage, and Plaintiff's allegations alone are sufficient. *See e.g.*, *Perry v. United Parcel Serv.*, 90 F. App'x 860, 861 (6th Cir. 2004) (citation omitted) ("The court's function is not to weigh the evidence or assess the credibility of witnesses but rather to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim.").

8

Defendant Meadows and HYDS also cite a series of cases indicating that routine business relationships and introductions are insufficient to create a RICO enterprise. Memo. at 8. But this Court is required to draw all inferences in favor of Plaintiff at this stage. Plaintiff has included sufficient allegations of a relationship between the various defendants, that it was more than a standard business relationship, and that there were illegal/fraudulent elements to the relationship. This is sufficient to survive a motion to dismiss. *See, e.g.*, *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1316 (D. Kan. 2018)

> ("But, construing the Class Complaint as describing just 'routine business relationships' requires the court to draw inferences against the class plaintiffs' allegations. And that is not a proper endeavor for the court on a motion to dismiss. Instead, the court must take plaintiffs' allegations as true and view them in the light most favorable to the class plaintiffs. Applying that standard, one plausibly can infer from the Class Complaint's allegations that the Mylan and Pfizer Defendants—persons or entities associated with the enterprise—formed relationships sufficient to satisfy the pleading requirements for a RICO enterprise.").

### 2. Plaintiff has more than adequately pled the existence of a "Pattern."

"To establish a RICO violation under § 1962(c), a plaintiff must allege that the RICO enterprise engaged in a 'pattern of racketeering activity' consisting of at least two predicate acts of racketeering activity occurring within a ten-year period. The alleged predicate acts may consist of offenses 'which are indictable' under any of a number of federal statutes, including the mail and wire fraud statutes." *Moon*, 465 F.3d at 723 (citations omitted). Defendants Meadows and HYDS argue that the Complaint does not satisfy RICO's pattern requirement—not because of an insufficient temporal scope—but because there is only one victim and one injury. There is more than one victim, but even if there were not the allegations are still sufficient to survive a motion to dismiss.

9

As an initial matter, despite Defendants Meadows and HYDS's intimations to the contrary, the number of victims is not dispositive as to whether a RICO violation has occurred and a limited number of victims, including one victim, can plead a RICO claim. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1110-11 (6th Cir. 1995). In *Tatum*, two companies brought a RICO claim relating to a series of oil and gas contracts. *Id.* at 1103. The district court dismissed the claim because it believed that the phrase "pattern of racketeering activity" was unconstitutionally vague and that the plaintiffs had failed to satisfy Rule 9(b). *Id.* at 1104. The Sixth Circuit reversed, holding *inter alia*, that the limited number of victims of the alleged RICO scheme was not dispositive when other factors weighed in favor of a pattern of racketeering activity. *Id.* at 1110-11 (citing *Fleischhauer v. Feltner*, 879 F.2d 1290, 1297 (6th Cir. 1989), *cert. denied*, 493 U.S. 1074 *and* 494 U.S. 1027 (1990)). The *Tatum* court cited to *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1305 (7th Cir. 1987). In that case, the court held that "the repeated infliction of economic injury upon a single victim of a single scheme is sufficient to establish a pattern of racketeering activity for purposes of civil RICO."[4]

The alleged RICO conduct in this case resulted in multiple economic injuries, schemes, and transactions, involving numerous construction projects and contracts,[5] which distinguishes

---

[4] *See also World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 509 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) ("while the courts may look somewhat suspiciously on RICO schemes directed at one victim, the courts have allowed complaints alleging multiple economic injuries to the same victim to survive"); *Converged Compliance Sols., Inc. v. XOP Networks, Inc.*, No. 21-CV-5482 (PGG) (OTW), 2024 WL 4665114, at *17 (S.D.N.Y. Sept. 25, 2024) ("[A] RICO claim alleging multiple economic injuries to the same victim can be sufficient at the pleading stage.").

[5] *See, e.g.*, Purchase Order No. 109, Compl., at ¶ 46; Purchase Order No. 108R. *Id.* at ¶ 47; Purchase Order No. 113, *Id.* at ¶ 49; Purchase Order No. 201, *Id.* at ¶ 50; Purchase Order No. 114, *Id.* at ¶ 51; Purchase Order No. 04-201, *id.* at ¶ 52; Purchase Order No. 03-201, *id.* at ¶ 53; Purchase Order No. 02-301, *id.* at ¶ 54; Purchase Order No. 506.01-101, *id.* at ¶ 55; Purchase Order No. 504.02-302, *id.* at ¶ 56; Purchase Order No. 02-304, *id.* at ¶ 57; Purchase Order No. 504.02-305,

this case from those cited by Defendants. In *Edmondson & Gallagher*, there was a single scheme to defraud three plaintiffs out of the single sale of a single building, and the Court found that the "single scheme, single injury, and few victims" indicated it was "virtually impossible for plaintiffs to state a RICO claim." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995). In *SIL-FLO*, the Court found that there was "a single scam affecting a single mark," when the transaction of a single company was not completed. *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990).

Though Plaintiff is the only party bringing claims in this case, that does not mean that Plaintiff is the only victim of the defendants' illegal conduct. *See Edmondson & Gallagher*, 48 F.3d at 1265 ("[W]e see no basis for defendants' suggestion that a non-plaintiff cannot be a victim[.]"). The allegations in the Complaint indicate victims beyond Plaintiff. *See e.g.*, Compl., at ¶ 104 (referencing Lowe's customers); Compl., at ¶ 42-43 (referencing fraud against FCG executives); Compl., at ¶ 72 (referencing the need to continue construction projects; obvious stakeholders of building projects would include entities making loans, insurance companies, property owners, and other vendors).

### 3. RICO Conspiracy allegations are sufficient.

Defendants Meadows and HYDS's argument that Plaintiff has not alleged a Section 1962(d) RICO conspiracy fails for all of the reasons addressed herein. Defendants Meadows and HYDS's RICO conspiracy argument is limited to the notion that Plaintiff has failed to adequately

---

*id.* at ¶ 58; Purchase Order No. 504.02-306*, id.* at ¶ 59; Purchase Order No. 504.02-308*, id.* at ¶ 60; Purchase Orders Nos. 504.04-205 and 504.02-309*, id.* at ¶ 66; Change Order No. 002*, id.* at ¶ 67; FCG's Union Brick project, *id.* at ¶ 80; invoices related Defendant Shore's side projects at 1052 Summerset Downs Boulevard, 1143 Maxwell Branch Road, and Cotton Road*, id.* at ¶ 89; the Beechcroft project*, id.* at ¶ 100; over two years of purchasing orders*, id.* at ¶ 104; Kedron Square Purchase Orders, Exhibit 1 to the Complaint; and Green Lea Purchase Orders, Exhibit 2 to the Complaint.

11

plead the four elements of a Section 1962(c) RICO claim. Memo., at 7, 13. Because Plaintiff has pleaded a Section 1962(c) claim, as described above, Defendants Meadows and HYDS's Section 1962(d) argument fails. Though Defendants Meadows and HYDS mention that Plaintiff must, in addition to the 1962(c) elements, allege the existence of an illicit agreement, they make no argument that Plaintiff has failed to do so. Moreover, a RICO conspiracy claim under Section 1962(d) is not subject to the Rule 9(b) heightened pleading requirement. *See, e.g.*, *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir. 2012) ("The plaintiffs' third amended complaint does allege that [the defendants] conspired . . . through a pattern of racketeering activity, and this agreement can be inferred from the individual defendants' involvement in the four well-pled predicate acts in which they made false representations . . . with the goal of defrauding those couples of money."); *Justice v. Nelson*, No. 3:19-cv-185, 2019 WL 6971371, at *1 (E.D. Tenn. Dec. 19, 2019) (Rule 8's notice pleading standard applies to RICO conspiracy claims); *Dowling v. Select Portfolio Servicing, Inc.*, No. 2:05-CV-049, 2006 WL 571895, at *9 (S.D. Ohio Mar. 7, 2006) (same, citing cases). Plaintiff's Section 1962(d) claim satisfies this standard.

### B.    Plaintiff has met the pleading requirements for its state law claims.

Plaintiff believes that this Court should not dismiss its federal RICO claim and that it should therefore exercise supplemental jurisdiction over the related state law claims. Out of an abundance of caution, Plaintiff addresses Defendants Meadows and HYDS's substantive state law arguments.

#### 1.    Plaintiff has more than adequately pled its claim for civil conspiracy (Count II).

"An actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or

12

accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Carroll v. TDS Telecomms. Corp.*, No. 1:17-CV-01127-STA-EGB, 2017 WL 6757566, at *8 (W.D. Tenn. Dec. 29, 2017) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002)). Broken down into distinct elements, sustaining a claim of civil conspiracy requires allegations of "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006).

"[T]here is no higher burden upon Plaintiff for pleading a civil conspiracy claim. Plaintiff must merely meet the requirements of *Twombley* and *Iqbal*." *Carroll*, 2017 WL 6757566, at *10. Plaintiff has met its burden by specifically alleging, among other things, that the defendants worked together to pay Defendant Shore kickbacks for defrauding Plaintiff into purchasing unnecessary supplies and for the other defendants to unlawfully obtain money from the fraudulently procured sales of their goods. (*See e.g.*, Compl., ¶¶ 116, 130-31).

### 2. Plaintiff has more than adequately pled its claims for fraud and violation of the Tennessee Consumer Protection Act (Counts VI and VII).

As aforementioned, none of the defendants have previously filed a motion under Rule 12(e) for a more definite statement. Therefore, dismissal for failure to satisfy Rule 9(b) is not appropriate. *See e.g.*, *Legge*, 7 F.3d at 234. Notwithstanding the foregoing, Plaintiff has more than satisfied the heightened "particularity" pleading standard in Rule 9(b) and the notice standard of Rule 8.

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud." *Bond v. Clover Health Invs., Corp.*, 587 F. Supp. 3d 641, 664–65 (M.D. Tenn. 2022) (quotation omitted). The Sixth Circuit has explained, however, that while Rule 9(b) imposes a

13

heightened standard, the underlying purpose of the rule is to serve the same ends as the general pleading requirements of Rule 8:

> [Rule 9(b)] should not be read to defeat the general policy of "simplicity and flexibility" in pleadings contemplated by the Federal Rules. Rather, Rule 9(b) exists predominantly for the same purpose as Rule 8: to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. Rule 9(b), however, also reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading[.]

*Id.* (quoting *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)). "So long as a [plaintiff] pleads sufficient detail—in terms of time, place, and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.* (quotation omitted).

"Where a complaint alleges 'a complex and far-reaching fraudulent scheme,' then that scheme must be pleaded with particularity and the complaint must also 'provide examples of specific' fraudulent conduct that are 'representative samples' of the scheme." *United States ex rel. Marlar v. BWXT Y–12, LLC*, 525 F.3d 439, 444–45 (6th Cir. 2008) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007)). Nevertheless, "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put [the opposing party] on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988)).

The Complaint includes many specific allegations regarding Defendants Meadows and HYDS's involvement in this illegal scheme, including examples of specific instances of fraud and

kickbacks in paragraphs 45-69 of the Complaint.[6] These examples often specifically mention Defendants Meadows and/or HYDS. A few examples include (emphases added):

- "On September 13, 2021, Shore issued HYDS FCG Purchase Order No. 109 for lighting fixtures. **The price Shore and Meadows and/or Heath concocted for those fixtures, which is reflected on the purchase order, was $30,000.00. However, the market price for these fixtures was only $15,000.00, resulting in a fraudulent overpayment by FCG of $15,000.00.** Contemporaneously with this transaction, Shore issued an invoice, either from himself or through JWSC, to Meadows or HYDS for $10,000.00, which Meadows or HYDS paid. Confirming that the $10,000.00 payment Shore or JWSC received was a fraudulent kickback on account of FCG Purchase Order No. 109, the Invoice and Payment detail Shore saved on his FCG computer expressly identifies the $10,000.00 payment as being for FCG Purchase Order No. 109." Complaint, at ¶ 46.

- "On March 15, 2023, Shore issued HYDS FCG Purchase Order No. 504.02-308 for storage and shipping cost. **The price Shore and Meadows and/or Heath concocted for these costs, which is reflected on the purchase order, was $53,950.00.** Contemporaneously with this transaction, Shore issued an invoice, either from himself or through JWSC, to Meadows or HYDS, for $53,000.00, which Meadows or HYDS paid. Confirming that the $53,000.00 payment Shore or JWSC received was a fraudulent kickback on account of FCG Purchase Order No. 504.02-308, the Invoice and Payment detail Shore saved on his FCG computer expressly identifies the $53,000.00 invoices and payments as being for FCG Purchase Order No. 504.02-308." *Id.* at ¶ 60.

- Later in the Complaint is another example of Defendant HYDS' fraudulent activity. "Lowe's Individual Defendant Bingham further conspired with Shore, Meadows, and Heath to defraud FCG by Shore issuing purchase orders to HYDS for Lowe's materials at a cost to FCG that was well above market pricing. For example, on August 30, 2021, **Bingham sent Heath an email with a quote, which included a profit mark-up by Lowe's, for "Franklin's sinks," which HYDS marked up again before invoicing FCG for the sinks.**" *Id.* at ¶ 102.

---

[6] The Complaint makes clear that this list of examples is not comprehensive: "The above-described list of fraudulent transactions are only a fraction of the fraudulent transactions listed in Shore's Invoice and Payment detail and general ledger. According to Shore's Invoice and Payment detail, Meadows or HYDS paid Shore or JWSC at least $947,658.85, which means that the total amount FCG overpaid for the labor and materials HYDS supplied at Shore's direction was at least two-times that amount (i.e., $1,895,317.70)." Compl., at ¶ 69.

As set out in the Complaint, Defendants Meadows and HYDS purposefully and willfully misrepresented the source of the installation services and quotes provided to Plaintiff in regard to various projects overseen by Defendant Shore. *Id.* at ¶ 170.  They knew that the installation services and quotes were provided through direct coordination and oversight by Defendant Shore, while they represented that these services were provided independently. *Id.* In reliance upon these acts, Plaintiff unknowingly paid for unnecessary or excessive volumes of materials and supplies that were not required to complete the construction projects to which Defendant Shore was assigned and unknowingly purchased materials and supplies at artificially inflated prices to the benefit of Defendants Meadows and HYDS. (*Id.* at ¶ 162).

Accordingly, Plaintiff has pled fraud and violation of the Tennessee Consumer of Protection Act with more than enough specificity to put the defendants on notice as to the nature of the claims.

### 3.  Plaintiff's claims for violation of the Tennessee Consumer Protection Act are timely (Count VII).

"[A] motion to dismiss is 'generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations.'" *Lindsey v. Collier*, 606 F. Supp. 3d 769, 773 (M.D. Tenn. 2022) (citations omitted). "This is because the statute of limitations is an affirmative defense, for which the defendant bears the burden of proof . . . a motion to dismiss on statute of limitations grounds should only be granted if the allegations in the complaint affirmatively show that the claim is time-barred." *Id.*

Though Defendant Shore was terminated in September of 2023, at that time, Plaintiff had no knowledge of any malfeasance. Plaintiff simply believed that Defendant Shore had performed his job duties poorly and even gave him a generous severance package to soften the blow of termination. *Id.* at ¶ 35.  It was not until after Defendant Shore's termination that Plaintiff

discovered financial irregularities and began investigating the documentation left behind by Defendant Shore. *Id.* at ¶ 36. Indeed, Plaintiff did not become aware, nor should have become aware, of its claims against Defendant Shore and the other defendants until Larry Grace of Central Century Supply, LLC telephoned a principal of Plaintiff on November 30, 2023, to confirm the fraud that had been perpetrated against Plaintiff. *Id.* at ¶ 110. Plaintiff filed the Complaint less than a year later on October 21, 2024. Therefore, Plaintiff's claims for violation of the Tennessee Consumer Protection Act are timely.

### 4. Plaintiff has more than adequately pled its claim for conversion (Count VIII).

Contrary to the defendants' asserted positions, a defendant can convert money—including money in the form of a check. *See PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553-56 (Tenn. Ct. App. 2012) (discussing that money that is specific and capable of identification can be converted; plaintiffs maintained cause of action for conversion of funds against one defendant); *Pomeroy v. McGinnis*, No. E2020-00960-COA-R3-CV, 2021 WL 3017199, at *16–17 (Tenn. Ct. App. July 16, 2021) (conversion of money in the form of checks recognized by the court as being "actionable"); *Colyar v. Taylor*, 41 Tenn. 372, 373-78 (Tenn. 1860) (defendant liable for conversion when he gratuitously undertook to receive $1,500 for the plaintiff and deliver it to him, but instead gave the money to a third party who subsequently lost it); *Knox Trailers, Inc. v. Maples*, 581 F. Supp. 3d 1000, 1017 (E.D. Tenn. 2022) (citation omitted) (conversion claim involving money was actionable because "[i]dentifiable funds are deemed a chattel for purposes of conversion" and checks were considered identifiable funds for a specific purpose; the court noted that "to the extent Plaintiffs' claims rest on the conversion of their trade secrets, they must be dismissed"); *Lingham Rawlings, LLC v. Gaudiano (In re Lingham Rawlings, LLC)*, Nos. 10-32769, 10-3125, 2013 WL 1352320, at *152 (Bankr.

E.D. Tenn. Apr. 3, 2013) (denying defendant's motion to dismiss plaintiff's conversion claim because the court found that defendant converted plaintiff's funds by paying himself "management fees and reimbursements for loans payable to which he was not entitled"). For money to be the subject of a conversion claim, it must be specific and identifiable, or there must be a determinate sum that the defendant was entrusted to apply to a certain purpose. *See* 90 C.J.S. Trover and Conversion § 16; *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship*, 387 S.W.3d at 553; *Pomeroy*, 2021 WL 3017199, at *16–17.

  As pled in the Complaint, the funds converted by the defendants are specific and identifiable, including but not limited to the following specifically pled examples: a fraudulent kick-back of $10,000 related to Purchase Order No. 109, Compl., at ¶ 46; a fraudulent kick-back of $9,125 related to Purchase Order No. 108R, *id.* at ¶ 47; a fraudulent kick-back of $3,750 related to Purchase Order No. 109, *id.* at ¶ 48; a fraudulent kick-back of $2,500 related to Purchase Order No. 113, *id.* at ¶ 49; a fraudulent kick-back of $14,751 related to Purchase Order No. 201, *id.* at ¶ 50; a fraudulent kick-back of $5,000 related to Purchase Order No. 114, *id.* at ¶ 51; a fraudulent kick-back of $10,000 related to Purchase Order No. 04-201, *id.* at ¶ 52; a fraudulent kick-back of $10,000 related to Purchase Order No. 03-201, *id.* at ¶ 53; a fraudulent kick-back of $10,000 related to Purchase Order No. 02-301, *id.* at ¶ 54; a fraudulent kick-back of $10,000 related to Purchase Order No. 506.01-101, *id.* at ¶ 55; a fraudulent kick-back of $40,000 related to Purchase Order No. 504.02-302, *id.* at ¶ 56; a fraudulent kick-back of $15,000 related to Purchase Order No. 02-304, *id.* at ¶ 57; a fraudulent kick-back of $24,000 related to Purchase Order No. 504.02-305, *id.* at ¶ 58; a fraudulent kick-back of $40,000 related to Purchase Order No. 504.02-306, *id.* at ¶ 59; a fraudulent kick-back of $53,000 related to Purchase Order No. 504.02-308, *id.* at ¶ 60; $156,970 converted via fictitious Purchase Orders Nos. 504.04-205 and 504.02-309, *id.* at ¶ 66;

18

and a fraudulent kick-back of $45,000 related to Change Order No. 002, *id.* at ¶ 67. As the foregoing amounts are specific and identifiable sums, Plaintiff has adequately pled its claim for conversion.

## IV.     CONCLUSION

For all these reasons, Defendants Meadows and HYDS's Motion to Dismiss should be denied. If the Court is inclined to grant the Motion to Dismiss, in the alternative, Plaintiff would request that the Court order that Defendants Meadows and HYDS file a motion under Rule 12(e) and that Plaintiff have the opportunity to amend its Complaint.

Dated:  March 3, 2025

Respectfully submitted,

/s/ *Todd E. Panther*
Todd E. Panther (BPR #014438)
Christopher C. Sabis (BPR #030032)
Thomas B. Hall (BPR #036816)
SHERRARD ROE VOIGT & HARBISON, PLC
1600 West End Avenue, Suite 1750
Nashville, TN  37203
(615) 742-4200 - telephone
(615) 742-4539 - fax
tpanther@srvhlaw.com
csabis@srvhlaw.com
thall@srvhlaw.com

*Attorneys for Franklin Construction Group, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that on this the 3rd day of March 2025, the foregoing Plaintiff's Response in Opposition to Defendants Meadows and HYDS' Motion to Dismiss was filed electronically with the Clerk of Court to be served by the Court's electronic filing system upon the parties in this matter.

                Scarlett Singleton Nokes
                **Sheppard Mullin**
                2200 Ross Avenue, Suite Floor 20
                Dallas, Texas 75201
                469-391-7411
                snokes@bradley.com

                R. Brandon Bundron
                **Bradley Arant Boult Cummings LLP**
                1221 Broadway, Suite 2400
                Nashville, Tennessee 372023
                snokes@bradley.com
                bbundren@bradley.com

                *Attorneys for Dean Bingham*

                Don L. Hearn, Jr.
                **Glankler Brown PLLC**
                6000 Poplar Avenue, Suite 400
                Memphis, Tennessee 38119
                dhearn@glankler.com
                na@rpnalaw.com

                Nicholas P. Roxborough
                Joseph C. Gjonola
                Nadine Alsaadi
                **Roxborough, Pomerance, NYE & Adreani, LLP**
                5900 Canoga Avenue, Suite 450
                Woodland Hills, California 91467
                npr@rpnalaw.com
                jcg@rpnalaw.com
                na@rpnalaw.com

                *Attorneys for Joseph Heath*

Darrick Lee O'Dell
**Spicer Rudstrom, PLLC**
220 Athens Way, Suite 403
Nashville, Tennessee 37228
dodell@spicerfirm.com

Nicholas C. Stevens
Robert J. Uhorchuk
**Spicer Rudstrom, PLLC**
537 Market Street, Suite 203
Chattanooga, Tennessee 37402
nstevens@spicerfirm.com
rju@spicerfirm.com

*Attorneys for Lundon Johnson, Joel Chevrette and Danny Knowles*


Gary C. Shockley
Ryan P. Loofbourrow
Scott D. Carey
**Baker, Donelson, Bearman, Caldwell & Berkowitz, PC**
1600 West End Avenue, Suite 2000
Nashville, TN 37203
gshockley@bakerdonelson.com
rloofbourrow@bakerdonelson.com
scarey@bakerdonelson.com

*Attorneys for Lowe's Home Centers, Inc.*


Jerry E. Martin
Matthew Edward McGraw
Seth Marcus Hyatt
**Barret Johnston Martin & Garrison, LLC**
200 31st Avenue North
Nashville, TN 37203
jmartin@barrettjohnston.com
mmcgraw@barrettjohnston.com
shyatt@barrettjohnston.com

*Attorneys for Keith Meadows and HYDS, Inc.*


*/s/ Todd E. Panther*
Todd E. Panther

22