IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FRANKLIN CONSTRUCTION GROUP, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 3:24-cv-01255 ) JURY DEMAND |
| WILLIAM SHORE, JWSC, LLC, KEITH MEADOWS, JOSEPH HEATH, HYDS, INC., DEAN BINGHAM, LUNDON JOHNSON, TYLER WEBER, JOEL CHEVRETTE, DANNY KNOWLES, SCOTT MATTHEWS, and LOWE'S HOME CENTERS, INC., | ) ) Judge Waverly D. Crenshaw, Jr. ) Magistrate Judge Jeffery S. Frensley ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT JOSEPH HEATH'S MOTION TO DISMISS**

Plaintiff Franklin Construction Group, LLC respectfully asks this Court to deny the Motion to Dismiss filed by Defendant Joseph Heath.

**I.  INTRODUCTION AND RELEVANT FACTS**

The facts of this matter are laid out in detail in the Complaint and attachments thereto. Herein, Plaintiff briefly summarizes the facts of this case and the facts that specifically relate to Defendant Heath's Motion to Dismiss.[1]

From at least 2021 to 2023, the defendants in this case worked in concert to execute a tremendous and purposeful fraud on Plaintiff, which caused millions of dollars in damage. Compl., at ¶ 1. Defendant Shore was employed by Plaintiff, a building and construction company. *Id.* at ¶¶

---

[1] Plaintiff is responding separately to seven motions to dismiss by various individual defendants and defendant groups.

1

2, 7. Defendant HYDS is a construction materials supplier, with Defendant Meadows holding himself out as the public owner of Defendant HYDS, and Defendant Heath holding himself out as the CEO. *Id.* at ¶ 37. Defendants HYDS, Meadows and Heath (collectively the "HYDS Defendants") inflated the price of goods bought and delivered to Plaintiff, diverted a substantial portion of these goods to Defendant Shore's secret side projects, and enriched themselves by doing so. *Id.* at ¶¶ 3, 130-31. The HYDS Defendants introduced Defendant Shore to the Lowe's Individual Defendants (Defendants Bingham, Johnson, Weber, Chevrette, Knowles, and Matthews) as part of their scheme to defraud Plaintiff. *Id.* at ¶¶ 74, 75. Defendant Shore and the Individual Lowe's Defendants instituted a fraud through which Defendant Shore provided material estimates to Defendant Lowe's for the projects he himself requested on behalf of Plaintiff, inflated the prices that Plaintiff paid in furtherance of these projects, and diverted the goods purchased by Plaintiff to Defendant Shore for his own personal use. *Id.* at ¶ 4. The HYDS Defendants and the Lowe's Individual Defendants often worked together to perpetuate the fraud on Plaintiff. *Id.* at ¶¶ 102, 110. The defendants have taken various steps to cover up their fraudulent activities. *See id.* at ¶¶ 98, 100, 101.

Some of the allegations against Defendant Heath specifically include that he, as part of the overall scheme and in concert with the other defendants, connected Defendant Shore with the Individual Lowe's Defendants, *id.* at ¶¶ 74, 75 ("On December 9, 2020, Meadows and Heath expanded their fraudulent conspiracy with Shore to include Lowe's Individual Defendant Bingham when Heath introduced Shore to Bingham by email stating, 'I have add my good friend Dean from Lowe's on this email they can save you lots of money on projects send him over anything you have and see what he can do for you. . . .'"), fraudulently inflated the price of lighting fixtures, *id.* at ¶ 46); fraudulently inflated storage and shipping costs *id.* at ¶ 60); and fraudulently inflated the

2

price of sinks, *id.* at ¶ 102 ("on August 30, 2021, Bingham sent Heath an email with a quote, which included a profit mark-up by Lowe's, for 'Franklin's sinks,' which HYDS marked up again before invoicing FCG for the sinks. . . .").

## II.  STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff." *Solomon v. Solomon*, No. 3:21-cv-00498, 2022 WL 610825, at *2 (M.D. Tenn. Mar. 1, 2022). A complaint is sufficient when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) . "[T]he standard on a motion to dismiss is not whether Plaintiff can prove his claim, but whether he has alleged facts [] from which the court can reasonably infer the defendant is liable for the alleged conduct." *Stanton v. Joyner*, No. 3:19-cv-00270, 2021 WL 4480508, at *9 (M.D. Tenn. Sept. 30, 2021). "Thus, dismissal is appropriate only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Solomon*, 2022 WL 610825, at *2 (quotation omitted). The moving party has the burden of proving that no claim exists. *Pinnacle Bank v. Fid. & Deposit Co.*, 598 F. Supp. 3d 666, 670 (M.D. Tenn. 2022).

Fed. R. Civ. P. 9(b) states that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Defendant Heath asserts that this heightened "particularity" pleading standard in Rule 9(b) applies to Plaintiff's fraud-based claims. However, "[i]n the Sixth Circuit, in order to prevail on a motion to dismiss under Rule 12(b)(6) premised solely on non-compliance with the heightened pleading standards of Rule 9(b)—as

3

opposed to the more lenient, general standard of Rule 8—a defendant must have previously filed a motion under Rule 12(e) for a more definite statement." *PSC Indus., Inc. v. Johnson*, No. 3:19-CV-00362, 2021 WL 1663574, at *14 (M.D. Tenn. Apr. 28, 2021) (collecting cases and declining to apply Rule 9(b)). None of the defendants in this case have filed a motion under Rule 12(e) for a more definite statement. Therefore, dismissal under Rule 9(b) would be inappropriate. *See e.g.*, *Legge v. Wagner*, 7 F.3d 234 (Table) (6th Cir. 1993) ("This court has noted that in the absence of a defendant's motion for a more definite statement under Rule 12(e), dismissal on the sole basis of a plaintiff's failure to comply with Rule 9(b) is inappropriate."); *Trubiano v. Fed. Nat. Mortg.*, No. 09-11968, 2010 WL 1438979, at *2 (E.D. Mich. Apr. 9, 2010) ("[I]n the absence of Defendants' motion for a more definite statement, dismissal for failure to satisfy Rule 9(b) is not appropriate.").

If the Court does find that Rule 9 applies, "even when a plaintiffs RICO allegations fail to satisfy the particularity requirement, the Court may allow discovery to proceed under Fed. R. Civ. P. 11(b)(3)." *Arnold v. Petland, Inc.*, No. 2:07-CV-01307, 2009 WL 816327, at *4 (S.D. Ohio Mar. 26, 2009); *see also McLearn v. Wyndham Resort Dev. Corp.*, No. 3:19-CV-00004, 2020 WL 1189844, at *4 n.11 (M.D. Tenn. Mar. 11, 2020) ("Courts may relax Rule 9(b)'s particularity requirement when certain information is solely within the defendants' knowledge.").[2]

---

[2] Though not required, Plaintiff has specifically pled certain information held by the defendants that it does not have, that Plaintiff believes would further show the fraudulent scheme. *See e.g.*, Compl., at ¶¶ 98-99, 101, 104, 109.

## III. LEGAL ANALYSIS

### A. Plaintiff has met the pleading requirements for RICO.

#### 1. RICO[3] enterprise allegations are sufficient.

"To state a RICO claim, a plaintiff must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)). "RICO pleadings are to be liberally construed." *Greer v. Home Realty Co. of Memphis, Inc.*, No. 07-2639, 2008 WL 11318325, at *7 (W.D. Tenn. Aug. 7, 2008) (citing *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000) and *United States v. Qaoud*, 777 F.2d 1105, 1116 (6th Cir. 1985)). In considering a RICO action, the Supreme Court has stated that Rule 11 grants "flexibility…allowing pleadings based on evidence reasonably anticipated after further investigation or discovery." *Rotella v. Wood*, 528 U.S. 549, 560 (2000).

Defendant Heath challenges Plaintiff's allegations of an "enterprise." The RICO statute defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4). The Supreme Court has emphasized that the word "enterprise" in the RICO statute should be interpreted broadly:

> The statute does not specifically define the outer boundaries of the "enterprise" concept but states that the term "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." § 1961(4). This enumeration of included

---

[3] Defendant Heath argues, in his facts section, that "Plaintiff has failed to allege reasonable reliance on the invoices." Memo, at 3. To the extent Defendant Heath is addressing this argument to Plaintiff's RICO allegations, a RICO plaintiff is not required to plead reliance. *See e.g.*, *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 350, 357 (6th Cir. 2008) ("After *Bridge*, plaintiffs need not plead or prove that they relied on defendants' alleged misrepresentations in order to establish the elements of their civil RICO claim based on mail or wire fraud. Dismissal of plaintiffs [*sic*] claims on this basis cannot be sustained.").

enterprises is obviously broad, encompassing "any ... group of individuals associated in fact." *Ibid.* (emphasis added). The term "any" ensures that the definition has a wide reach, *see, e.g., Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 218 – 219, 128 S. Ct. 831, 833, 169 L. Ed. 2d 680 (2008), and the very concept of an association in fact is expansive. In addition, the RICO statute provides that its terms are to be "liberally construed to effectuate its remedial purposes." § 904(a), 84 Stat. 947, note following 18 U.S.C. § 1961; *see also, e.g., National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 257, 114 S. Ct. 798, 127 L. Ed. 2d 99 (1994) ("RICO broadly defines 'enterprise' "); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497, 105 S. Ct. 3275, 87 L. Ed. 2d 346(1985) ("RICO is to be read broadly"); *Russello v. United States*, 464 U.S. 16, 21, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983) (noting "the pattern of the RICO statute in utilizing terms and concepts of breadth").

In light of these statutory features, we explained in *Turkette* that "an enterprise includes any union or group of individuals associated in fact" and that RICO reaches "a group of persons associated together for a common purpose of engaging in a course of conduct." 452 U.S., at 580, 583, 101 S. Ct. 2524. Such an enterprise, we said, "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.*, at 583.

*Boyle v. United States*, 556 U.S. 938, 944–45 (2009).

"In order to establish the existence of an 'enterprise' under § 1962(c), a plaintiff is required to prove: (1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged." *Ouwinga*, 694 F.3d at 793. Regarding requirement (3), "although the existence of an enterprise is a separate element that must be proved, the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" *Id.* at 794 (quoting *Boyd*, 556 U.S. at 947); *see also Hofstetter v. Fletcher*, 905 F.2d 897, 903 (6th Cir. 1988) ("RICO applies both to legitimate enterprises conducted through racketeering operations as well as illegitimate enterprises. . . . [A]lthough 'enterprise' and 'pattern of racketeering activity' are separate elements, they may be proved by the

same evidence.") (internal citation and quotation marks omitted). "A discrete set of facts is not necessary[.]" *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 792 (E.D. Mich. 2014). Indeed, "An enterprise may have been 'formed solely for the purpose of engaging in the racketeering activity.'" *Laudien v. Caudill*, 92 F. Supp. 3d 614, 620 (E.D. Ky. 2015) (quoting *Slorp v. Lerner, Sampson & Rothfuss*, 587 Fed. Appx. 249, 265 (6th Cir. 2014)).

Defendant Heath argues that the only "common purpose" pled by Plaintiff is a desire to participate in the fraudulent scheme, but a separate purpose is required. Memo. at 6. But Plaintiff has pled more than just a common desire to participate in a fraudulent scheme. Plaintiff pleads that a common purpose of the scheme was more than just to commit mail and wire fraud, it was to pay Defendant Shore kickbacks for defrauding Plaintiff into purchasing unnecessary supplies and for the other defendants to unlawfully obtain money from the fraudulently procured sales of their goods. *See e.g.*, Compl., ¶¶ 116, 130-31. The Sixth Circuit recognizes that "[t]he common purpose of making money can support the enterprise element of a RICO conviction." *United States v. Johnson*, 440 F.3d 832, 840 (6th Cir. 2006); *see also Ouwinga*, 694 F.3d at 795 ("common purpose of promoting a fraudulent welfare benefit plan to generate commissions and related fees" sufficient to plead an enterprise); *Bloodstock Rsch. Info. Servs., Inc. v. Edbain.com, LLC*, 622 F. Supp. 2d 504, 512–13 (E.D. Ky. 2009) ("The enterprise had a common purpose of monetary gain to [Plaintiff's] detriment."). District courts in the Sixth Circuit have regularly found that pleading the common purposes of defrauding and obtaining money is more than sufficient to survive a motion to dismiss. *See e.g.*, *In re Khan*, No. 19-04258, 2023 WL 3746537, at *20 (Bankr. W.D. Mich. May 30, 2023) (refusing to dismiss RICO claim and explaining that "The Trustee alleges that the purpose of the enterprise was to enrich the participants . . . The supposed profiteering associated . . . certainly supplies an age-old purpose for many a criminal enterprise, if that is what the Trustee

7

proves at trial. In other words, '[t]he common purpose of making money can support the enterprise element' in our Circuit." (quoting *Johnson*, 440 F.3d at 840)); *Llewellyn-Jones*, 22 F. Supp. 3d at 792 ("Here, the complaint describes the defendants' specific roles and relationships, and alleges the enterprise functioned since at least 2011 for the common purpose to defraud and obtain money from the plaintiffs. Those allegations are sufficient to plead the element of an enterprise."); *Lopardo v. Lehman Bros.*, 548 F. Supp. 2d 450, 470 (N.D. Ohio 2008) (denying motion to dismiss state RICO claims where there was "a common purpose in hiding [] illegal acts and in laundering money that [the defendant] was allegedly misappropriating from his clients' accounts"); *Liberte Cap. Grp., LLC v. Capwill*, No. 5:99 CV 818, 1999 WL 35818658, at *2 (N.D. Ohio Nov. 22, 1999) ("It is reasonable to infer from the complaint that these three entities were engaged with each other for the common purpose of converting and wrongfully transferring monies held in escrow. . . The plaintiff's complaint therefore alleges the existence of an enterprise.").

The common purpose of making money is not the only common purpose in the Complaint. As noted above, the defendants also had the common purpose of transferring goods and services, in this case through fraudulent means that enriched each of them. *See e.g.*, Compl., at ¶¶ 116, 130-31. This is more than sufficient to plead an enterprise at this stage of the litigation. *See Nevada-Martinez v. Amhad*, No. 5:15-cv-239, 2016 WL 1559426, at *6-7 (E.D. Ky. Apr. 15, 2016) (finding plaintiff had successfully pled an association-in-fact enterprise with a purpose of "filing immigration applications that have no basis in law or fact . . . for the purpose of generating profits for the Defendants"). They also had the common purpose of inducing Plaintiff to pay fraudulent invoices, which satisfies the requirements of a RICO claim. *See Allstate Ins. Co. v. Lint Chiropractic PC*, 735 F. Supp. 3d 833, 844 (E.D. Mich. 2024) ("Plaintiffs allege that all the predicate acts of mail and wire fraud served the common purpose of inducing Plaintiffs to pay

8

large sums for bogus medical bills."), *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 784 (E.D. Mich. 2015) ("common purpose of submitting false claims"). Indeed, the principal case Defendant Heath relies on for his argument acknowledges that such common purposes are sufficient to state a claim under RICO. *See Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 860-61 (S.D. Ohio 2020) (finding allegations of common purposes of purchasing properties to profit through a scheme of self-dealing to be sufficient to allege a RICO enterprise).

### 2. RICO conspiracy allegations are sufficient.

Defendant Heath's argument that Plaintiff has not alleged a Section 1962(d) RICO conspiracy fails for all of the reasons addressed above. Defendant Heath's RICO conspiracy argument is limited to the notion that Plaintiff has failed to adequately plead the four elements of a Section 1962(c) RICO claim. Memo., at 7. Because Plaintiff has pleaded a Section 1962(c) claim, as described above, Defendant Heath's Section 1962(d) argument fails. Though Defendant Heath mentions that Plaintiff must, in addition to the Section 1962(c) elements, allege the existence of an illicit agreement, he makes no argument that Plaintiff has failed to do so. Moreover, a RICO conspiracy claim under Section 1962(d) is not subject to the Rule 9(b) heightened pleading requirement. *See, e.g.*, *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir. 2012) ("The plaintiffs' third amended complaint does allege that [the defendants] conspired . . . through a pattern of racketeering activity, and this agreement can be inferred from the individual defendants' involvement in the four well-pled predicate acts in which they made false representations . . . with the goal of defrauding those couples of money."); *Justice v. Nelson*, No. 3:19-cv-185, 2019 WL 6971371, at *1 (E.D. Tenn. Dec. 19, 2019) (Rule 8's notice pleading standard applies to RICO conspiracy claims); *Dowling v. Select Portfolio Servicing, Inc.*, No. 2:05-

9

CV-049, 2006 WL 571895, at *9 (S.D. Ohio Mar. 7, 2006) (same, citing cases). Plaintiff's Section 1962(d) claim satisfies this standard.

### 3. Other RICO arguments are without merit.

Defendant Heath also joins Defendants Meadows and HYDS' motion insofar as it discusses a lack of connection between the HYDS Defendants and the Lowe's Defendants. Plaintiff respectfully refers the Court to its argument in response to Defendants Meadows and HYDS' Motion to Dismiss as Defendant Heath raises no new arguments.

### B. Plaintiff has met the pleading requirements for its state law claims.

#### 1. Plaintiff has more than adequately pled its claim for fraud (Count VI).

As aforementioned, none of the defendants have previously filed a motion under Rule 12(e) for a more definite statement. Therefore, dismissal for failure to satisfy Rule 9(b) is not appropriate. *See e.g.*, *Legge*, 7 F.3d at 234. Notwithstanding the foregoing, Plaintiff has more than satisfied the heightened "particularity" pleading standard in Rule 9(b) and the notice pleading standard of Rule 8.

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud." *Bond v. Clover Health Invs., Corp.*, 587 F. Supp. 3d 641, 664–65 (M.D. Tenn. 2022) (quotation omitted). The Sixth Circuit has explained, however, that while Rule 9(b) imposes a heightened standard, the underlying purpose of the rule is to serve the same ends as the general pleading requirements of Rule 8:

> [Rule 9(b)] should not be read to defeat the general policy of "simplicity and flexibility" in pleadings contemplated by the Federal Rules. Rather, Rule 9(b) exists predominantly for the same purpose as Rule 8: to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. Rule 9(b), however, also reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading[.]

10

*Id.* at 664 (quoting *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)). "So long as a [plaintiff] pleads sufficient detail—in terms of time, place, and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.* (quotation omitted).

"Where a complaint alleges 'a complex and far-reaching fraudulent scheme,' then that scheme must be pleaded with particularity and the complaint must also 'provide examples of specific' fraudulent conduct that are 'representative samples' of the scheme." *United States ex rel. Marlar v. BWXT Y–12, LLC*, 525 F.3d 439, 444–45 (6th Cir. 2008) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007)). Nevertheless, "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put [the opposing party] on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988)).

The Complaint includes many specific allegations regarding Defendant Heath's involvement in this illegal scheme, including examples of specific instances of fraud and kickbacks in paragraphs 45-69 of the Complaint.[4] These examples often specifically mention Defendant Heath. A few examples include:

- "On September 13, 2021, Shore issued HYDS FCG Purchase Order No. 109 for lighting fixtures. **The price Shore and Meadows and/or Heath concocted for those fixtures,**

---

[4] The Complaint makes clear that this list of examples is not comprehensive: "The above-described list of fraudulent transactions are only a fraction of the fraudulent transactions listed in Shore's Invoice and Payment detail and general ledger. According to Shore's Invoice and Payment detail, Meadows or HYDS paid Shore or JWSC at least $947,658.85, which means that the total amount Plaintiff overpaid for the labor and materials Defendant HYDS supplied at Defendant Shore's direction was at least two-times that amount (i.e., $1,895,317.70)." *Id.* at ¶ 69.

11

which is reflected on the purchase order, was $30,000.00. However, the market price for these fixtures was only $15,000.00, resulting in a fraudulent overpayment by FCG of $15,000.00. Contemporaneously with this transaction, Shore issued an invoice, either from himself or through JWSC, to Meadows or HYDS for $10,000.00, which Meadows or HYDS paid. Confirming that the $10,000.00 payment Shore or JWSC received was a fraudulent kickback on account of FCG Purchase Order No. 109, the Invoice and Payment detail Shore saved on his FCG computer expressly identifies the $10,000.00 payment as being for FCG Purchase Order No. 109." Compl. at ¶ 46.

- "On March 15, 2023, Shore issued HYDS FCG Purchase Order No. 504.02-308 for storage and shipping cost. **The price Shore and Meadows and/or Heath concocted for these costs, which is reflected on the purchase order, was $53,950.00.** Contemporaneously with this transaction, Shore issued an invoice, either from himself or through JWSC, to Meadows or HYDS, for $53,000.00, which Meadows or HYDS paid. Confirming that the $53,000.00 payment Shore or JWSC received was a fraudulent kickback on account of FCG Purchase Order No. 504.02-308, the Invoice and Payment detail Shore saved on his FCG computer expressly identifies the $53,000.00 invoices and payments as being for FCG Purchase Order No. 504.02-308." (*Id.* at ¶ 60).

- "Lowe's Individual Defendant Bingham further conspired with Shore, Meadows, and Heath to defraud FCG by Shore issuing purchase orders to HYDS for Lowe's materials at a cost to FCG that was well above market pricing. For example, on August 30, 2021, **Bingham sent Heath an email with a quote, which included a profit mark-up by Lowe's, for "Franklin's sinks," which HYDS marked up again before invoicing FCG for the sinks.**" (*Id.* at ¶ 102).

The foregoing examples identify the circumstances of the fraud. They contain the specific dates of transactions, the types of goods bought and sold, the people involved in the communications, and the amounts of money exchanged. Accordingly, and particularly in the context of the full Complaint, Plaintiff has pled fraud with more than enough specificity to put Defendant Heath and the other defendants on notice as to the nature of the claim.

### 2. Plaintiff has more than adequately pled its claim for conversion (Count VIII).

Contrary to the defendants' asserted positions, a defendant can convert money—including money in the form of a check. *See PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553-56 (Tenn. Ct. App. 2012) (discussing that

12

money that is specific and capable of identification can be converted; plaintiffs maintained cause of action for conversion of funds against one defendant); *Pomeroy v. McGinnis*, No. E2020-00960-COA-R3-CV, 2021 WL 3017199, at *16–17 (Tenn. Ct. App. July 16, 2021) (conversion of money in the form of checks recognized by the court as being "actionable"); *Colyar v. Taylor*, 41 Tenn. 372, 373-78 (Tenn. 1860) (defendant liable for conversion when he gratuitously undertook to receive $1,500 for the plaintiff and deliver it to him, but instead gave the money to a third party who subsequently lost it); *Knox Trailers, Inc. v. Maples*, 581 F. Supp. 3d 1000, 1017 (E.D. Tenn. 2022) (citation omitted) (conversion claim involving money was actionable because "[i]dentifiable funds are deemed a chattel for purposes of conversion" and checks were considered identifiable funds for a specific purpose; the court noted that "to the extent Plaintiffs' claims rest on the conversion of their trade secrets, they must be dismissed"); *Lingham Rawlings, LLC v. Gaudiano (In re Lingham Rawlings, LLC)*, Nos. 10-32769, 10-3125, 2013 WL 1352320, at *152 (Bankr. E.D. Tenn. Apr. 3, 2013) (defendant's motion to dismiss plaintiff's conversion claim was denied because the court found that defendant converted plaintiff's funds by paying himself "management fees and reimbursements for loans payable to which he was not entitled"). For money to be the subject of a conversion claim, it must be specific and identifiable, or there must be a determinate sum that the defendant was entrusted to apply to a certain purpose. *See* 90 C.J.S. Trover and Conversion § 16; *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship*, 387 S.W.3d at 553; *Pomeroy*, 2021 WL 3017199, at *16–17.

As pled in the Complaint, the funds converted by the defendants are specific and identifiable, including but not limited to the following specifically pled examples: a fraudulent kick-back of $10,000 related to Purchase Order No. 109, Compl., at ¶ 46; a fraudulent kick-back of $9,125 related to Purchase Order No. 108R,, *id.* at ¶ 47; a fraudulent kick-back of $3,750 related

13

to Purchase Order No. 109, *id.* at ¶ 48; a fraudulent kick-back of $2,500 related to Purchase Order No. 113, *id.* at ¶ 49; a fraudulent kick-back of $14,751 related to Purchase Order No. 201, *id.* at ¶ 50; a fraudulent kick-back of $5,000 related to Purchase Order No. 114, *id.* at ¶ 51; a fraudulent kick-back of $10,000 related to Purchase Order No. 04-201, *id.* at ¶ 52; a fraudulent kick-back of $10,000 related to Purchase Order No. 03-201, *id.* at ¶ 53; a fraudulent kick-back of $10,000 related to Purchase Order No. 02-301, *id.* at ¶ 54; a fraudulent kick-back of $10,000 related to Purchase Order No. 506.01-101, *id.* at ¶ 55; a fraudulent kick-back of $40,000 related to Purchase Order No. 504.02-302, *id.* at ¶ 56; a fraudulent kick-back of $15,000 related to Purchase Order No. 02-304, *id.* at ¶ 57; a fraudulent kick-back of $24,000 related to Purchase Order No. 504.02-305, *id.* at ¶ 58; a fraudulent kick-back of $40,000 related to Purchase Order No. 504.02-306, *id.* at ¶ 59; a fraudulent kick-back of $53,000 related to Purchase Order No. 504.02-308, *id.* at ¶60; $156,970 converted via fictitious Purchase Orders Nos. 504.04-205 and 504.02-309, *id.* at ¶66; and a fraudulent kick-back of $45,000 related to Change Order No. 002, *id.* at ¶ 67. As the foregoing amounts are specific and identifiable sums, Plaintiff has adequately pled its claim for conversion.

### 3. Joining the other defendants' Motions.

In the section headings regarding the state law claims for TCPA, conspiracy, and conversion,[5] Defendant Heath states that he is "joining" the motions of Defendants Lowes, Johnson, and Knowles. Defendant Heath does not offer any new arguments on these issues, and Plaintiff respectfully refers the Court to its responses to the other defendants and the allegations

---

[5] Defendant Heath includes two sections addressing conversion. Out of an abundance of caution, Plaintiff has included its argument for conversion in this response and refers the Court to its other responses.

contained in the Complaint against Defendant Heath (discussed above) to respond to Defendant Heath's position.

Defendant Heath also states at the end of his Motion that "To the extent they are timely, Heath joins Co-Defendants, HYDS, Inc., and Meadows, in their motion and arguments under Federal Rule of Civil Procedure 12(b)(1), to dismiss all remaining claims for want of subject matter jurisdiction." As Defendant Heath makes no new arguments, Plaintiff refers the Court to its response to Defendants HYDS and Meadows' Motion to Dismiss regarding subject matter jurisdiction and state law claims.

## IV. CONCLUSION

For all these reasons, Defendant Heath's Motion to Dismiss should be denied. If the Court is inclined to grant the Motion to Dismiss, in the alternative, Plaintiff requests that the Court order that Defendant Heath file a motion under Rule 12(e) and that Plaintiff have the opportunity to amend its Complaint.

Dated: March 3, 2025

                Respectfully submitted,

                /s/ *Todd E. Panther*
                Todd E. Panther (BPR #014438)
                Christopher C. Sabis (BPR #030032)
                Thomas B. Hall (BPR #036816)
                SHERRARD ROE VOIGT & HARBISON, PLC
                1600 West End Avenue, Suite 1750
                Nashville, TN  37203
                (615) 742-4200 - telephone
                (615) 742-4539 - fax
                tpanther@srvhlaw.com
                csabis@srvhlaw.com
                thall@srvhlaw.com

                *Attorneys for Franklin Construction Group, LLC*

## CERTIFICATE OF SERVICE

      I hereby certify that on this the 3rd day of March 2025, the foregoing *Plaintiff's Response to Defendant Heath's Motion to Dismiss* was filed electronically with the Clerk of Court to be served by the Court's electronic filing system upon the parties in this matter.

    Scarlett Singleton Nokes
**Sheppard Mullin**
2200 Ross Avenue, Suite Floor 20
Dallas, Texas 75201
469-391-7411
snokes@bradley.com

    R. Brandon Bundron
**Bradley Arant Boult Cummings LLP**
1221 Broadway, Suite 2400
Nashville, Tennessee 372023
snokes@bradley.com
bbundren@bradley.com

*Attorneys for Dean Bingham*

    Don L. Hearn, Jr.
**Glankler Brown PLLC**
6000 Poplar Avenue, Suite 400
Memphis, Tennessee 38119
dhearn@glankler.com
na@rpnalaw.com

    Nicholas P. Roxborough
Joseph C. Gjonola
Nadine Alsaadi
**Roxborough, Pomerance, NYE & Adreani, LLP**
5900 Canoga Avenue, Suite 450
Woodland Hills, California 91467
npr@rpnalaw.com
jcg@rpnalaw.com
na@rpnalaw.com

*Attorneys for Joseph Heath*

Darrick Lee O'Dell
**Spicer Rudstrom, PLLC**
220 Athens Way, Suite 403
Nashville, Tennessee 37228
dodell@spicerfirm.com

Nicholas C. Stevens
Robert J. Uhorchuk
**Spicer Rudstrom, PLLC**
537 Market Street, Suite 203
Chattanooga, Tennessee 37402
nstevens@spicerfirm.com
rju@spicerfirm.com

*Attorneys for Lundon Johnson, Joel Chevrette and Danny Knowles*


Gary C. Shockley
Ryan P. Loofbourrow
Scott D. Carey
**Baker, Donelson, Bearman, Caldwell & Berkowitz, PC**
1600 West End Avenue, Suite 2000
Nashville, TN 37203
gshockley@bakerdonelson.com
rloofbourrow@bakerdonelson.com
scarey@bakerdonelson.com

*Attorneys for Lowe's Home Centers, Inc.*


Jerry E. Martin
Matthew Edward McGraw
Seth Marcus Hyatt
**Barret Johnston Martin & Garrison, LLC**
200 31st Avenue North
Nashville, TN 37203
jmartin@barrettjohnston.com
mmcgraw@barrettjohnston.com
shyatt@barrettjohnston.com

*Attorneys for Keith Meadows and HYDS, Inc.*


           */s/ Todd E. Panther*
           Todd E. Panther