**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **FRANKLIN CONSTRUCTION GROUP, LLC,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:24-cv-01255** |
| ) | **JURY DEMAND** |
| **WILLIAM SHORE, JWSC, LLC, KEITH** ) | |
| **MEADOWS, JOSEPH HEATH, HYDS, INC.,** ) | **Judge Waverly D. Crenshaw, Jr.** |
| **DEAN BINGHAM, LUNDON JOHNSON,** ) | **Magistrate Judge Jeffery S. Frensley** |
| **TYLER WEBER, JOEL CHEVRETTE,** ) | |
| **DANNY KNOWLES, SCOTT MATTHEWS,** ) | |
| **and LOWE'S HOME CENTERS, INC.,** ) | |
| ) | |
|     **Defendants.** ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT LOWE'S HOME CENTERS, INC.'S PARTIAL MOTION TO DISMISS**

Plaintiff respectfully asks this Court to deny the Partial Motion to Dismiss filed by Lowe's Home Centers, Inc. ("Defendant Lowe's").

## I.    INTRODUCTION AND RELEVANT FACTS

The facts of this matter are laid out in detail in the Complaint and attachments thereto. Herein, Plaintiff briefly summarizes the facts of this case and the facts that specifically relate to Defendant Lowe's Motion to Dismiss.[1]

From at least 2021 to 2023, the defendants in this case worked in concert to execute a tremendous and purposeful fraud on Plaintiff, which caused millions of dollars in damage. Compl., at ¶ 1. Defendant Shore was employed by Plaintiff, a building and construction company. *Id.* at ¶¶

---

[1] Plaintiff is responding separately to seven motions to dismiss by various individual defendants and defendant groups.

1

2, 7. Defendant HYDS is a construction materials supplier, with Defendant Meadows holding himself out as the public owner of Defendant HYDS and Defendant Heath holding himself out as the CEO. *Id.* at ¶ 37. Defendants HYDS, Meadows and Heath (collectively the "HYDS Defendants") inflated the price of goods bought and delivered to Plaintiff, diverted a substantial portion of these goods to Defendant Shore's secret side projects, and enriched themselves by doing so. *Id.* at ¶¶ 3, 130-31. The HYDS Defendants introduced Defendant Shore to the Lowe's Individual Defendants (Defendants Bingham, Johnson, Weber, Chevrette, Knowles, and Matthews) as part of their scheme to defraud Plaintiff. *Id.* at ¶¶ 74, 75. Defendant Shore and the Individual Lowe's Defendants instituted a fraud through which Defendant Shore provided material estimates to Defendant Lowe's for the projects he himself requested on behalf of Plaintiff, inflated the prices that Plaintiff paid in furtherance of these projects, and diverted the goods purchased by Plaintiff to Defendant Shore for his own personal use. *Id.* at ¶ 4. The HYDS Defendants and the Lowe's Individual Defendants often worked together to perpetuate the fraud of Plaintiff. *Id.* at ¶¶ 102, 110. The defendants have taken various steps attempted to cover up their fraudulent activities. *See id.* at ¶¶ 98, 100, 101.

Plaintiff includes numerous allegations in the Complaint against the Lowe's Individual Defendants, and Plaintiff alleges that Defendant Lowe's is responsible for their conduct.

## II.     STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff." *Solomon v. Solomon*, No. 3:21-cv-00498, 2022 WL 610825, at *2 (M.D. Tenn. Mar. 1, 2022). A complaint is sufficient when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he standard on a motion to dismiss is not whether Plaintiff can prove his claim, but whether he has alleged facts [] from which the court can reasonably infer the defendant is liable for the alleged conduct." *Stanton v. Joyner*, No. 3:19-cv-00270, 2021 WL 4480508, at *9 (M.D. Tenn. Sept. 30, 2021). "Thus, dismissal is appropriate only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Solomon*, 2022 WL 610825, at *2. (quotation omitted). The moving party has the burden of proving that no claim exists. *Pinnacle Bank v. Fid. & Deposit Co.*, 598 F. Supp. 3d 666, 670 (M.D. Tenn. 2022).

Fed. R. Civ. P. 9(b) states that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Defendant Lowe's asserts that the heightened "particularity" pleading standard in Federal Rule of Civil Procedure 9(b) applies to Plaintiff's fraud-based claims. However, "[i]n the Sixth Circuit, in order to prevail on a motion to dismiss under Rule 12(b)(6) premised solely on non-compliance with the heightened pleading standards of Rule 9(b)—as opposed to the more lenient, general standard of Rule 8—a defendant must have previously filed a motion under Rule 12(e) for a more definite statement." *PSC Indus., Inc. v. Johnson*, No. 3:19-CV-00362, 2021 WL 1663574, at *14 (M.D. Tenn. Apr. 28, 2021) (collecting cases and declining to apply Rule 9(b)). None of the defendants in this case have filed a Rule 12(e) motion. Therefore, dismissal under Rule 9(b) would be inappropriate. *See e.g.*, *Legge v. Wagner*, 7 F.3d 234 (Table) (6th Cir. 1993) ("This court has noted that in the absence of a defendant's motion for a more definite statement under Rule 12(e), dismissal on the sole basis of a plaintiff's failure to comply with Rule 9(b) is inappropriate."); *Trubiano v. Fed. Nat. Mortg.*, No.

3

09-11968, 2010 WL 1438979, at *2 (E.D. Mich. Apr. 9, 2010) ("[I]n the absence of Defendants' motion for a more definite statement, dismissal for failure to satisfy Rule 9(b) is not appropriate.").

If the Court does find that Rule 9 applies, "even when a plaintiffs RICO allegations fail to satisfy the particularity requirement, the Court may allow discovery to proceed under Fed. R. Civ. P. 11(b)(3)." *Arnold v. Petland, Inc.*, No. 2:07-CV-01307, 2009 WL 816327, at *4 (S.D. Ohio Mar. 26, 2009); *see also McLearn v. Wyndham Resort Dev. Corp.*, No. 3:19-CV-00004, 2020 WL 1189844, at *4 n.11 (M.D. Tenn. Mar. 11, 2020) ("Courts may relax Rule 9(b)'s particularity requirement when certain information is solely within the defendants' knowledge.").[2]

### III. LEGAL ANALYSIS

#### A. RICO

"To state a RICO claim, a plaintiff must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)). "RICO pleadings are to be liberally construed." *Greer v. Home Realty Co. of Memphis, Inc.*, No. 07-2639, 2008 WL 11318325, at *7 (W.D. Tenn. Aug. 7, 2008) (citing *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000); *United States v. Qaoud*, 777 F.2d 1105, 1116 (6th Cir. 1985)). In considering a RICO action, the Supreme Court has stated that Rule 11 grants "flexibility…allowing pleadings based on evidence reasonably anticipated after further investigation or discovery." *Rotella v. Wood*, 528 U.S. 549, 560 (2000). Defendant Lowe's challenges Plaintiff's allegations of an "enterprise" and the application of *respondeat superior*.

##### 1. Enterprise

---

[2] Though not required, Plaintiff has specifically pled certain information held by the defendants that it does not have, that Plaintiff believes would further show the fraudulent scheme. *See e.g.*, Compl., at ¶¶ 98-99, 101, 104, 109.

4

The RICO statute defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4). The Supreme Court has emphasized that the word "enterprise" in the RICO statute should be interpreted broadly:

> The statute does not specifically define the outer boundaries of the "enterprise" concept but states that the term "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." § 1961(4). This enumeration of included enterprises is obviously broad, encompassing "any ... group of individuals associated in fact." *Ibid.* (emphasis added). The term "any" ensures that the definition has a wide reach, *see, e.g.*, *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 218 – 219, 128 S. Ct. 831, 833, 169 L. Ed. 2d 680 (2008), and the very concept of an association in fact is expansive. In addition, the RICO statute provides that its terms are to be "liberally construed to effectuate its remedial purposes." § 904(a), 84 Stat. 947, note following 18 U.S.C. § 1961; *see also, e.g.*, *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 257, 114 S. Ct. 798, 127 L. Ed. 2d 99 (1994) ("RICO broadly defines 'enterprise' "); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497, 105 S. Ct. 3275, 87 L. Ed. 2d 346(1985) ("RICO is to be read broadly"); *Russello v. United States*, 464 U.S. 16, 21, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983) (noting "the pattern of the RICO statute in utilizing terms and concepts of breadth").

> In light of these statutory features, we explained in *Turkette* that "an enterprise includes any union or group of individuals associated in fact" and that RICO reaches "a group of persons associated together for a common purpose of engaging in a course of conduct." 452 U.S., at 580, 583, 101 S. Ct. 2524. Such an enterprise, we said, "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.*, at 583.

*Boyle v. United States*, 556 U.S. 938, 944–45 (2009).

"In order to establish the existence of an 'enterprise' under § 1962(c), a plaintiff is required to prove: (1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged." *Ouwinga*, 694 F.3d at 793. Regarding requirement (3),

"although the existence of an enterprise is a separate element that must be proved, the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" *Id.* at 794 (6th Cir. 2012) (quoting *Boyd*, 556 U.S. at 947); *see also Hofstetter v. Fletcher*, 905 F.2d 897, 903 (6th Cir. 1988) ("RICO applies both to legitimate enterprises conducted through racketeering operations as well as illegitimate enterprises. . . . [A]lthough "enterprise" and "pattern of racketeering activity" are separate elements, they may be proved by the same evidence.") (internal citation and quotation marks omitted)). "A discrete set of facts is not necessary[.]" *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 792 (E.D. Mich. 2014). Indeed, "[a]n enterprise may have been 'formed solely for the purpose of engaging in the racketeering activity.'" *Laudien v. Caudill*, 92 F. Supp. 3d 614, 620 (E.D. Ky. 2015) (quoting *Slorp v. Lerner, Sampson & Rothfuss*, 587 Fed. Appx. 249, 265 (6th Cir. 2014)).

Defendant Lowe's argues that the only "common purpose" pled by Plaintiff is a desire to participate in the fraudulent scheme, yet a separate purpose is required. But Plaintiff has pled more than just a common desire to participate in a fraudulent scheme. Plaintiff pleads that a common purpose of the scheme was more than just to commit mail and wire fraud—it was to pay Defendant Shore kickbacks for defrauding Plaintiff into purchasing unnecessary supplies and for the other defendants to unlawfully obtain money from the fraudulently procured sales of their goods. *See e.g.*, Compl., ¶¶ 116, 130-31. The Sixth Circuit recognizes that "[t]he common purpose of making money can support the enterprise element of a RICO conviction." *United States v. Johnson*, 440 F.3d 832, 840 (6th Cir. 2006); *see also Ouwinga*, 694 F.3d at 795 ("common purpose of promoting a fraudulent welfare benefit plan to generate commissions and related fees" sufficient to plead an enterprise); *Bloodstock Rsch. Info. Servs., Inc. v. Edbain.com, LLC*, 622 F. Supp. 2d 504, 512–13

(E.D. Ky. 2009) ("The enterprise had a common purpose of monetary gain to [Plaintiff's] detriment.").

District courts in the Sixth Circuit have regularly found that pleading the common purposes of defrauding and obtaining money is more than sufficient to survive a motion to dismiss. *See e.g.*, *In re Khan*, No. 19-04258, 2023 WL 3746537, at *20 (Bankr. W.D. Mich. May 30, 2023) (refusing to dismiss RICO claim and explaining that "The Trustee alleges that the purpose of the enterprise was to enrich the participants . . . The supposed profiteering associated . . . certainly supplies an age-old purpose for many a criminal enterprise, if that is what the Trustee proves at trial. In other words, '[t]he common purpose of making money can support the enterprise element' in our Circuit." (quoting *Johnson*, 440 F.3d at 840)); *Llewellyn-Jones*, 22 F. Supp. 3d at 792 ("Here, the complaint describes the defendants' specific roles and relationships, and alleges the enterprise functioned since at least 2011 for the common purpose to defraud and obtain money from the plaintiffs. Those allegations are sufficient to plead the element of an enterprise."); *Lopardo v. Lehman Bros.*, 548 F. Supp. 2d 450, 470 (N.D. Ohio 2008) (denying motion to dismiss state RICO claims where there was "a common purpose in hiding [] illegal acts and in laundering money that [the defendant] was allegedly misappropriating from his clients' accounts"); *Liberte Cap. Grp., LLC v. Capwill*, No. 5:99 CV 818, 1999 WL 35818658, at *2 (N.D. Ohio Nov. 22, 1999) ("It is reasonable to infer from the complaint that these three entities were engaged with each other for the common purpose of converting and wrongfully transferring monies held in escrow. . . The plaintiff's complaint therefore alleges the existence of an enterprise.").

The common purpose of making money is not the only common purpose in the Complaint. As noted above, the defendants also had the common purpose of transferring goods and services, in this case through fraudulent means that enriched each of them. *See e.g.*, Compl., at ¶¶ 116, 130-

7

31.  This is more than sufficient to plead an enterprise at this stage of the litigation. *Nevada-Martinez v. Amhad*, No. 5:15-cv-239, 2016 WL 1559426, at *6-7 (E.D. Ky. Apr. 15, 2016) (finding plaintiff had successfully pled an association-in-fact enterprise with a purpose of "filing immigration applications that have no basis in law or fact . . . for the purpose of generating profits for the Defendants"). They also had the common purpose of inducing Plaintiff to pay fraudulent invoices. *See Allstate Ins. Co. v. Lint Chiropractic PC*, 735 F. Supp. 3d 833, 844 (E.D. Mich. 2024) ("Plaintiffs allege that all the predicate acts of mail and wire fraud served the common purpose of inducing Plaintiffs to pay large sums for bogus medical bills."); *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy*, LLC, 107 F. Supp. 3d 772, 784 (E.D. Mich. 2015) ("common purpose of submitting false claims"). Indeed, the principal case Defendant Lowe's relies on for its argument acknowledges that such common purposes are sufficient to state a claim under RICO. *See Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 860-61 (S.D. Ohio 2020) (finding allegations of common purposes of purchasing properties to profit through a scheme of self-dealing to be sufficient to allege a RICO enterprise).

### 2. Plaintiff has properly pleaded Defendant Lowe's vicarious RICO liability under the doctrine of respondeat superior.

As Defendant Lowe's begrudgingly admits, in the Sixth Circuit an employer is vicariously liable for RICO violations relating to the actions of its employees under *respondeat superior*. Memo., at 13 (citing *Davis v. Mut. Life Ins. of New York*, 6 F.3d 367, 379 (6th Cir. 1993)). In *Davis*, Donald Fletcher, a life insurance salesman, sold life insurance policies for Mutual Life Insurance Company of New York ("MONY") using fraudulent sales tactics. *Davis*, 6 F.3d at 371. Seeking damages after underpaying income taxes, the plaintiffs brought numerous claims, including RICO claims, against Fletcher and MONY, among others. *Id.* at 372. MONY asked the Sixth Circuit to reverse the jury's finding of RICO liability, arguing that a corporate principal

8

cannot be vicariously liable for its agent's actions under section 1962(c) as a matter of law. *Id.* at 378.

The Sixth Circuit determined that vicarious liability can attach where, as in this case, RICO plaintiffs seek to impose liability on a corporation as a person separate from the RICO "enterprise" – referred to as the distinctness requirement. *See id.* at 379. To prohibit *respondeat superior* liability in such situations "would prevent corporate persons from ever being found liable under RICO, since corporate principals may act only through their agents. Such a rule would be manifestly contrary to the intent of Congress, and we decline to adopt it." *Id.*

After acknowledging this reality, Defendant Lowe's makes two arguments in an effort to escape vicarious liability. First, it urges that a corporate defendant can only be vicariously liable on a RICO claim if it "actively participate[d] in the scheme with an intent to benefit Lowe's." Memo., at 12. Second, it maintains that the Lowe's Individual Defendants were acting outside the scope of their employment. Neither argument withstands scrutiny.

### a. Under standard vicarious liability principles, Plaintiff has stated a claim against Defendant Lowe's.

Defendant Lowe's first argument – that it cannot be vicariously liable unless it actively participated in the scheme – misconstrues the holding of *Davis*. As the Sixth Circuit has since acknowledged, the *Davis* court "appl[ied] standard vicarious liability principles in the RICO context[.]" *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 494 (6th Cir. 2013). Standard principles of vicarious liability, as explained more fully below, do not require any kind of active participation by the corporate entity separate from its employees. This makes sense given that "corporate principals may act only through their agents." *Davis*, 6 F.3d at 379.

The *Davis* court did acknowledge that certain facts buttressed its application of *respondeat superior*, including that "MONY actively promoted and sponsored the scheme, and plainly

9

benefitted from it through the resultant increase in its corporate income." *Id.* at 380. But *Davis* does not *require* such additional facts in applying vicarious liability, instead noting that such liability is appropriate "*particularly* where the corporation benefitted by those acts." *Id.* at 379 (emphasis added); *see also Kirby Devs. LLC v. XPO Global Forwarding, Inc.*, No. 2:18-CV-500, 2021 WL 4125457, at \*17 (S.D. Ohio Sept. 9, 2021) ("Accordingly, liability may be imposed upon corporate 'persons' on account of the acts of their agents, particularly where the corporation benefitted by those acts and the corporation is separate from the enterprise.") (internal quotation marks omitted)). Moreover, the *Davis* court held that it was appropriate to attribute Fletcher's acts to MONY given their employment relationship.[3] Under a proper application of *Davis*, the facts alleged in the Complaint are sufficient to state a claim that Defendant Lowe's is vicariously liable for the RICO violations perpetrated by its employees.

Even if *Davis* had required some kind of corporate attempt to benefit from the racketeering activity, particularly when reading the Complaint in the light most favorable to Plaintiff and granting it all reasonable inferences from the facts alleged, Defendant Lowe's did attempt to benefit from the racketeering activity through the conduct of the Lowe's Individual Defendants in the same way that MONY benefited from Fletcher's conduct. *Cf. Robertson v. Breakthrough Towing, LLC*, No. 19-10266, 2022 WL 4292314, at \*10 (E.D. Mich. Sept. 16, 2022) (dismissing

---

[3] Indeed, *Davis* went a step further. The court stated that, even had it "refuse[d] to attribute to MONY Fletcher's control of the enterprise," application of vicarious liability still would have been appropriate because "even after MONY had received numerous warnings concerning [the fraud], MONY continued to allow, if not actively encourage, Fletcher and his associates to carry on with their scheme. In light of this state of affairs, *and of the central role that MONY's life insurance policies played in Fletcher's scheme*, we have little difficulty in ruling that MONY exercised sufficient control over the affairs of the RICO enterprise . . . ." *Id.* at 380. Here, Defendant Lowe's business operations were central to the scheme of the enterprise. Moreover, when Plaintiff notified Defendant Lowe's of the allegations against the Lowe's Individual Employees, Defendant Lowe's failed to respond for months. These facts are sufficient to state a claim against Defendant Lowe's under the rule announced in *Davis* and reaffirmed in *ClassicStar*.

10

RICO claim under "ordinary principles of respondeat superior" where the plaintiffs acknowledged that "any financial benefit flowed *solely* to those individuals" engaged in the scheme) (emphasis added and citation marks omitted)); *see Davis*, 6 F.3d at 380. Although the Complaint alleges that the Lowe's Individual Defendants also enriched themselves through their scheme, the Complaint makes it clear that they did so by selling Defendant Lowe's products while acting as Defendant Lowe's employees, resulting in profit to Defendant Lowe's. *See* Compl., at ¶ 103.

The other cases cited by Defendant Lowe's are inapposite or support Plaintiff's position. For example, *Davis* distinguished the Seventh Circuit's decision in *D & S Auto Parts, Inc. v. Schwartz*, 838 F.2d 964 (7th Cir. 1988), because the facts in that case did not meet the distinctness requirement and the corporation did not benefit from the scheme. *Davis*, 6 F.3d at 379. Here the distinctness requirement is satisfied and Defendant Lowe's did benefit from the scheme. *See, e.g.*, Compl., at ¶ 116 (alleging an association-in-fact enterprise separate from Lowe's corporate entity); ¶ 103 (summarizing numerous other paragraphs in alleging that Lowe's profited from the scheme). *Davis* cited the Third Circuit's decision in *Petro-Tech, Inc. v. W. Co. of N. Am.*, 824 F.2d 1349 (1987), for the proposition that vicarious liability is appropriate in 1962(c) cases where distinctness is satisfied and the corporation attempted to benefit from the racketeering activity, but it did not limit its holding by requiring that the corporation attempt to benefit from the racketeering activity. *Davis*, 6 F.3d at 379. Indeed, *Petro-Tech* itself is best read not to require a corporate attempt to benefit from the racketeering activity where the distinctness requirement is satisfied. Though the Third Circuit acknowledges such an attempt in the facts of that case, it also notes that the goals of the *respondeat superior* doctrine are consistent with the remedial goals of RICO.

> While many commentators have noted the difficulty of explaining the goals of the doctrine of respondeat superior, see W. Page Keeton, et al., *Prosser & Keeton on Torts* § 69 at 500 text at note 6 (5th ed. 1984), the doctrine can probably be best explained as an outgrowth of the sentiment that "it would be unjust to permit an

11

RICO claim under "ordinary principles of respondeat superior" where the plaintiffs acknowledged that "any financial benefit flowed *solely* to those individuals" engaged in the scheme) (emphasis added and citation marks omitted)); *see Davis*, 6 F.3d at 380. Although the Complaint alleges that the Lowe's Individual Defendants also enriched themselves through their scheme, the Complaint makes it clear that they did so by selling Defendant Lowe's products while acting as Defendant Lowe's employees, resulting in profit to Defendant Lowe's. *See* Compl., at ¶ 103.

The other cases cited by Defendant Lowe's are inapposite or support Plaintiff's position. For example, *Davis* distinguished the Seventh Circuit's decision in *D & S Auto Parts, Inc. v. Schwartz*, 838 F.2d 964 (7th Cir. 1988), because the facts in that case did not meet the distinctness requirement and the corporation did not benefit from the scheme. *Davis*, 6 F.3d at 379. Here the distinctness requirement is satisfied and Defendant Lowe's did benefit from the scheme. *See, e.g.*, Compl., at ¶ 116 (alleging an association-in-fact enterprise separate from Lowe's corporate entity); ¶ 103 (summarizing numerous other paragraphs in alleging that Lowe's profited from the scheme). *Davis* cited the Third Circuit's decision in *Petro-Tech, Inc. v. W. Co. of N. Am.*, 824 F.2d 1349 (1987), for the proposition that vicarious liability is appropriate in 1962(c) cases where distinctness is satisfied and the corporation attempted to benefit from the racketeering activity, but it did not limit its holding by requiring that the corporation attempt to benefit from the racketeering activity. *Davis*, 6 F.3d at 379. Indeed, *Petro-Tech* itself is best read not to require a corporate attempt to benefit from the racketeering activity where the distinctness requirement is satisfied. Though the Third Circuit acknowledges such an attempt in the facts of that case, it also notes that the goals of the *respondeat superior* doctrine are consistent with the remedial goals of RICO.

> While many commentators have noted the difficulty of explaining the goals of the doctrine of respondeat superior, see W. Page Keeton, et al., *Prosser & Keeton on Torts* § 69 at 500 text at note 6 (5th ed. 1984), the doctrine can probably be best explained as an outgrowth of the sentiment that "it would be unjust to permit an

11

employer to gain from the intelligent cooperation of others without being responsible for the mistakes, the errors of judgment and the frailties of those working under his direction and for his benefit." Restatement (Second) of Agency § 219, comment *a* on subsection (1). Here too the goals of the common law doctrine are entirely consistent with RICO's goal to facilitate recovery by the victims of racketeering activity. We therefore hold that the doctrine of respondeat superior may be applied under RICO where the structure of the statute does not otherwise forbid it.

*Petro-Tech*, 824 F.2d at 1358.

### b. The Lowe's Individual Defendants acted within the scope of their employment.

Defendant Lowe's second attempt to sidestep vicarious liability – its contention that the alleged conduct of the Lowe's Individual Employees was outside the scope of their employment – also misses the mark. Defendant Lowe's asserts without any evidentiary support (which would be improper at the motion to dismiss stage) that it expected its employees to act in its customers' best interests, and so any conduct to the contrary was outside the scope of their employment. But such an argument proves too much, as it would generally immunize corporations from vicarious liability for their employees' wrongful conduct.

To hold a party liable under the doctrine of *respondeat superior*, a plaintiff must show, "(1) that the person who caused the injury was an employee; (2) that the employee was on the employer's business; and (3) that the employee was acting within the scope of his employment went the injury occurred." *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992) (citing *Hamrick v. Spring City Motor. Co.*, 708 S.W.2d 383, 386 (Tenn. 1986)). "[I]t is not necessary that the principal or master should expressly direct or have knowledge of the act done; it is enough that the servant or agent was acting in the business of his superior." *Kinnard v. Rock City Const. Co.*, 286 S.W.2d 352, 354 (Tenn. Ct. App. 1955) (citation omitted); *see also Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 343 (Tenn. 2002). "While

12

the principles embodied in the respondeat superior doctrine are relatively easy to articulate, they are not always easy to apply. The doctrine does not lend itself to bright line rules, but rather requires the weighing and balancing of the facts and circumstances of each case." *Tenn. Farmers*, 840 S.W.2d at 937 (citation omitted); *see also Johnson*, 74 S.W.3d at 343 ("The existence of an agency relationship [] 'is a question of fact under the circumstances of the particular case.'") (quoting *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 724 (Tenn. 2000); *McCay v. Mitchell*, 463 S.W.2d 710, 715 (Tenn. 1970)).

Tennessee courts "have frequently turned to the Restatement (Second) of Agency for the theoretical framework for deciding whether an employee's conduct is within the scope of his or her employment." *Tenn. Farmers*, 840 S.W.2d at 937. According to the Restatement, conduct of a servant is within the scope of employment if, in relevant part, "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, *at least in part*, by a purpose to serve the master." *Id.* at 938 (quoting Restatement (Second) of Agency § 228 (1957) (emphasis added)). Moreover, "[a]n act may be within the scope of employment although consciously criminal or tortious." Restatement (Second) of Agency § 231 (1958).

The allegations in the Complaint are more than sufficient to plead an agency relationship at the motion to dismiss stage. For example, Plaintiff alleges that each of the Lowe's Individual Defendants was an employee of Defendant Lowe's when committing the acts alleged in the Complaint. Compl., at ¶ 128. It further alleges that Defendant Heath introduced Defendant Shore to "my good friend Dean [Bingham] from Lowe's" and that Defendant Bingham could "save you lots of money on projects." *Id.* at ¶ 75. Once engaged, the Lowe's Individual Defendants "secured Shore's loyalty to Lowe's, rather than Shore's employer, FCG," *id.* at ¶ 77, resulting in Defendant

Shore "fraudulently funneling" "material purchases" to Defendant Lowe's, from which Defendant Lowe's would have profited. *Id.* at ¶ 79. Indeed, in just one of numerous paragraphs detailing how Defendant Lowe's was enriched by the scheme, the Complaint alleges, "According to Lowe's own records, Shore charged over $1.5 million" to his fraudulently obtained Lowe's credit card, income that would have gone to Defendant Lowe's. *See id.* at ¶ 100(a). Although Defendant Lowe's points to the Complaint's allegation that the Lowe's Individual Defendants were motivated by a desire to "enrich themselves," Memo., at 15, it ignores the allegation in the same paragraph of the Complaint that "Lowe's profited by the above-described scheme and attempted cover-up by unlawfully obtaining money from FCG for supplies and materials that were unnecessary or excessive for the completion of FCG construction projects and/or were at artificially inflated prices." Compl., at ¶ 103.

Plaintiff alleges that the Lowe's Individual Defendants (1) while acting as employees of Lowe's; (2) conducted business on behalf of Lowe's with a Lowe's customer; that (3) used the powers and tools granted to them by their employer to enrich their employer (and themselves) at the expense of Plaintiff, Defendant Lowe's customer. These allegations are sufficient to plead an agency relationship and vicarious liability under RICO. Particularly at this stage of the litigation, dismissal would be inappropriate in an inquiry as fact intensive as one of agency. *See, e.g.*, *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1339-40 (E.D. Mich. 2011) (denying motion to dismiss claim for vicarious liability under RICO where the plaintiff had alleged an employment relationship between the individual defendants and the corporate defendant because "[t]he determination of an agency relationship and the scope of the agent's actual, implied, or apparent authority is necessarily a fact-bound endeavor"); *Kirby Devs. LLC*, 2021 WL 4125457, at *18 (denying a defendant's motion for summary judgment on respondeat superior RICO claim

where there was record evidence that an employee had fraudulently confirmed inventory and executed and transmitted warehouse receipts and that performing such tasks was within the scope of employment).

The facts of the sole case Defendant Lowe's cites on this point actually support Plaintiff's position. In *Barrett v. Whirlpool Corp.*, 704 F. Supp. 2d 746, 757 (M.D. Tenn. 2010), the court dismissed a claim against an employer based on vicarious liability because the employee's sexual misconduct violated the employer's workplace policies prohibiting sexual harassment and discrimination. As an initial matter, *Barrett* was dismissed at the summary judgment stage, with the parties having had the benefit of full discovery to examine the factual circumstances of the alleged agency relationship. *Id.* at 748, 757. Moreover, *Barrett* dealt with allegations of sexual harassment separate and apart from the type of duties the agent was employed to perform as the team leader on an assembly line. *Id.* at 749-50, 757. The cases the *Barrett* court relied on also dealt with physical assaults or other types of harassment distinct from duties performed in the course of employment. *See id.* at 757. In contrast, the actions alleged here fall squarely within the scope of the Individual Lowe's Defendants' employment.

Employers can be held vicariously liable for their employees' misconduct under the doctrine of *respondeat superior* in RICO cases. The Complaint sufficiently pleads wrongful conduct and agency.

### 3. RICO Conspiracy

Defendant Lowe's argument that Plaintiff has not alleged a Section 1962(d) RICO conspiracy fails for all of the reasons addressed herein. Defendant Lowe's RICO conspiracy argument is limited to the notion that Plaintiff has failed to adequately plead the four elements of a Section 1962(c) RICO claim. Memo., at 15-16. Because Plaintiff has pleaded a Section 1962(c)

15

claim, as described above, Defendant Lowe's Section 1962(d) argument fails. Though Defendant Lowe's mentions that Plaintiff must, in addition to the 1962(c) elements, allege the existence of an illicit agreement, it makes no argument that Plaintiff has failed to do so. Moreover, a RICO conspiracy claim under Section 1962(d) is not subject to the Rule 9(b) heightened pleading requirement. *See, e.g.*, *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir. 2012) ("The plaintiffs' third amended complaint does allege that [the defendants] conspired . . . through a pattern of racketeering activity, and this agreement can be inferred from the individual defendants' involvement in the four well-pled predicate acts in which they made false representations . . . with the goal of defrauding those couples of money."); *Justice v. Nelson*, No. 3:19-cv-185, 2019 WL 6971371, at *1 (E.D. Tenn. Dec. 19, 2019) (Rule 8's notice pleading standard applies to RICO conspiracy claims); *Dowling v. Select Portfolio Servicing, Inc.*, No. 2:05-CV-049, 2006 WL 571895, at *9 (S.D. Ohio Mar. 7, 2006) (same, citing cases). Plaintiff's Section 1962(d) claim satisfies this standard.

### B. <u>Plaintiff has met the pleading requirements for its state law claims.</u>

#### 1. Plaintiff has more than adequately pled its claim for civil conspiracy (Count II).

"An actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Carroll v. TDS Telecomms. Corp.*, No. 1:17-CV-01127-STA-EGB, 2017 WL 6757566, at *8 (W.D. Tenn. Dec. 29, 2017) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002)). Broken down into distinct elements, sustaining a claim of civil conspiracy requires allegations of "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance

16

of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006).

"[T]here is no higher burden upon Plaintiff for pleading a civil conspiracy claim. Plaintiff must merely meet the requirements of *Twombley* and *Iqbal*." *Carroll*, 2017 WL 6757566, at *10. Plaintiff has met its burden by specifically alleging, among other allegations, that the defendants worked together to pay Defendant Shore kickbacks for defrauding Plaintiff into purchasing unnecessary supplies and for the other defendants to unlawfully obtain money from the fraudulently procured sales of their goods. (*See e.g.*, Compl., ¶¶ 116, 130-31).

### 2. Plaintiff has more than adequately pled its claims for fraud and violation of the Tennessee Consumer Protection Act (Counts IX and X).

As aforementioned, none of the defendants have previously filed a motion under Rule 12(e) for a more definite statement. Therefore, dismissal for failure to satisfy Rule 9(b) is not appropriate. *See e.g.*, *Legge*, 7 F.3d at 234. Notwithstanding the foregoing, Plaintiff has more than satisfied the heightened "particularity" pleading standard in Federal Rule of Civil Procedure 9(b).

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud." *Bond v. Clover Health Invs., Corp.*, 587 F. Supp. 3d 641, 664–65 (M.D. Tenn. 2022) (quotation omitted). The Sixth Circuit has explained, however, that while Rule 9(b) imposes a heightened standard, the underlying purpose of the rule is to serve the same ends as the general pleading requirements of Rule 8:

> [Rule 9(b)] should not be read to defeat the general policy of "simplicity and flexibility" in pleadings contemplated by the Federal Rules. Rather, Rule 9(b) exists predominantly for the same purpose as Rule 8: to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. Rule 9(b), however, also reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading[.]

17

*Id.* (quoting *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)). "So long as a [plaintiff] pleads sufficient detail—in terms of time, place, and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.* (quotation omitted).

"Where a complaint alleges 'a complex and far-reaching fraudulent scheme,' then that scheme must be pleaded with particularity and the complaint must also 'provide examples of specific' fraudulent conduct that are 'representative samples' of the scheme." *United States ex rel. Marlar v. BWXT Y–12, LLC*, 525 F.3d 439, 444–45 (6th Cir. 2008) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007)). Nevertheless, "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put [the opposing party] on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988)).

The Complaint includes many specific allegations regarding Defendant Lowe's and the Lowe's Individual Defendants involvement in this illegal scheme, including examples of specific instances of fraudulent estimations, purchases and kickbacks in paragraphs 73-109 of the Complaint. These examples often specifically mention Defendant Lowe's and the Lowe's Individual Defendants. A few examples include (emphases added):

- "Among the fraudulent mechanisms Shore and one or more of the Lowe's Individual Defendants employed was for Lowe's to engage Shore or JWSC as an independent contractor to perform 'estimating' for Lowe's. **By engaging Shore or JWSC to perform estimates for Lowe's, the Lowe's Individual Defendants secured Shore's loyalty to Lowe's, rather than Shore's employer, FCG, which breached the duty of loyalty Shore owed FCG**. The supposed estimating services by Shore or JWSC were a fictitious scheme used to provide Shore or JWSC monetary kickbacks for the material purchases,

which Shore was fraudulently funneling to Lowe's and which one or more of the Lowe's Individual Defendants knew were fraudulent." Compl., at ¶¶ 76-77, 79.

- "On FCG's Union Brick project, Shore was not the project manager on that project and should not have had any involvement in it whatsoever. However, **unbeknownst to FCG at the time, some of the Lowe's Individual Defendants (Bingham and Weber at the very least) engaged Shore to "estimate" the lumber needed on the Union Brick project. When Lowe's estimate (which was really Shore's estimate) was provided to FCG, FCG had questions about it and asked to set up a call with Lowe's estimator (not knowing, of course, that it was really Shore). Knowing that their estimating scheme would be exposed if Shore spoke with FCG's project management about the Union Brick estimate, Shore and the Individual Lowe's Defendants who participated in this scheme arranged for FCG's project management to speak with a dummy estimator about the estimate.** It was obvious from the dummy estimator's inability to answer FCG's questions that he knew little to nothing about the estimate. However, **it was not until FCG found the email on Shore's computer, in which Bingham and Weber asked Shore for a lumber estimate on the Union Brick project, that FCG realized Lowe's "estimator" who they spoke with was unable to answer their questions because he did not prepare the estimate. Shore did.**" *Id.* at ¶ 80(i).

- "**After FCG terminated Shore and FCG began trying to understand the relationship between Lowe's and Shore, FCG asked the Lowe's Individual Defendants, Knowles and Matthews, if Lowe's had hired Shore to be an 'estimator.' Instead of being honest and forthright with FCG, Knowles and Matthews were deceptive and engaged in a cover-up of the fraud Shore, JWSC, and the other Lowe's Individual Defendants perpetrated on FCG.**" *Id.* at ¶ 81.

- "**When FCG asked Knowles and Matthews if Lowe's had paid Shore or JWSC to act as an estimator on any FCG projects, Knowles and Matthews both emphatically denied that Lowe's had done so. Knowles's and Matthews's denials that Shore had provided 'estimating' on FCG projects were lies. Among the documents found on Shore's FCG computer include (a) an email from Shore to Knowles on February 15, 2023, in which Shore provided Knowles, Johnson, and Weber his menu of estimating services, (b) an email Knowles received showing that Knowles was, in fact, aware that Shore was acting as an 'estimator' on FCG projects as long ago as April 13, 2023, and (c) an April 13, 2023 email between Lowe's Individual Defendant Weber and Shore with an April 13, 2023 invoice Lowe's sent FCG for estimating services that Shore (identified in the invoice as his alter ego JWSC) performed for Lowe's.** All these events are months before Knowles and Matthews emphatically denied that Shore performed estimating on FCG's projects. As to Knowles's initial minimization of the estimating Shore performed for Lowe's, that, too, was a lie. As FCG continued to seek information on this topic, Matthews finally admitted that Lowe's had paid Shore, through Shore's various side entities, in excess of $100,000 to act as an 'estimator.'" *Id.* at ¶¶ 83-85.

19

- "**Bingham paid Shore or JWSC $36,500.00 in fraudulent kickbacks** . . . Those records also show that Shore or JWSC made instant Zelle payments to Bingham for 'commissions & fees' of at least $31,650.00." *Id.* at ¶ 86.

- "On February 4, 2022, a Lowe's employee named James Fitzgerald sent an email to Lowe's truss supplier, Tennessee Building Components, stating, "I have a side project that is looking for a full quote when available. This is a separate customer from our other projects." As the email chain progressed, **Mr. Fitzgerald sent Bingham an email on February 11, 2022, stating, "This is one of Wills [meaning Shore's] side projects they have a question." The email concludes with a February 17, 2022 email from Shore to Bingham stating, "I only need floor truss quote. We are stick framing roof system." Despite Bingham's knowledge that the floor trusses for which Lowe's was obtaining a quote were for Shore's side project, Lowe's invoiced FCG for them, and FCG paid them."** *Id.* at ¶ 91.

- "During FCG's attempt to unravel Shore's fraud, FCG requested Matthews to provide all documentation within Lowe's system that would show the original delivery address and any changes to the delivery address for all Lowe's materials FCG could not confirm were actually provided to FCG, but Matthews refused, falsely claiming that Lowe's has no such records. **FCG also requested Lowe's in-house counsel to provide delivery receipts or any other documentation, confirming receipt by FCG, as to all the materials for which Lowe's has invoiced FCG, but like Matthews, Lowe's in-house counsel stonewalled FCG and did not respond.**" *Id.* at ¶ 98.

- "To facilitate the above-described fraud on FCG, one or more of the Lowe's Individual Defendants arranged for Lowe's to issue Shore or JWSC a Lowe's Pro Supply credit card, which Lowe's billed to FCG and Shore approved for payment. **Despite FCG's repeated requests, Lowe's has produced no documentation to indicate that Lowe's ever sought, much less received, FCG's authorization to set up the card.** When FCG questioned Knowles about the card, Knowles, in a September 18, 2023 email stated that the card was issued to Shore for in-store purchases only." *Id.* at ¶ 99.

- **"To further cover up the above-described fraud upon FCG, one or more of the Lowe's Individual Defendants falsified Lowe's invoices using fictitious product codes and fictitious unit prices, making it impossible for FCG to discern what materials were reflected on the invoice, which, in turn, made it impossible for FCG to confirm receipt of the materials reflected on the invoice.** During FCG's investigation into these entries, FCG asked Knowles and Matthews to explain this, but they refused. Lowe's Individual Defendant Bingham further conspired with Shore, Meadows, and Heath to defraud FCG by Shore issuing purchase orders to HYDS for Lowe's materials at a cost to FCG that was well above market pricing. . ." *Id.* at ¶¶ 101-102.

- "As a result of the above-described scheme and attempted cover-up of it by Bingham, Chevrette, Johnson, Weber, Knowles, and/or Matthews, they enriched themselves by obtaining commissions or other compensation on the supplies and materials they were

20

defrauding FCG into purchasing. **In addition, Lowe's profited by the above-described scheme and attempted cover-up by unlawfully obtaining money from FCG for supplies and materials that were unnecessary or excessive for the completion of FCG construction projects and/or were at artificially inflated prices."** *Id.* at ¶ 103.

- **"From May 4, 2021, to June 13, 2023, FCG issued Lowe's purchase orders totaling $30,185,843.09.** FCG considered itself to be a valued customer of Lowe's given the dollar amount of materials FCG purchased from Lowe's. However, by refusing to reimburse FCG for the damage the Lowe's Individual Defendants caused FCG by their above-described fraud, cover-up, and stonewalling, Lowe's has displayed a callous disregard for its customers such as FCG and demonstrated that its true goal is maximizing profits at all costs, even when those profits are derived from the fraudulent conduct of Lowe's employees." *Id.* at ¶ 104.

As set out in the Complaint, Defendant Lowe's and the Individual Lowe's Defendants purposefully and willfully misrepresented the source of the estimation services provided to Plaintiff in regard to the various projects overseen by Defendant Shore. *Id.* at ¶ 198. Defendant Shore performed the estimation services, Defendant Lowe's and the Individual Lowe's Defendants knew this, they passed off these estimates as legitimate, and they represented that Defendant Shore's estimates were performed by an unrelated third party. *Id.* In reliance upon these acts, Plaintiff unknowingly paid for millions of dollars' worth of materials that either did not exist or were delivered to a project site owned by Defendant Shore. Accordingly, Plaintiff has pled fraud and violation of the Tennessee Consumer of Protection Act with more than enough specificity to put the defendants on notice as to the nature of the claims.

3. **Shore's estimating is a "Service", "Work" and/or "Labor" under the Tennessee Consumer Protection Act and construction materials are "Goods" under the Tennessee Consumer Protection Act.**

"Services" is defined as the "**work**, **labor**, **or services** including services furnished in connection with the sale or repair of goods or real property or improvements thereto." Tenn. Code Ann. § 47-18-103(23) (emphasis added). Defendant Lowe's argues that the word "including" limits the terms "work", "labor" and "service", but a plain reading of the statute does not support

21

this assertion. Rather, the phrase "including services furnished in connection with the sale or repair of goods or real property or improvements thereto" modifies only the term "services" and the estimation provided by Defendant Shore can certainly be considered "work" and/or "labor" (neither of which are defined in the Tennessee Consumer Protection Act).

Furthermore, the use of the term "including" does not somehow limit "services" to only those that are furnished in connection with the sale or repair of goods or real property or improvements thereto. For this to be the case under a plain reading analysis, the sentence would need to omit the words "including services". Even assuming *arguendo* that the term "services" was somehow limited to those that are furnished in connection with the sale or repair of goods or real property or improvements thereto. The estimation provided by Defendant Shore would still be a "service" under the Tennessee Consumer Protection Act as the materials in question are for the improvement of real property. In addition, the estimation provided by Defendant Shore would also qualify as a "service" under the Tennessee Consumer Protection Act because construction materials have been held to be applicable "goods" in the Sixth Circuit. *See Cabinets to Go, LLC v. Qingdao Haiyan Real Est. Grp. Co., LTD*, 605 F. Supp. 3d 1051, 1060 (M.D. Tenn. 2022) (holding plaintiff sufficiently stated a Tennessee Consumer Protection Act Claim where the goods at issue were commercial cabinetry); *GenTech Const., LLC v. Natare Corp.*, No. 1:07-CV-192, 2011 WL 1257943, at *25 (E.D. Tenn. Mar. 31, 2011) (holding plaintiff sufficiently stated a Tennessee Consumer Protection Act Claim where the goods at issue were commercial pool liners).

### 4. Plaintiff's claims for violation of the Tennessee Consumer Protection Act are timely (Count X).

"[A] motion to dismiss is 'generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations.'" *Lindsey v. Collier*, 606 F. Supp. 3d 769, 773 (M.D. Tenn. 2022) (citations omitted). "This is because the statute of limitations is an affirmative defense, for which

22

the defendant bears the burden of proof . . . a motion to dismiss on statute of limitations grounds should only be granted if the allegations in the complaint affirmatively show that the claim is time-barred." *Id.*

Though Defendant Shore was terminated in September of 2023, at that time, Plaintiff had no knowledge of any malfeasance. Plaintiff simply believed that Defendant Shore had performed his job duties poorly and even gave him a generous severance package to soften the blow of termination. Complaint, at ¶ 35. It was not until after Defendant Shore's termination that Plaintiff discovered financial irregularities and began investigating the documentation left behind by Defendant Shore. *Id.* at ¶ 36. Indeed, Plaintiff did not become aware, nor should have become aware, of its claims against Defendant Shore and the other defendants until Larry Grace of Central Century Supply, LLC telephoned a principal of Plaintiff on November 30, 2023, to confirm the fraud that had been perpetrated against Plaintiff. *Id.* at ¶ 110. Plaintiff filed the Complaint less than a year later on October 21, 2024. Therefore, Plaintiff's claims for violation of the Tennessee Consumer Protection Act are timely.

### 5. Plaintiff has more than adequately pled its claim for conversion (Count VIII).

Contrary to the defendants' asserted positions, a defendant can convert money—including money in the form of a check. *See PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553-56 (Tenn. Ct. App. 2012) (discussing that money that is specific and capable of identification can be converted; plaintiffs maintained cause of action for conversion of funds against one defendant); *Pomeroy v. McGinnis*, No. E2020-00960-COA-R3-CV, 2021 WL 3017199, at *16–17 (Tenn. Ct. App. July 16, 2021) (conversion of money in the form of checks recognized by the court as being "actionable"); *Colyar v. Taylor*, 41 Tenn. 372, 373-78 (Tenn. 1860) (defendant liable for conversion when he gratuitously undertook to

23

receive $1,500 for the plaintiff and deliver it to him, but instead gave the money to a third party who subsequently lost it); *Knox Trailers, Inc. v. Maples*, 581 F. Supp. 3d 1000, 1017 (E.D. Tenn. 2022) (citation omitted) (conversion claim involving money was actionable because "[i]dentifiable funds are deemed a chattel for purposes of conversion" and checks were considered identifiable funds for a specific purpose; the court noted that "to the extent Plaintiffs' claims rest on the conversion of their trade secrets, they must be dismissed"); *Lingham Rawlings, LLC v. Gaudiano (In re Lingham Rawlings, LLC)*, Nos. 10-32769, 10-3125, 2013 WL 1352320, at *152 (Bankr. E.D. Tenn. Apr. 3, 2013) (denying defendant's motion to dismiss plaintiff's conversion claim because the court found that defendant converted plaintiff's funds by paying himself "management fees and reimbursements for loans payable to which he was not entitled"). For money to be the subject of a conversion claim, it must be specific and identifiable, or there must be a determinate sum that the defendant was entrusted to apply to a certain purpose. *See* 90 C.J.S. Trover and Conversion § 16; *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship*, 387 S.W.3d at 553; *Pomeroy*, 2021 WL 3017199, at *16–17.

The funds converted by the defendants are specific and identifiable, including but not limited to the following specifically pled examples: a fraudulent kick-back of $10,000 related to Purchase Order No. 109, Compl., at ¶ 46; a fraudulent kick-back of $9,125 related to Purchase Order No. 108R, *id.* at ¶ 47; a fraudulent kick-back of $3,750 related to Purchase Order No. 109, *id.* at ¶ 48; a fraudulent kick-back of $2,500 related to Purchase Order No. 113, *id.* at ¶ 49; a fraudulent kick-back of $14,751 related to Purchase Order No. 201, *id.* at ¶ 50; a fraudulent kick-back of $5,000 related to Purchase Order No. 114, *id.* at ¶ 51; a fraudulent kick-back of $10,000 related to Purchase Order No. 04-201, *id.* at ¶ 52; a fraudulent kick-back of $10,000 related to Purchase Order No. 03-201, *id.* at ¶ 53; a fraudulent kick-back of $10,000 related to Purchase

24

Order No. 02-301, *id.* at ¶ 54; a fraudulent kick-back of $10,000 related to Purchase Order No. 506.01-101, *id.* at ¶ 55; a fraudulent kick-back of $40,000 related to Purchase Order No. 504.02-302, *id.* at ¶ 56; a fraudulent kick-back of $15,000 related to Purchase Order No. 02-304, *id.* at ¶ 57; a fraudulent kick-back of $24,000 related to Purchase Order No. 504.02-305, *id.* at ¶ 58; a fraudulent kick-back of $40,000 related to Purchase Order No. 504.02-306, *id.* at ¶ 59; a fraudulent kick-back of $53,000 related to Purchase Order No. 504.02-308, *id.* at ¶ 60; $156,970 converted via fictitious Purchase Orders Nos. 504.04-205 and 504.02-309, *id.* at ¶ 66; a fraudulent kick-back of $45,000 related to Change Order No. 002, *id.* at ¶ 67; and fraudulent kickbacks of $13,500.00, $36,500.00 and $18,550.00 related to fraudulent estimation services, *id.* at ¶ 86. As the foregoing amounts are specific and identifiable sums, Plaintiff has adequately pled its claim for conversion of funds.

Furthermore, the Complaint also alleges the conversion of certain materials. The Tennessee Court of Appeals has identified three ways in which property may be converted: "First, a person may personally dispossess another of tangible personalty. Second, a person may dispossess another of tangible property through the active use of an agent. Third, under certain circumstances, a person who played no direct part in dispossessing another of property, may nevertheless be liable for conversion for receiving a chattel." *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Community Development Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012).

After Plaintiff ordered and paid Defendant Lowe's for certain materials, it then owned and/or was entitled to the possession of those materials. By changing the delivery addresses for certain materials or otherwise failing to deliver Plaintiff's materials to Plaintiff, Defendant Lowe's and the Lowe's Individual Defendants dispossessed Plaintiff of tangible property. The Complaint states specific allegations regarding the conversion of materials, a few examples of which are

25

identified above. (*See e.g.*, Compl., ¶¶ 91-107). By specifically alleging how the defendants dispossessed Plaintiff of tangible property, Plaintiff has adequately pled its claim for conversion.

## IV.    CONCLUSION

For all these reasons, Defendant Lowe's Motion to Dismiss should be denied. If the Court is inclined to grant the Motion to Dismiss, in the alternative, Plaintiff would request that the Court order that Defendant Lowe's file a motion under Rule 12(e) and that Plaintiff have the opportunity to amend its Complaint.

Dated:  March 3, 2025

Respectfully submitted,

/s/ *Todd E. Panther*
Todd E. Panther (BPR #014438)
Christopher C. Sabis (BPR #030032)
Thomas B. Hall (BPR #036816)
SHERRARD ROE VOIGT & HARBISON, PLC
1600 West End Avenue, Suite 1750
Nashville, TN  37203
(615) 742-4200 - telephone
(615) 742-4539 - fax
tpanther@srvhlaw.com
csabis@srvhlaw.com
thall@srvhlaw.com

*Attorneys for Franklin Construction Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 3rd day of March 2025, the foregoing Plaintiff's Response in Opposition to Defendant Lowe's Partial Motion to Dismiss was filed electronically with the Clerk of Court to be served by the Court's electronic filing system upon the parties in this matter.

Scarlett Singleton Nokes
**Sheppard Mullin**
2200 Ross Avenue, Suite Floor 20
Dallas, Texas 75201
469-391-7411
snokes@bradley.com

R. Brandon Bundron
**Bradley Arant Boult Cummings LLP**
1221 Broadway, Suite 2400
Nashville, Tennessee 372023
snokes@bradley.com
bbundren@bradley.com

*Attorneys for Dean Bingham*

Don L. Hearn, Jr.
**Glankler Brown PLLC**
6000 Poplar Avenue, Suite 400
Memphis, Tennessee 38119
dhearn@glankler.com
na@rpnalaw.com

Nicholas P. Roxborough
Joseph C. Gjonola
Nadine Alsaadi
**Roxborough, Pomerance, NYE & Adreani, LLP**
5900 Canoga Avenue, Suite 450
Woodland Hills, California 91467
npr@rpnalaw.com
jcg@rpnalaw.com
na@rpnalaw.com

*Attorneys for Joseph Heath*

28

Darrick Lee O'Dell
**Spicer Rudstrom, PLLC**
220 Athens Way, Suite 403
Nashville, Tennessee 37228
dodell@spicerfirm.com

Nicholas C. Stevens
Robert J. Uhorchuk
**Spicer Rudstrom, PLLC**
537 Market Street, Suite 203
Chattanooga, Tennessee 37402
nstevens@spicerfirm.com
rju@spicerfirm.com

*Attorneys for Lundon Johnson, Joel Chevrette and Danny Knowles*


Gary C. Shockley
Ryan P. Loofbourrow
Scott D. Carey
**Baker, Donelson, Bearman, Caldwell & Berkowitz, PC**
1600 West End Avenue, Suite 2000
Nashville, TN 37203
gshockley@bakerdonelson.com
rloofbourrow@bakerdonelson.com
scarey@bakerdonelson.com

*Attorneys for Lowe's Home Centers, Inc.*


Jerry E. Martin
Matthew Edward McGraw
Seth Marcus Hyatt
**Barret Johnston Martin & Garrison, LLC**
200 31st Avenue North
Nashville, TN 37203
jmartin@barrettjohnston.com
mmcgraw@barrettjohnston.com
shyatt@barrettjohnston.com

*Attorneys for Keith Meadows and HYDS, Inc.*


/s/     Todd E. Panther
Todd E. Panther