IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FRANKLIN CONSTRUCTION GROUP, LLC,<br>    Plaintiff,<br><br>v.<br><br>WILLIAM SHORE, JWSC, LLC, KEITH MEADOWS, JOSEPH HEATH, HYDS, INC., DEAN BINGHAM, LUNDON JOHNSON, JOEL CHEVRETTE, DANNY KNOWLES, SCOTT MATTHEWS, and LOWE'S HOME CENTERS, INC.,<br>    Defendants. | Civil Action No. 3:24-cv-01255<br>Judge Crenshaw/Frensley<br>Jury Demand |

## INITIAL CASE MANAGEMENT ORDER

A.     JURISDICTION: Jurisdiction is undisputed by all parties other than Defendant Chevrette[1]. This court has jurisdiction pursuant to: (i) 28 U.S.C. § 1331; (ii) 28 U.S.C. § 1367(a); and (iii) 28 U.S.C. § 1391(b)(1)-(2).

B.     BRIEF THEORIES OF THE PARTIES:

For Plaintiff: From at least 2021 to 2023, Defendants worked in concert to execute a tremendous, purposeful fraud on Plaintiff Franklin Construction Group, LLC ("FCG"). Defendants' fraud has resulted in millions of dollars in damage to FCG. During this period of time, Defendant William Shore ("Shore") was employed by FCG. In his role as Vice President of Residential Construction Operations, Shore was tasked with budgeting, hiring subcontractors and suppliers, approving invoices from subcontractors and suppliers, and handling day-to-day operations of the projects he managed for FCG. Rather than work in the best interests of FCG and

---

[1] Defendant Chevrette's objection to jurisdiction is the subject of his pending motion to dismiss.

perform the role for which he was well-compensated, Shore concocted an elaborate scheme to funnel money from FCG to himself through an illicit kickback scheme involving various intermediaries, illicitly convert FCG's property for his own personal use and gain, and breach various duties owed to FCG.

Shore worked in concert with Defendant HYDS and its principals, Defendant Meadows and Defendant Heath. These Defendants inflated the price of goods bought and delivered to FCG, diverted a substantial portion of these goods to Shore's secret side projects, and enriched themselves by doing so. These actions resulted in substantial and actual damage to FCG.

Seeking to further enrich himself, Shore also conspired with Defendants Bingham, Johnson, Chevrette, Knowles, and Matthews (collectively the "Lowe's Individual Defendants") to further defraud FCG. In concert, Shore and the Lowe's Individual Defendants devised a scheme through which Shore provided material estimates to Defendant Lowe's Home Centers, Inc. ("Defendant Lowe's") for the projects he himself requested on behalf of FCG, inflated the prices that FCG paid in furtherance of these projects, and diverted the goods purchased by FCG to Shore for his own personal use.

Shore's downfall was his fast-and-loose handling of evidence that implicates himself and the other Defendants, allowing FCG to piece together the inner machinations of their elaborate scheme and identify the significant damage FCG incurred. This evidence includes, but is not limited to, email correspondence between the Defendants detailing the fraudulent schemes and a Quickbooks account that meticulously and remarkably aligns the fraudulent diversion of funds with invoices paid by FCG.

As a result of their conspiracy to defraud FCG, Defendants are liable for an amount to be proven at trial, but which are estimated to be no less than $8,297,469.19, treble damages for

violation of the Tennessee Consumer Protection Act and/or the Racketeer Influenced and Corrupt Organizations Act, punitive damages, reasonable attorneys' fees and litigation expenses for violation of the Tennessee Consumer Protection Act and/or the Racketeer Influenced and Corrupt Organizations Act and pre-/post- judgment interest on all amounts to which FCG is entitled.

<u>For Defendant Lowe's Home Centers, Inc.:</u>  Defendant Lowe's Home Centers, Inc., is not the correct entity to be named in this lawsuit. That said, the correct Lowe's entities provided materials for several of Franklin Construction Group's projects at the direction of FCG's Vice President, William Shore. Lowe's did not inflate any prices or charge FCG for materials not delivered. In fact, Lowe's is still storing materials that FCG agreed to purchase but has refused delivery on, and has not paid for. As a result, Lowe's has suffered millions of dollars of damages, which will be the subject of a forthcoming counterclaim.

<u>For Defendant Joel Chevrette</u>:  Defendant Chevrette is a current employee of Lowe's in North Carolina.  Defendant Chevrette contends that this Court lacks personal jurisdiction.  This Defendant's employment activities did not involve business activities in Tennessee and did not involve projects with FCG.  Chevrette has not purposefully availed himself to the jurisdiction of this Court, nor did he direct any activities towards the State of Tennessee.  As such, this Court lacks personal jurisdiction over Chevrette and he should be dismissed as a Defendant based on lack of jurisdiction,  as set forth in his pending Motion to Dismiss (Doc. 68).  Without waiving the personal jurisdiction issue, Chevrette specifically denies any wrongdoing, racketeering activity, civil conspiracy, fraud or any other violations of law as alleged by FCG.  Chevrette denies that he was aware of, part of or that he participated in any alleged scheme to defraud FCG.

<u>For Defendants Lundon Johnson, Danny Knowles and Scott Matthews:</u>

Defendants Johnson, Knowles and Matthews are current or former employees of Lowe's.

These Defendants deny that they are liable to FCG under any theory. These Defendants specifically deny any wrongdoing, racketeering activity, civil conspiracy, fraud or any other violations of law as alleged by FCG. Defendants deny that they were aware of, part of or that they participated in any alleged scheme to defraud FCG. The Complaint simply does not allege sufficient or even particularized facts that Johnson, Knowles or Matthews participated in or benefited from any alleged scheme to defraud FCG or supportive of the other causes of action. In fact, for the reasons set forth in their Motions to Dismiss (Doc. 70 and Doc. 88), the claims and causes of action against Johnson, Knowles and Matthews should be dismissed.

<u>For Defendant Dean Bingham</u>:

Defendant Dean Bingham is a former Lowe's employee. He is one of five current or former Lowe's employees against whom FCG alleges claims.

Mr. Bingham denies that he was aware of or a participant in the alleged scheme to defraud FCG. He also maintains that the five claims alleged against him must be dismissed for the reasons set forth in his pending Motion to Dismiss (Doc. 77). Among other reasons, the claims against Mr. Bingham must be dismissed because the Complaint does not allege facts—much less particularized facts—that Mr. Bingham participated in the alleged scheme to defraud FCG. Instead, the Complaint contains limited references to Mr. Bingham's involvement in the events at issue, and it relies heavily on group pleading to describe the alleged actions of, for example, "the Lowe's Individual Defendants" collectively or "one or more of the Lowe's Individual Defendants." Notably, the Complaint fails to identify a single false or misleading statement made by Mr. Bingham. Accordingly, FCG badly overreaches in its attempt to hold Mr. Bingham responsible for the damages it claims to have suffered as a result of the actions allegedly taken by its former employee Shore

4

Case 3:24-cv-01255   Document 131   Filed 06/11/25   Page 4 of 11 PageID #: 1051

For Defendants Keith Meadows, Joseph Heath, and HYDS Inc.: Defendants Meadows, HYDS, and Heath (collectively "HYDS Defendants") dispute all of Plaintiff's allegations against them. HYDS Defendants entered into a business arrangement with Plaintiff to supply building materials—e.g. cabinets, countertops—for various FCG building projects. During this time, Defendant William Shore was employed by Plaintiff and served as the primary point of contact for HYDS Defendants. When Mr. Shore requested quotes for particular projects, HYDS Defendants provided quotes, which HYDS Defendants were told were lower than other quotes FCG received. To the extent that Mr. Shore may have defrauded Plaintiff by misappropriating funds or diverting Plaintiff resources, it was without the participation of HYDS Defendants.

HYDS Defendants have never been a part of any enterprise with any of the Lowe's Defendants, nor have HYDS Defendants ever conspired with any of the Lowe's Defendants to defraud Plaintiff. HYDS Defendants have had no meaningful interaction with any Lowe's Defendants relating to FCG. HYDS Defendants have no knowledge of whether any of the Lowe's Defendants may have breached any legal duty owed to Plaintiff, and HYDS Defendants did not participate in any unlawful schemes or arrangements with any Lowe's Defendants.

C. ISSUES RESOLVED: Jurisdiction and Venue for the Complaint as pled (all parties other than Defendant Joel Chevrette).

D. ISSUES STILL IN DISPUTE: Jurisdiction and venue for the Complaint as pled (only Defendant Joel Chevrette); Liability and damages. Defendants Johnson, Knowles, Matthews, HYDS, Meadows, Heath, and Bingham assert that there is no basis in law or fact for Plaintiff's RICO allegations and that once those allegations are dismissed for failure to state a claim, the remaining state law claims must all be dismissed for lack of subject matter jurisdiction.

Plaintiff claims that Defendants caused millions of dollars in damages by participating in a conspiracy to misappropriate millions of dollars. Plaintiff's claims against Defendants include: (i) Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C § 1961, *et seq.* (all Defendants); (ii) Conspiracy (all Defendants); (iii) Fraud (Defendants JWSC and Shore); (iv) Conversion (Defendants JWSC and Shore); (v) Breach of Duty of Loyalty (Defendant Shore); (vi) Fraud (Defendants HYDS, Meadows and Heath); (vii) Violation of the Tennessee Consumer Protection Act (Defendants HYDS, Meadows and Heath); (viii) Conversion (Defendants HYDS, Meadows and Heath); (ix) Fraud (Defendants Lowe's, Bingham, Chevrette, Johnson, Knowles and Matthews); (x) Violation of the Tennessee Consumer Protection Act (Defendants Lowe's, Bingham, Chevrette, Johnson, Knowles and Matthews); (xi) Conversion (Defendants Lowe's, Bingham, Chevrette, Johnson, Knowles and Matthews); (xii) Breach of Contract (Defendant Lowe's); (xiii) Unjust Enrichment (Defendant Lowe's); and (xiv) Declaratory Judgment (Defendant Lowe's). Doc. No. 1. Plaintiff claims that Defendants' collective and individual conduct directly caused Plaintiff to incur substantial damages. *Id.*

Defendants HYDS, Meadows, Heath, Lowe's[2], Bingham, Chevrette, Johnson, Knowles and Matthews have filed motions to dismiss, which the parties have briefed and that remain under the Court's consideration. Doc. Nos. 66, 68, 70, 74, 76, 78 and 88. The Clerk has entered default against Defendants Shore and JWSC, LLC pursuant to FRCP 55(a). Doc. 81.

E.     INITIAL DISCLOSURES: The parties shall exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on or before **July 11, 2025**.

F.     CASE RESOLUTION PLAN AND JOINT STATUS REPORTS: The parties must make a **minimum of two independent, substantive** attempts to resolve this case. By no later than

---

[2] Defendant Lowe's has filed a Partial Motion to Dismiss.

**October 9, 2025**, the parties must file a joint case resolution status report confirming their first substantive attempt at settlement. The parties must have conducted enough discovery or otherwise exchanged enough information prior to this date to substantively evaluate and discuss settlement. By no later than **January 16, 2027**, the parties must file another joint status report, which either confirms their second substantive attempt at case resolution or updates the Court on the status of their intended second attempt. The parties' joint report **must state** the specific steps taken toward case resolution, including that an offer or demand was made and responded to and that counsel discussed the parties' positions and specific next steps to promote case resolution. In other words, the parties must "show their work" in creating a plan to facilitate successful settlement negotiations. The parties may mediate by agreement without the need of further order unless referral for pro bono mediation is requested (which must be made by motion). Any motion for pro bono mediation must include a statement as to why private mediation is not feasible. Any motion for a judicial settlement conference must state (i) the reasons why mediation is not feasible and why a judicial settlement conference is the preferable means of attempting to resolve the case; (ii) the parties' proposed timing for scheduling of the settlement conference; and (iii) any preference of a particular Magistrate Judge to conduct the settlement conference. The parties' compliance with this case resolution plan is not optional.

    G.    DISCOVERY:

    1.    **Defendants Hyds, Meadows, And Heath's Position:** Defendants HYDS, Meadows, and Heath do not believe that discovery in this matter should commence until after the Court has ruled on pending motions to dismiss. As set forth in their motion to dismiss and supporting memorandum (ECF No. 79), it is the position of HYDS and Meadows that Plaintiff has asserted facially inadequate RICO claims as a mechanism to bind together completely separate

allegations between HYDS, Meadows, and Heath on the one hand and the Lowe's Defendants on the other. While stays of discovery pending resolution of a motion to dismiss are disfavored in this court, there is no legitimate basis for Plaintiff to have filed in federal court to begin with, so discovery should be managed by a state court judge after Plaintiff's RICO claims are dismissed for failure to state a claim and its remaining state law claims are dismissed for want of subject matter jurisdiction —assuming Plaintiff chooses to refile in state court. If any claims remain pending after the Court issues its order on the pending motions to dismiss, then Defendants HYDS, Meadows, and Heath propose that the Court orders the parties to submit an updated case management order within 21 days of such an order, setting forth discovery and dispositive motion deadlines. Defendants Chevrette, Johnson, Knowles and Matthews adopt and concur with the above position asserted by the other Defendants for the stay of discovery, pending resolution of the Motions to Dismiss. If the Court declines to adopt this proposal, Defendants Chevrette, Johnson, Knowles, Matthews, HYDS, Heath, and Meadows believe that the discovery dates set forth below as "Defendants' Proposal" are reasonable. Lowe's and Bingham take no position on the requested stay of discovery.

    **2.    In The Absence Of Any Discovery Stay As Proposed Above In Paragraph G. 1**: The parties shall complete all written discovery and depose all fact witnesses on or before **June 25, 2026**.

Written discovery shall proceed promptly (unless otherwise provided for herein), and each party's first set of written requests shall be served no later than **August 11, 2025**. Discovery is not stayed during dispositive or other motions, unless ordered by the court.

A party may not bring a discovery dispute to the Court for resolution before lead counsel for that party has held a telephonic or in-person discussion with lead counsel for every one of the

8

parties adverse to it with respect to the dispute (which, in the case of multiple adverse parties, may occur separately with different adverse parties) and has made a good-faith effort to resolve the dispute. Discovery disputes that cannot be resolved after the required discussion(s) should be brought promptly to the attention of the Magistrate Judge via a request for a discovery conference. It will be within the Magistrate Judge's discretion whether to allow for the filing of discovery-related motions. All discovery motions shall be filed by no later than 30 days prior to the close of fact discovery. In connection with any discovery conference or discovery motion, the applicable parties shall file a joint discovery dispute statement, which describes the specific discovery request(s) in dispute and details each party's position with supporting fact and legal authorities. The joint discovery dispute statement shall certify that lead counsel for every applicable party held the aforementioned telephonic or in-person discussion(s) and made a good faith effort to resolve each discovery dispute presented in the statement. If the joint statement is sufficiently detailed, any party may adopt by reference the joint statement for purposes of Local Rule 7.01(a)(2) or (a)(3), but must clearly state in the filing (made in accordance with any timing requirements set forth in Local Rule 7.01(a)(3)) that the joint statement is adopted as the party's memorandum of law or response, as the case may be.

   H. MOTIONS TO AMEND OR TO ADD PARTIES: Any motions to amend or to add parties must be filed by no later than **November 28, 2025**, and must comply with Local Rules 7.01 and 15.01. This deadline only applies to Defendants if the Court has ruled on their motions to dismiss at least 30 days before the deadline. If not, Defendants shall file any motions to amend or to add parties within 60 days after filing an Answer.

   I. DISCLOSURE OF EXPERTS: The plaintiff shall identify and disclose all expert witnesses and expert reports on or before **July 21, 2026**. The defendants shall identify and disclose

all expert witnesses and reports on or before **September 11, 2026**. The plaintiff shall identify and disclose all rebuttal expert witnesses on or before **November 7, 2026**. **Defendants' Position**: [No supplemental expert reports or rebuttal experts shall be allowed, except upon order of the Court for good cause shown.]

      J.      DEPOSITIONS OF EXPERT WITNESSES: All experts shall be deposed by no later than **January 9, 2027**.

      K.      TELEPHONE STATUS CONFERENCE. A status conference shall be held telephonically on **June 1, 2026, at 9:00 a.m.**, to address: status of discovery (including any known or anticipated discovery issues or disputes); prospect for settlement (including propriety of ADR); and, any other appropriate matters. The Parties shall call 1-855-244-8681, at the appointed time. and when prompted for the access code, enter 23139129180# to participate in the Conference. If a party has difficulty connecting to the call or has been on hold for more than five (5) minutes, please contact chambers at 615-736-7344.

      L.      DISPOSITIVE MOTIONS: Any motions to dismiss under Fed. R. Civ. P. 12 shall be filed and briefed in accordance with that rule and Local Rule 7.01. All other dispositive motions must be filed by no later than **March 15, 2027**. Responses to dispositive motions must be filed within 28 days after the filing of the motion. Briefs or memoranda of law in support of or in opposition to a dispositive motion shall not exceed 25 pages without leave of Court. Optional replies may be filed within 21 days after the filing of the response and shall not exceed 5 pages without leave of Court. No motion for partial summary judgment shall be filed except by permission of the Court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel, and the Court. In all other respects, the

provisions of Local Rule 56.01 shall govern.

M. ELECTRONIC DISCOVERY. The parties anticipate reaching an agreement on how to conduct electronic discovery. Any agreement between the parties must be reduced to writing, and either filed as a stipulation of agreed-upon electronic discovery procedures, or, if the parties request court approval, submitted as proposed agreed order with an accompanying motion for approval. In the absence of compliance with this provision, the default standards of Administrative Order No. 174-1 will apply.

N. ESTIMATED TRIAL TIME AND TARGET TRIAL DATE: The **JURY** trial of this action is expected to last approximately 14 days.[3] A trial date no earlier than **August 17, 2027**, is respectfully requested.

**IT IS SO ORDERED.**

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

---

[3] The parties were also reminded during the case management conference of their option to consent to final disposition by the Magistrate Judge pursuant to Fed. R. Civ. P. 73 and Local Rule 73.01. As discussed, if the parties wish to utilize this option, they may jointly complete and electronically file the form Notice, Consent and Reference of a Civil Action to a Magistrate Judge found on the Court's website under the link for Forms. Not consenting will not result in any adverse consequences, and the Notice should be filed **only if all parties consent** to final disposition by the Magistrate Judge.